UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

_____

|  |  |  |
|---|---|---|
| In re FEDEX GROUND PACKAGE | ) | CAUSE NO. 3:05-MD-527 RM |
| SYSTEM, INC., EMPLOYMENT | ) | (MDL-1700) |
| PRACTICES LITIGATION | ) |  |
| ---------------------------------------------- | ) |  |
| THIS DOCUMENT RELATES TO: | ) |  |
|  | ) |  |
| ALL CASES | ) |  |
| _____ | ) |  |

OPINION and ORDER

The court today addresses all outstanding motions for summary judgment and disposes of all other pending cases in this FedEx Multidistrict Litigation docket. In August, this court granted FedEx's motion for summary judgment in the Kansas case and ordered the parties to file five-page supplementary briefs for each of the outstanding class cases addressing why the outcome in those cases should be the same as or different from Kansas.

The court incorporates here the background and findings of fact contained in its Kansas decision and assumes the reader's familiarity with the contents of that decision and other substantive decisions in this MDL litigation. *See generally* Op. and Ord., Aug. 11, 2010 [Doc. No. 2097][1] ("Kansas Decision").[2] The court

_____

[1] All document numbers are found in the general MDL docket, 3:05-md-527.

[2] *See also, e.g.*, Class Certification Orders, Mar. 25., 2008 [Doc. No. 1119], July 27, 2009 [Doc. No. 1770], Feb. 10, 2010 [Doc. No. 2004] (clarifying Nevada certification); Evidentiary Orders, Feb. 23, 2010 [Doc. No. 2010] (granting in part Rule 56 motion to strike), Mar. 29, 2010 [Doc. No. 2016] (judicial notice), May 4, 2010 [Doc. No. 2056] (granting Rule 56 motion to strike and exclude expert testimony and report of Robert Wood); Dispositive Orders, Apr. 21, 2010 [Doc. No. 2029] (denying request to give preclusive effect to Estrada), *as amended by* May 18, 2010 [Doc. No. 2062], May 28, 2010 [Doc. No. 2068] (Illinois), June 28, 2010 [Doc. No. 2078] (ERISA).

applies the summary judgment standard set forth in the Kansas Decision, at 59-60.

When appropriate, the court will incorporate its reasoning from the Kansas decision. The reasoning for each of today's dispositions is provided state by state in alphabetical order and, for ease of reference, an appendix at the end of this opinion and order summarizes today's dispositions.

## I. GENERAL INTRODUCTION

Before turning to the specifics of today's decisions, the court addresses some common themes arising from the parties' briefs in these FedEx MDL cases and offers some general comments that might help to understand these decisions.

### A. These MDL Decisions Won't Preclude Most Future Litigation Concerning Employment Status of FedEx Ground Drivers.

The plaintiff drivers in these FedEx MDL cases have entered into independent contractor agreements with FedEx Ground to provide package delivery services. Generally, the drivers seek determinations that they are employees under the various states' laws and they seek reimbursement of business expenses and backpay for overtime and other wages. The nationwide character of this litigation makes it a truly unique set of cases, unlike anything that has appeared in the cases cited in the parties' briefs.

Employment status questions typically arise when someone is physically harmed—either a third party or a worker. Courts developed the common law right

2

to control test to determine whether an employer had reserved enough control over a worker to justify holding the employer liable for the worker's tortious conduct towards a third party. Modern statutes have extended worker's compensation protection to employees, sometimes using the common law right to control approach and sometimes broadly redefining the term "employee" to include a larger group of workers than the common law test would have included.

Today's cases don't involve physical harm to third parties or to the plaintiffs. Some of the states considered today have wage statutes that recognize the harm of illegal methods of paying wages to workers, such as not paying overtime, deducting business expenses from employees' wages, and the like. Cases involving these wage statutes often involve state agencies seeking to penalize wayward employers and to vindicate workers' statutorily created rights or the state's statutory rights to collect employment taxes. Though it is less common, workers also may vindicate their rights in private causes of action by seeking to have a court declare that they are employees instead of independent contractors. In other states lacking these statutes—and in all the states in this MDL litigation—there remains these MDL plaintiffs' generalized effort to be reclassified as employees so as to shift the balance of rights and duties in the working arrangement between themselves and FedEx: the plaintiff drivers then would have fewer duties and increased rights (but likely also decreased entrepreneurial opportunities with FedEx and decreased gross pay) and FedEx would face increased duties.

Beyond the substantive character of these claims, the procedural uniqueness of these cases—an MDL proceeding consisting of class actions—is particularly noteworthy because this procedural posture has substantially limited the scope of evidence available to this court to decide the drivers' generalized employment status question. Under the procedural posture of these cases, this court has considered evidence common to the drivers' relationships with FedEx on a nationwide basis: the Operating Agreement and generally applicable Policies and Procedures. As a condition of class certification, the court excluded particularized evidence of actual control between FedEx and the drivers. This condition was appropriate to satisfy the commonality requirement for class certification, to satisfy the commonality and judicial economy considerations motivating the consolidation of these cases in an MDL court, and to address the very nature of these plaintiffs' generalized claims.

The cases' substantive nature and procedural posture might limit the preclusive effect of this court's decisions in these cases. These decisions aren't expected to preclude injured persons from seeking *respondeat superior* liability or worker's compensation. Such personal injury cases would surely involve the review of much extrinsic and individualized evidence of a particular driver's relationship with FedEx. Today's decisions also don't address what the outcomes of these cases might be if the classes were defined differently.[3]

---

[3] The court directs the parties to the trial court's decision in <u>Estrada v. FedEx Ground</u>, No. BC 210130 (Cal. Super. Ct. July 26, 2004) [Exh. B to Pltfs' Req. for Judicial Notice, Apr. 24, 2008], for an example highlighting how class definitions might make a difference.

*B. The Procedural Posture of These Cases Limits the Scope of Evidence Reviewed.*

In their supplemental briefs, the drivers have complained at times that the court "refused" to consider extrinsic evidence of FedEx's actual conduct towards them. The cases' procedural posture limits the court to considering evidence truly common across the nation: the Operating Agreement and generally applicable Policies and Procedures. These cases might or might not come out differently under a different procedural posture allowing wider scope for review of extrinsic and particularized evidence, but that situation is not before the court today.[4]

The drivers' characterization of the court's use of evidence, after the court indulged their strategy of coming before an MDL court as classes, isn't well-taken. To disagree with the court's rulings is fair (and is a matter better handled through a motion to reconsider or an appeal), but to say the court "refused" to do something when the court accepted the drivers' own arguments on the matter isn't accurate.[5] The parties have heaped numerous insults upon each other's arguments and reasoning in their various briefs, and the court has patiently

---

[4] The scope of evidence surely has affected today's decisions, but a good example showing that the scope of evidence isn't determinative by itself is the trial court's decisions concerning Single Work Area and Multiple Work Area drivers in Estrada v. FedEx Ground, No. BC 210130 (Cal. Super. Ct. July 26, 2004) [Exh. B to Pltfs' Req. for Judicial Notice, Apr. 24, 2008]. On the flip side, the parties might find it helpful to review today's Pennsylvania decision, which involves discussion of two Pennsylvania cases containing very similar contractual arrangements, but very different outcomes due to the differing scopes of evidence available to the deciding courts. *Compare* Green v. Independent Oil Co., 201 A.2d 207, 210 (Pa. 1964), *with* Juarbe v. City of Philadelphia, 431 A.2d 1073 (Pa. Super. Ct. 1981).

[5] The court chronicles one example of the plaintiffs' flip-flop on their approach to the scope of evidence in today's Louisiana decision.

overlooked their excursions into the land of uncivil arguments, exaggerations, and mischaracterizations (and the court has avoided wasting time on listing citations to all the foul balls the parties pitched in their arguments); the court is less patient with mischaracterizations of its own efforts to rule fairly on the issues in this litigation.

The drivers have known at least since this court's first order granting class certification that the scope of evidence would, under the approach taken by the drivers, be limited to the Operating Agreement and generally applicable Policies and Procedures. *See generally* Op. and Ord., Mar. 25, 2008 [Doc.  No. 1119]. In July 2005, the drivers argued to the Judicial Panel on Multidistrict Litigation in Denver that their cases were appropriate for MDL centralization and that they could satisfactorily litigate their case based on common evidence. The drivers' ensuing briefs seemed to indicate that they were perfectly comfortable with, and felt they could win their case based on, the use of common evidence. The court tried to remind the drivers that their cases would be decided on the basis of common evidence. *See, e.g.*, Op. and Ord., July 27, 2009, at 6 n.5 [Doc. No. 1770] ("The court notes that the plaintiffs may have indicated a desire to introduce anecdotal evidence to support their claims in this action. If the plaintiffs intend to introduce anecdotal evidence of FedEx's actual exercise of control to support their claims, they should inform the court immediately because this may require reevaluation of class certification."); Ord., Apr. 22, 2008 [Doc. No. 1152].

As the court stated in the Kansas Decision:

6

The court sets forth the facts from the perspective of what control FedEx has the right to exercise over its drivers and not necessarily what control FedEx actually exercises on a daily basis. While FedEx managers might exercise more control than what is retained in the Operating Agreement and commonly applicable policies and procedures, the class was certified on the basis of right to control, not actual exercise of control. The plaintiffs reiterated to this court during class certification that they could show right to control by reliance solely on the Operating Agreement and applicable policies and procedures and wouldn't go beyond those documents to prove their case. In short, the issue for today's purposes is what control FedEx had the right to exert pursuant to the parties' contractual relationship.

\* \* \*

FedEx might actually exercise more control than authorized, but as explained, the court is limited to determining whether FedEx retained the right to control. The court relies on the policies and procedures to the extent they show how FedEx implemented its authority as retained by the Operating Agreement.

Kansas Decision, at 3-4, 72.

### C. Collateral Estoppel Issue

The California court of appeals affirmed the Estrada trial court's decision finding FedEx Single Work Area (SWA) drivers to be employees. Estrada v. FedEx Ground Package Sys., Inc., 64 Cal. Rptr. 3d 327 (Cal. Ct. App. 2007). The Estrada trial court held that the FedEx Multiple Work Area (MWA) plaintiff driver before it was an independent contractor, and that decision wasn't appealed. SWA drivers own and operate a single delivery route for FedEx, while MWA drivers own and operate two or more delivery routes. On the evidence before it, the Estrada trial court found that the MWA driver was subject to the same "strict controls" as the SWA drivers and that the MWA driver and SWA drivers were all integral to FedEx's

business. Estrada v. FedEx Ground, No. BC 210130, at *17 (Cal. Super. Ct. July 26, 2004) [Exh. B to Pltfs' Req. for Judicial Notice, Apr. 24, 2008]. Although the Estrada trial court held SWA drivers to be employees, it held the MWA driver to be an independent contractor based on his opportunity for profit as a MWA driver. MWA drivers testified at trial "as to their enthusiasm for their entrepreneurial opportunities for making good money," and the court noted that "a MWA has the opportunity to hire drivers and slowly but surely create a little financial empire under the aegis of FEG." Id. at *18. The opportunity for profit, and not how much profit the MWA plaintiff made, was dispositive. Id.

The plaintiff drivers have argued vigorously throughout this litigation that Estrada's SWA finding should be given preclusive effect in all these MDL cases. This court has addressed the drivers' argument and denied granting preclusive effect to the Estrada decision. *See generally* Op. and Ord., Apr. 21, 2010 [Doc. No. 2029]. The court denied collateral estoppel because Estrada involved facts specific to the California class in that case. The facts before the Estrada court and those before this court are dissimilar insofar as the facts available to this court don't go beyond the Operating Agreement and generally applicable Policies and Procedures. *See* Op. and Ord., Apr. 21, 2010, at 25-29 [Doc. No. 2029]. Also, the SWA class in Estrada was markedly different from the classes before this court because the MDL classes lump together SWA and MWA drivers. Thus, though the parties litigated a right to control issue in Estrada, the issue decided in Estrada isn't identical to issue before this court.

The drivers never addressed how the collateral estoppel issue might differ for the California class as distinct from other states' classes, even though California adds an economic realities twist to the common law right to control test and other states in this centralized docket don't add such a twist. Also, in the interest of fairness, the court hasn't precluded FedEx from litigating the right to control factor in today's cases when the drivers haven't addressed the potential preclusive effect of the Estrada trial court's finding that a MWA driver was an independent contractor under the California test. Op. and Ord., Apr. 21, 2010, at 41. Indeed, the drivers have all but ignored the Estrada trial court's MWA finding and have hardly addressed this court's findings in the Kansas Decision relating to their entrepreneurial opportunities. It can't work both ways: the drivers can't argue persuasively that Estrada should have preclusive effect on the California class (and other states' classes) while ignoring the Estrada trial court's MWA finding. As in Estrada, this court has found the drivers' entrepreneurial opportunities to be highly persuasive evidence indicating independent contractor status. Unlike Estrada, and because of the classes defined in these MDL cases, the court has no occasion to distinguish between SWA and MWA drivers. To repeat the Order denying the grant of preclusive effect to Estrada, the court doesn't apply the finding of a right to control in Estrada to these cases, but rather analyzes the right to control again.

*D. Intent Wasn't Dispositive in the Kansas Decision.*

9

In their supplemental briefs, the drivers characterize the Kansas Decision as placing dispositive weight on the clearly expressed intent in the Operating Agreement that an independent contractor relationship exist between themselves and FedEx. The court stated that this "factor weighs strongly in favor of independent contractor status." Kansas Decision, at 72. But among all the other factors, the intent factor weighed "strongly" because the intent expressed in the contracts was so clear, not because the intent factor had special status or carried dispositive weight. The court never said this factor was dispositive, and the court never believed this factor to be dispositive. The laws of every state considered in these cases generally require courts to look beyond contractual labels, and the court has done so by examining the Operating Agreement and generally applicable Policies and Procedures in their entirety, vis-à-vis the comprehensive list of factors that Kansas uses to determine employment status—the Kansas Decision would have been far shorter were it otherwise.

Most important in Kansas—and most important under the common law and Restatement tests generally—is the right to control, which typically is the weightiest factor. States often treat the right to discharge at will as the second most important factor. This court held that there was no reasonable inference that FedEx retained the right to control the methods and means of the drivers' work on a class-wide basis. *See* Kansas Decision, at 73. This finding came in light of the distinction between control of means and control of results. In most states, control of results doesn't indicate employee status; control of means used to achieve

10

contracted-for results does indicate employee status. Drawing the line between means and results is a challenging, highly contextual and fact-specific task. Bright-line rules prove elusive here. This court held that the controls reserved to FedEx were results-oriented: FedEx provides work to and pays contractor-drivers to provide the specific result of timely and safely delivered packages to FedEx customers. *See* Op. and Ord., Aug. 11, 2010, at 70, 73, 77, 81, 84, 85, 87, 100. The totality of the circumstances and review of all the relevant facts and factors led to this results-oriented conclusion. Buttressing this conclusion, FedEx has no right to discharge drivers at will. FedEx can non-renew a contract or cancel a contract for breach, but these are unexceptional rights common to any contractee in an independent contractor relationship; notably, FedEx is contractually unable to discharge a driver at a whim and on the spot the way an employee in an at-will employment relationship could be discharged.

In addition to the right to control and right to discharge factors, the court found the drivers' entrepreneurial opportunities to be highly probative of independent contractor status. Also, the plaintiff drivers are responsible for acquiring their own equipment, such as their own delivery trucks (and nothing suggests that the drivers aren't paid accordingly to cover these expenses), though the equipment factor generally weighs less heavily in indicating independent contractor status. The court repeats here what it stated in the Kansas Decision:

> Upon review of the evidence in the light most favorable to the plaintiffs, the only reasonable inference is that FedEx hasn't retained the right to direct the manner in which drivers perform their work.

11

> FedEx supervises the drivers' work and offers numerous suggestions and best practices for performance of assigned tasks, but the evidence doesn't suggest that FedEx has the authority under the Operating Agreement to require compliance with its suggestions. Further, other factors strongly weigh in favor of independent contractor status; in particular, the parties intended to create an independent contractor arrangement, *the drivers have the ability to hire helpers and replacement drivers, they are responsible for acquiring a vehicle and can use the vehicle for other commercial purposes, they can sell their routes to other qualified drivers, and FedEx doesn't have the right to terminate contracts at-will.* Although some facts weigh in favor of employee status, after considering all the relevant factors, the court finds that the plaintiffs are independent contractors as a matter of [Kansas] law.

Kansas Decision, at 3 (emphasis added).

The drivers' supplemental briefs gave little importance to their entrepreneurial opportunities with FedEx. Generally, employees can't sell their jobs, and they can't hire other people to do their jobs for them. The drivers call these entrepreneurial opportunities a "sham," but they haven't shown the court on the common evidence that these opportunities are but a sham. After considering a wealth of extrinsic testimonial evidence, the trial court in <u>Estrada</u> held a Multiple Work Area driver (a driver who took advantage of the entrepreneurial opportunities available to him with FedEx by owning multiple delivery routes) to be an independent contractor. This court made its own findings using the common evidence available to it in the Kansas Decision. To characterize the Kansas Decision as finding a contractual label to be dispositive is to fundamentally misunderstand this court's reasoning.

*E. Kansas Law is Typical of the States' Laws Reviewed Today.*

The drivers' supplemental briefs make a strong effort to distinguish Kansas law as being unique, while FedEx seizes on language from the Kansas Decision to say that what's true in Kansas must be true elsewhere. These approaches have resulted in some jarringly inconsistent arguments between the summary judgment briefs and supplemental briefs, making it difficult for the court to accept the parties' statements on what the law is. For example, in the Arkansas case, FedEx argued in its summary judgment response brief that Arkansas courts require each and every Restatement factor to favor either employee or independent contractor status for summary judgment to be appropriate. The drivers' reply challenged this view of Arkansas law and persuasively distinguished the cases on which FedEx relied. In a move that reflects the parties' parries in this litigation as a whole, the drivers' post-Kansas supplemental brief now urges the very argument they previously condemned: that all Restatement factors must support independent contractor status in Arkansas for FedEx to win, and the drivers' supplemental brief relies exclusively on the very cases the drivers had persuasively argued held dubious value for this docket.

Rather than helping the court to understand the law, some arguments have bordered on simple misrepresentations of the law. In any event, as today's decisions will show, the court's own review of the law of the various states has led to the conclusion that Kansas law is not strangely alien or *sui generis*, but rather is very typical of the states' laws on determining employment status.

One of the drivers' characterizations of the court's understanding of Kansas law requires mention. The drivers try to distinguish the Kansas Decision by arguing that it carved out an exception in Kansas law: if an employer requires a worker to do a certain amount of work within customer-based time boundaries, that worker still can be considered an independent contractor if the employer (in this case, FedEx) is contractually bound to provide full days of work to the drivers. Without the employer's exceptional contractual obligation—so the drivers' argument goes—the worker would be considered an employee.

As today's considerations of the various states' laws should make clear, resolution of employment status at common law doesn't allow for bright-line rules. Statutory redefinitions of the scope of employee status sometimes create clearer bright-line rules, unmistakably broadening the scope of who is an employee (often called "statutory employees").[6] But at common law, the test is the right to control the means and methods of achieving results; control of the results doesn't indicate employee status. Determining the line between means and methods, and results, is context specific and requires considering multiple factors and examining the totality of the circumstances of a given working relationship.

The Kansas Decision carved out no exceptions to Kansas law: this court isn't in a position to declare what Kansas law is when Kansas itself hasn't declared what its law is or what its law most likely would be. Rather, the Kansas

---

[6] The court directs the parties to today's decisions in the Kentucky, New Hampshire, and Nevada cases.

14

Decision, and today's decisions, take into consideration all the circumstances of the FedEx/driver working relationship and conclude that customer-based constraints on the drivers are results-oriented controls that don't indicate employee status.

The drivers complain that FedEx makes them do so much work within so much time, which they say indicates control of means and methods. But the numerous cases across the states reviewed by the court indicate that "so much work within so much time" doesn't, by itself, indicate employee status—subcontractors often agree to get a job done within a specified time. The Kansas Decision pointed out that FedEx is contractually bound to give drivers work. The parties agreed to something: FedEx would provide work, and the drivers would do that work. This type of agreement is common and unexceptional in all working relationships, whether of the employee or independent contractor variety, and is unexceptional to states' laws differentiating between employee and independent contractor status. The court doesn't agree that it created an exception in Kansas law, and the court doesn't agree that Kansas law is alien and unique compared to the rest of the states' laws relevant to today's decisions.

### F. FedEx's Requests for Summary Judgment sua sponte.

In eleven of the states with pending summary judgment motions filed by the drivers,[7] FedEx didn't file motions for summary judgment and instead argued in its summary judgment response briefs that the laws of those eleven states inflexibly required a trial on the employee vs. independent contractor question. The court held under Kansas law that the facts were susceptible to only one reasonable conclusion: on a class-wide basis, FedEx hasn't retained the right to control the details of the drivers' methods and means of doing their work. Kansas Decision, at 73. FedEx now urges the court to apply this same conclusion to these eleven states and enter judgment *sua sponte* in its favor.

"[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that [it] had to come forward with all of [its] evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Generally, *sua sponte* entry of judgment is a "hazardous procedure, . . . warrants special caution and is often unnecessary," but it is permissible. Jones v. Union Pacific R.R. Co., 302 F.3d 735, 740 (7th Cir. 2002). Federal Rule of Civil Procedure 56(f)(1), which became effective December 1, 2010, specifically authorizes granting summary judgment for a nonmovant—what the Rule calls "Judgment Independent of the Motion"—after notice and a reasonable time to respond. The drivers' supplemental briefs make clear that they knew

---

[7] Alabama, Arizona, Arkansas, Nevada, New Hampshire, North Carolina, Ohio, Oregon, Pennsylvania, South Carolina, and West Virginia.

FedEx would seek such judgments. The drivers didn't ask for additional briefing; instead, they explained their disagreement with FedEx's view of the law and argued that judgment in favor of FedEx wouldn't be appropriate. Thus, the court concludes the drivers have had a reasonable opportunity for response.

FedEx argues that judicial economy would best be served by entering what is now called judgment independent of the motion in its favor in these eleven states. The parties have fully litigated these MDL cases within their procedural posture. The evidence before the court—the Operating Agreement and generally applicable Policies and Procedures—isn't in dispute, and the drivers didn't take the position that this evidence contains ambiguous terms. The drivers' presentation of facts is common and repeated across the board in these cases, and their arguments about how the court should view the facts don't materially change from one state to the next.

FedEx's about-face on the appropriateness of summary judgment in these cases seizes attention, but this court's duty is to decide these cases as the states' highest courts (or, in the absence of guidance from the highest courts, as the appellate courts) would decide them. *E.g.*, <u>Home Valu, Inc. v. Pep Boys</u>, 213 F.3d 960, 963 (7th Cir. 2000). As set forth in the decisions in this opinion, the court has reviewed the laws of these eleven states and finds that resolution of the employment status question without a trial is appropriate in these states when the facts are undisputed and lend themselves to but one inference. The court hesitates to grant FedEx a windfall, but because the drivers had full opportunity

to present their position, judicial economy is best served by granting judgment to FedEx in these states if the states' laws favor FedEx as did Kansas law. Also, insofar as it is most fair to give parties an answer to a question when the question is ripe and has been pending for quite some time, fairness to the parties is best served by answering now the general question presented in these MDL cases.

## II. DISPOSITION OF FEDEX MDL CASES

### A. Alabama

### (1) 3:06-cv-428, Floyd

The Floyd drivers allege violations of the Alabama Deceptive Trade Practices Act and fraud; they seek an accounting, rescission, declaratory judgment, and injunctive relief. The drivers didn't move to certify the ADTPA and fraud claims, but they don't indicate that their claims turn on anything other than a determination of their employment status under Alabama law. *See* Memo. in Support of Mot. to Certify Class (Alabama), Apr. 2, 2007, at 1 [Doc. No. 583]. Only the drivers filed a motion for summary judgment. For the reasons stated below, the court denies the drivers' motion and grants judgment independent of the motion to FedEx. Because the Alabama claims stand or fall on the common question of whether FedEx Ground misclassified its drivers as independent contractors, judgment will be entered for FedEx on all claims in this Alabama (Floyd) case.

18

As noted, FedEx didn't move for summary judgment against the Alabama class. In its supplemental brief, FedEx asks the court to enter judgment *sua sponte* (now called judgment independent of the motion) in its favor. As set forth in the general introduction to today's decisions, the court takes this request seriously because summary judgment is appropriate under Alabama law, the drivers' employment status can be examined today without prejudice to the plaintiffs, and answering now the question of the plaintiff drivers' employment status under Alabama law will conserve judicial resources.

FedEx's summary judgment response brief argued that summary judgment on the employment status question is "practically unavailable" in Alabama. Yet Alabama courts have been perfectly willing to enter judgment on employment status without a trial when the facts are undisputed. *See, e.g.*, Dickinson v. City of Huntsville, 822 So.2d 411, 416 (Ala. 2001) (affirming summary judgment finding independent contractor status where no substantial evidence was presented to show employee status); In re Curry v. Interstate Express, Inc., 607 So.2d 230, 233 (Ala. 1992) (reversing lower court and finding worker to be employee); Atchison v. Boone Newspapers, Inc., 981 So.2d 427, 434 (Ala. Civ. App. 2007) (affirming summary judgment finding worker to be independent contractor); *see also* Lankford v. Gulf Lumber Co., Inc., 597 So.2d 1340, 1344 (Ala. 1992) ("[W]hether a defendant reserved the right of control is generally a question of fact to be decided by the jury *if the evidence is in dispute* . . . ." (emphasis added)).

19

In Alabama "for one to be an employee, the other party must retain the right to direct the manner in which the business shall be done, as well as the result to be accomplished or, in other words, not only what shall be done, but how it shall be done." Atchison v. Boone Newspapers, 981 So.2d at 431 (citations omitted). Alabama courts "look[] to the reserved right of control rather than the actual exercise of control." Id. (quoting Turnipseed v. McCafferty, 521 So.2d 31, 32 (Ala. Civ. App. 1987)); see also In re Curry v. Interstate Express, 607 So.2d at 232 ("In the last analysis, it is the reserved right of control rather than its actual exercise that provides the answer."). If the right of control extends no further than directing what is ultimately to be accomplished, employee status isn't indicated. See Lankford v. Gulf Lumber Co., 597 So.2d at 1343 (finding right to supervise loggers was merely to ensure contracted-for results and didn't indicate employee status); Williams v. Tennessee River Pulp and Paper Co., 442 So.2d 20, 21-22 (Ala. 1983) (finding the only reasonable inference from work site inspections was that company was supervising conformity with contract requirements, which didn't indicate employee status); Atchison v. Boone Newspapers, 981 So.2d at 431; Liberty Mut. Ins. Co. v. D&G Trucking, Inc., 966 So.2d 266, 268 (Ala. Civ. App. 2006).

Alabama courts consider four factors to decide whether an employer has retained the right to control the manner of contract performance: (1) direct evidence of the right or exercise of control; (2) the method of payment used; (3) whether the alleged principal had the right to terminate employment; and (4) the

20

right to control another's time. <u>Dickinson v. City of Huntsville</u>, 822 So.2d 411, 416 (Ala. 2001); *see also* <u>Williams v. Tennessee River Pulp & Paper Co.</u>, 442 So.2d at 21 ("[T]he crucial factor is the right of Tennessee Paper to control the manner of Mauldin's performance."). Alabama courts sometimes consider the furnishing of equipment instead of the right to control another's time. <u>Atchison v. Boone Newspapers</u>, 981 So.2d at 432.

The <u>Floyd</u> plaintiffs argue that if a company "controlled what loads [the driver] picked up and where he picked them up," then Alabama views such control as establishing an employee relationship. Pltfs' Supp. Brief (Alabama), Sept. 24, 2010, at 2 [Doc. No. 2161] (*quoting* <u>In re Curry v. Interstate Express</u>, 607 So.2d at 233, and *citing* <u>Liberty Mut. Ins. v. D&G Trucking</u>, 966 So.2d at 269 ("Trucking personnel decide which driver to dispatch . . . [and] [o]nce that driver has accepted a load, he or she is not permitted by D&G Trucking to run a personal errand that might involve significant travel beyond the pickup and delivery.")). The presence of "some controls," the drivers argue, is direct evidence of the right to control. Pltfs' Supp. Brief, at 2-3 (*quoting* <u>Liberty Mut. Ins. v. D&G Trucking</u>, 966 So.2d at 270).

The drivers are right that at some point, "some control" amounts to enough control to indicate an employee relationship. But not here. <u>In re Curry</u> and <u>Liberty Mutual</u> are distinguishable from the case before the court today.[8] The <u>In re Curry</u>

---

[8] FedEx notes that these are worker's compensation cases and at least one Alabama decision distinguishes worker's compensation cases from other employment status cases. "The work[er's] compensation law is liberally construed to carry out the beneficent purposes of the act and to

court didn't find a right to control simply because "Interstate controlled what loads [Curry] picked up and where he picked them up, as well as the place of delivery of the cargo." In re Curry v. Interstate Express, 607 So.2d at 233. Interstate ordered Mr. Curry to transport his load of dog food even after Mr. Curry expressed his concern that the load wasn't properly secured, which led to Mr. Curry's injury. Id. Reasonably, in light of the order to transport a load known to be improperly secured, Interstate should be responsible to Mr. Curry for worker's compensation.

Liberty Mutual involved a worker's compensation insurance premium dispute where a company reclassified drivers as independent contractors without making significant changes to the company's actual relationship with the drivers. Liberty Mut. Ins. v. D&G Trucking, 966 So.2d at 269-270. Besides the reclassification, D&G Trucking continued to control drivers as it had before and continued to own the trucks the drivers drove. In both cases, the defendants' orders concerning the identity of loads and timing of pick up and delivery were not, by themselves, dispositive facts: those facts were surrounded by a larger context favoring employee status. Neither case involved facts that overlap in a compelling way with the facts before this court. Also, Alabama doesn't treat any single fact as dispositive; employment status is a fact-intensive inquiry. See Hooker Constr., Inc. v. Walker, 825 So.2d 838, 843-844 (Ala. Civ. App. 2001) ("[T]he retention of

---

eliminate procedural technicalities." Williams v. Tennessee River Pulp and Paper Co., 442 So.2d 20, 23 (Ala. 1983). The plaintiffs point out that no other Alabama decision makes this distinction. The court doesn't rely on any distinction in Alabama between the liberal construction of worker's compensation cases and other employment status cases.

control necessary to establish employee status is determined on a case-by-case basis. No one fact by itself can create an employer-employee relationship. . . . When taken as a whole, the evidence supports the trial court's finding." (citation omitted)).

The court incorporates here its reasoning in the Kansas Decision. As previously held, FedEx's controls are results-oriented, and FedEx's supervision exists to ensure contracted-for results. Such controls don't indicate employee status in Alabama. "After reviewing the common undisputed evidence offered by the parties, the only reasonable inference that can be drawn is that FedEx hasn't retained the right to control the details of the contractors' work methods on a class-wide basis." Kansas Decision, at 73.

As in the Kansas Decision, Alabama drivers don't negotiate their pay: FedEx controls their pay. Some Alabama courts view control of pay as weighing in favor of employee status. *See* In re Curry v. Interstate Express, 607 So.2d at 233 (finding Interstate controlled payment where Interstate determined percentage driver received). Other courts don't view it this way, but rather are satisfied that payment without deducting taxes and with provision of 1099 Forms weighs in favor of independent contractor status. *See* Atchison v. Boone Newspapers, 981 So.2d at 430, 432. Also, as in the Kansas Decision, FedEx doesn't have the right to terminate Alabama drivers at will, and FedEx doesn't have the right to control Alabama drivers' time insofar as contractors can hire assistants and replacement drivers and can develop profitable package delivery businesses in contract with

23

FedEx. Finally, Alabama drivers are fully responsible for obtaining their own equipment—even though FedEx makes fulfilling this responsibility easier through its Business Support Package, the drivers have the ultimate responsibility of obtaining equipment with or without FedEx's help. *See* Keebler v. Glenwood Woodyard, Inc., 628 So.2d 566, 568-569 (Ala. 1993) (noting that enabling contractor to work by providing equipment and insurance wasn't the same as controlling the manner in which he worked). For these reasons, and the reasons stated in the Kansas Decision, the Floyd drivers are independent contractors under Alabama law.

### *(2) 3:07-cv-191, Gentle*

Bruce and Stephanie Gentle present the same claims as the Floyd drivers—violations of the Alabama Deceptive Trade Practices Act and fraud—and seek an accounting, rescission, declaratory judgment, and injunctive relief. The Gentles haven't filed a motion for summary judgment, but today's decision in Floyd applies to Bruce Gentle's claims because he is a member of the Alabama class. The court has no information on whether Stephanie Gentle is a member of the Alabama class; if she isn't, the transferor court will decide how much weight to give to today's procedurally distinct decision in Floyd when deciding her case. The court will suggest remand of the Gentles' case to its transferor court for further disposition.

The court instructs the parties to file a joint proposed pretrial order with this court within twenty-one days of entry of this order. In addition to

summarizing the history of this case, including significant orders and their docket numbers (including, but not limited to, evidentiary, class certification, and dispositive orders), the parties should provide a detailed description of the claims that remain outstanding, without arguing the merits of those claims, and should outline for the court and the transferor court how they anticipate resolving those claims.

### B. Arizona (3:07-cv-272, <u>Gibson</u>)

The <u>Gibson</u> drivers allege violations of Arizona's wage withholding statute, ARIZ. REV. STAT. ANN. § 23-352, and seek rescission, declaratory relief, and injunctive relief. All claims are class certified; only the drivers filed a summary judgment motion. For the reasons stated below, the court denies the plaintiffs' motion and grants judgment independent of the motion to FedEx. Because the Arizona claims stand or fall on the common question of whether FedEx Ground misclassified its drivers as independent contractors, judgment will be entered in FedEx's favor on all claims in <u>Gibson</u>.

As noted, FedEx didn't file a motion for summary judgment against the Arizona class. In its supplemental brief, FedEx asks the court to enter judgment *sua sponte* (now called judgment independent of the motion) in its favor. As set forth in the general introduction to today's decisions, the court takes this request seriously because summary judgment is appropriate under Arizona law, the drivers' employment status can be examined today without prejudice to the

plaintiffs, and answering now the question of the plaintiff drivers' employment status under Arizona law will conserve judicial resources.

FedEx insisted in its summary judgment response brief that Arizona law requires a trial on the employment status question. As in other states, summary judgment is appropriate in Arizona where the material facts are undisputed and only one inference can be drawn from those facts. Santiago v. Phoenix Newspapers, Inc., 794 P.2d 138, 141 (Ariz. 1990). The Kansas Decision held that "[a]fter reviewing the common undisputed evidence offered by the parties, the only reasonable inference that can be drawn is that FedEx hasn't retained the right to control the details of the contractors' work methods on a class-wide basis." Kansas Decision, at 73. For purposes of this case, Arizona law doesn't materially differ from Kansas law.

The parties agree that Arizona's common law test for employment status provides the definition of "employee" under Arizona's wage withholding statute. "The right to control or supervise the method of reaching a specific result determines whether an individual is an employee or an independent contractor." Home Ins. Co. v. Industrial Comm'n, 599 P.2d 801, 803 (Ariz. 1979); see also Hunt Bldg. Corp. v. Industrial Comm'n, 713 P.2d 303, 306 (Ariz. 1986) (same); Hughes v. Industrial Comm'n, 558 P.2d 11, 12-13 (Ariz. 1976) ("[W]e must look to the right to control the method of reaching a desired result reposed in the employer. It is not the exercise of the power to supervise and control, but rather its existence which is to be considered.").

26

Arizona doesn't follow a single formula for its right to control test. Some courts have looked to the multi-factor Restatement test for employment status, discussed in the Kansas Decision. *See, e.g.*, <u>Santiago v. Phoenix Newspapers</u>, 794 P.2d at 141 (*citing* RESTATEMENT (SECOND) OF AGENCY § 220)). Other courts have examined the right to control in light of other factors that also were discussed in the Kansas Decision. *See, e.g.*, <u>id.</u> at 145 n.6 (noting IRS list of twenty factors: instructions; training; integration; services rendered personally; hiring, supervising and paying assistants; continuing relationship; set hours of work; full time required; doing work on business premises; order of sequence set; reporting; payment by time, not job; payment of traveling expenses; furnishing of tools; investment; realization of profit or loss; working for more than one firm at a time; making service available to public; right to discharge; right to terminate without liability); <u>Home Ins. Co. v. Industrial Comm'n</u>, 599 P.2d at 803 ("These indicia . . . include: duration of the employment; the method of payment; who furnishes necessary equipment; the right to hire and fire; who bears responsibility for workmen's compensation insurance; the extent to which the employer may exercise control over the details of the work, and whether the work was performed in the usual and regular course of the employer's business."); <u>Dial-A-Messenger, Inc. v. Arizona Dep't of Econ. Sec.</u>, 648 P.2d 1053, 1057-1059 (Ariz. Ct. App. 1982) (discussing multiple factors: authority over an individual's assistants; compliance with instructions; oral or written reports; personal performance; establishment of work sequence; right to discharge; set hours of work; training;

27

amount of time; expense reimbursement; availability to the public; compensation on job basis; realization of profit or loss; significant investment). The common denominator is that the test is the alleged employer's reserved right to control. Arizona courts consider the totality of the circumstances when evaluating the indicia of control, and no single factor is itself conclusive. Santiago v. Phoenix Newspapers, 794 P.2d at 143; Hunt Bldg. Corp. v. Industrial Comm'n, 713 P.2d at 306; Home Ins. Co. v. Industrial Comm'n, 599 P.2d at 803 ("To determine the right to control, courts look to the totality of the facts and circumstances of each case, examining various indicia of control. . . . In undertaking an analysis none of the indicia is, in itself, conclusive.").

The drivers' supplemental brief highlights and relies on the use in some Arizona decisions of the disjunctive "*or*" to argue that a right to supervise contracted-for results indicates an employee relationship in Arizona. See Home Ins. Co. v. Industrial Comm'n, 599 P.2d at 803 (noting employment status turns on "[t]he right to control *or* supervise the method of reaching a specific result" (emphasis added)). The language cited by the drivers doesn't support their argument. The phrase doesn't say that the right to supervise a result indicates employee status; the phrase says the right to supervise the method of reaching a specific result indicates employee status. This test is no different from other states using the right to control test, and it differentiates between results-oriented supervision of contracted-for rights and supervision and control of means and methods used to achieve those results.

28

If the drivers were correct, Arizona law would be radically different from Kansas law and Arizona cases would reflect their argument. But Arizona cases don't interpret the "or" language as the drivers suggest. For example, the Home Insurance court, which used the disjunctive "or", held that a hiring party could reasonably expect the worker's compensation claimant to follow established departure and arrival times, and that he not deviate from well-recognized delivery routes, without creating an employment relationship. Home Ins. Co. v. Industrial Comm'n, 599 P.2d at 804; *see also* Hunt Bldg. Corp. v. Industrial Comm'n, 713 P.2d at 306-307 (noting that applying Arizona's right to control test "require[s] sufficient control over the method of reaching a desired result as opposed to merely controlling the end result of the work."); Central Mgmt. Co. v. Industrial Comm'n, 781 P.2d 1374, 1376-1377 (Ariz. Ct. App. 1989) ("If the right of control of details goes no further than is necessary to ensure a satisfactory end result, it does not establish employment." (citation omitted)).

The drivers also argue that the intent factor is "noticeably absent" from Arizona decisions. Arizona cases hardly mention intent at all. But, as discussed in the general introduction to today's decisions, even though the intent factor weighs clearly in favor of an independent contractor relationship in states that weigh this factor, this factor wasn't dispositive in the Kansas Decision and its absence from consideration under Arizona law doesn't change today's outcome.

The court has held that FedEx's retained controls are results-oriented and there is no reasonable inference that FedEx has retained the right to control the

methods and means of the plaintiff drivers' work on a class-wide basis. Kansas Decision, at 73. The Kansas Decision discussed nearly all the factors cited by Arizona courts, and the court incorporates that decision here. One factor not discussed in Kansas is the drivers' availability to the public. The drivers are free to work for whomever else they wish, and, as discussed in the Kansas Decision, this freedom is far from illusory when the drivers take advantage of the entrepreneurial opportunities available to them. Their trucks, when covered with the FedEx logo, aren't available to the public for service. Yet plumbers working at a job site aren't available to the rest of the public when working a contract, so there's nothing special in itself about a contractor or a van being tied up with a particular job. The availability factor could indicate employee status under numerous factual contexts, but in light of the drivers' entrepreneurial opportunities, this factor doesn't change the balance found by the court in its Kansas Decision. For the reasons stated here and in the Kansas Decision, the Gibson drivers are independent contractors under Arizona law.

### C. Arkansas (3:06-cv-209, Harris)

The Harris drivers allege violations of Arkansas' Wage and Hour Law, breach of contract, misrepresentation, unjust enrichment, conversion, quantum meruit, and violations of the Fair Labor Standards Act; they seek declaratory judgment and injunctive relief. The drivers didn't seek class certification on the breach of contract, misrepresentation, or FLSA claims, but they represented that "[a]t the

heart of the Arkansas claims is the common 'overarching issue' of whether FXG improperly labels these drivers as independent contractors." Memo. in Support of Mot. to Certify Class (Arkansas), Apr. 23, 2007, at 1 [Doc. No. 603]. Only the plaintiffs moved for summary judgment. For the reasons stated below, the court denies the drivers' summary judgment motion and grants judgment independent of the motion to FedEx on the state law claims only. To the extent the drivers' claims depend upon Arkansas state law, the court decides their claims today because they turn on the central question of the drivers' employment status under Arkansas law. The FLSA claim hasn't been briefed and requires further development with individualized evidence. *See* Op. and Ord., July 27, 2009, at 9-16 [Doc. No. 1770]. The court will suggest remand of the FLSA-related claims for further disposition.

FedEx didn't file a summary judgment motion with respect to the Arkansas class. In its supplemental brief, FedEx asks the court to enter judgment *sua sponte* (now called judgment independent of the motion) in its favor. As set forth in the general introduction to today's decisions, the court takes this request seriously because summary judgment is appropriate under Arkansas law, the drivers' employment status can be examined today without prejudice to the plaintiffs, and answering now the question of the plaintiff drivers' employment status under Arkansas law will conserve judicial resources. Summary judgment is appropriate in Arkansas when the facts are undisputed and only one inference can reasonably be drawn from them. Howard v. Dallas Morning News, Inc., 918

S.W.2d 178, 185 (Ark. 1996); *see also* <u>Dickens v. Farm Bureau Mut. Ins. Co. of
Arkansas</u>, 868 S.W.2d 476 (Ark. 1994) (affirming summary judgment finding
independent contractor status).

Arkansas follows the multi-factor Restatement test for employment status
discussed in the Kansas Decision. *See* RESTATEMENT (SECOND) OF AGENCY § 220.
The right to control is the most important factor, and the right to control, not
actual control, determines the relationship. Because a fact intensive inquiry is
required, each case must be decided on its own facts, under the totality of the
circumstances. *See* <u>Conagra Foods, Inc. v. Draper</u>, 276 S.W.3d 244, 249 (Ark.
2008); <u>Arkansas Transit Homes, Inc. v. Aetna Life & Casualty</u>, 16 S.W.3d 545,
547-548 (Ark. 2000); <u>Howard v. Dallas Morning News</u>, 918 S.W.2d at 182-183.

Arkansas follows the distinction between controlling results and controlling
methods and means used to obtain those results:

> It is not enough that the employer has merely a general right to order
> the work stopped or resumed, to inspect its progress or to receive
> reports, to make suggestions or recommendations which need not
> necessarily be followed, or to prescribe alterations and deviations.
> Such a general right is usually reserved to employers, but does not
> mean that the contractor is controlled as to his methods of work, or
> as to operative detail. There must be a retention of a right of
> supervision that the contractor is not entirely free to do the work his
> own way.

<u>Conagra Foods v. Draper</u>, 276 S.W.3d at 250 (*quoting* <u>Williams v. Nucor-Yamato
Steel Co.</u>, 886 S.W.2d 586, 587 (Ark. 1994) (alterations omitted)).

> [I]n contracts for the performance of work, the inclusion of such
> phrases as, "work is to be done in accordance with instructions,"
> "under direction and supervision," and the like does not relate to the

> method or manner in which work is to be done, and does not govern
> the details of the physical means by which the work is to be
> performed, or change the status of independent contractor to that of
> master and servant.

Conagra Foods v. Draper, 276 S.W.3d at 250 (discussing Moore v. Phillips, 120

S.W.2d 722 (Ark. 1938)).

Arkansas courts construe employee status more broadly in situations

involving *respondeat superior* liability or worker's compensation. Among all the

states' cases this court has examined, Arkansas courts have given special

emphasis to the rule that although one entrusts work to an independent

contractor, one may yet be liable for harm the contractor causes to others to the

extent one has retained control of any part of the contractor's work—even though

the contractor still is generally considered an independent contractor and not an

employee. Elkins v. Arkla, Inc., 849 S.W.2d 489, 490 (Ark. 1993) (*citing*

RESTATEMENT (SECOND) OF TORTS § 414). As the Arkansas Supreme Court put it,

"[W]hen one is sought to be held responsible for the tortious act of another under

the principle of *respondeat superior*, the question of responsibility will not depend

entirely upon the existence of some actual contractual relationship of master and

servant. It is sometimes allowable to prove the relation of master and servant by

the fact that one performs service for another." Conagra Foods v. Draper, 276

S.W.3d at 249, 250 (discussing RESTATEMENT (SECOND) OF TORTS § 414); Howard v.

Dallas Morning News, 918 S.W.2d at 184; *but see* Blankenship v. Overholt, 786

S.W.2d 814, 816 (Ark. 1990) (finding no liability even where employer provided

numerous specifications to contractor). Still, personal injury caused by an independent contractor doesn't automatically result in liability for the employer; when no factor supports a finding of employee status, no *respondeat superior* liability will attach. *See* Williams v. Nucor-Yamato Steel Co., 886 S.W.2d at 587 (stating that where there's no exercise of actual control or retained right of control, there's no liability for a company toward the injured employee of independent contractor). Yet Arkansas appears to give wider scope to employer liability in *respondeat superior* cases involving independent contractors, which has caused this court to read Arkansas *respondeat superior* cases with caution because today's case involves no personal injury issues.

Additionally, Arkansas policy is to liberally construe the scope of employee status in worker's compensation cases. *See, e.g.*, Franklin v. Arkansas Kraft, Inc., 670 S.W.2d 815, 816 (Ark. Ct. App. 1984) ("It is well settled that the determination whether, at the time of injury, a person was an employee or an independent contractor, is a factual one, and the Commission is required to follow a liberal approach, resolving doubts in favor of employment status for the [injured] worker." (citation omitted)); *see also* Irvan v. Bounds, 170 S.W.2d 674, 675 (Ark. 1943) (same). But this isn't a worker's compensation case, either.

The drivers rely on three key cases to argue that they are employees under Arkansas law,[9] but those cases are distinguishable because they involve issues of

---

[9] Ironically, the plaintiffs argued in their summary judgment reply brief that these non-summary judgment cases were, at a minimum, not controlling and, at most, held dubious persuasive value because their procedural posture involved jury verdicts and heavy burdens to overcome those jury

*respondeat superior* and worker's compensation. *See* <u>Conagra Foods, Inc. v. Draper</u>, 276 S.W.3d 244 (Ark. 2008) (*respondeat superior*, personal injury); <u>Arkansas Transit Homes, Inc. v. Aetna Life & Casualty</u>, 16 S.W.3d 545 (Ark. 2000) (worker's compensation); <u>Howard v. Dallas Morning News, Inc.</u>, 918 S.W.2d 178 (Ark. 1996) (*respondeat superior*, personal injury). The physical harm context sufficiently colored the decisionmaking of those courts to cast doubt on the cases' controlling value for today's decision. As noted, the <u>Conagra Foods</u> court stated *respondeat superior* liability sometimes is appropriate merely because one person performs service for another. Independent contractors, by definition, perform services for others, so the general question of employment status can't be colored by a policy that imposes liability when physical injury occurs, because no physical harm is part of the case before the court today.

In the Kansas Decision, the court held FedEx's controls to be results-oriented controls, not controls over methods and means. Further, the court held that only one reasonable inference was available from the undisputed facts: although FedEx has reserved the right to control the contracted-for results, on the evidence available under this case's procedural posture, FedEx hasn't retained the right to control the details of the contractors' work methods on a class-wide basis. *See* Kansas Decision, at 73. The court addressed the Restatement factors in its

---

verdicts. *See* Reply Memo. in Support of Mot. for Summ. Judg. (Arkansas) (Corrected), July 10, 2008, at 2 & n.2 [Doc. No. 1475]. The plaintiffs' original argument is somewhat persuasive, but the differing issues of *respondeat superior* and worker's compensation dispositively distinguish these cases.

Kansas Decision, and the reasoning from that decision is incorporated here. The court concludes that the <u>Harris</u> drivers are independent contractors under Arkansas law.

The court instructs the parties to file a joint proposed pretrial order with this court within twenty-one days of entry of this order. In addition to summarizing the history of this case, including significant orders and their docket numbers (including, but not limited to, evidentiary, class certification, and dispositive orders), the parties should provide a detailed description of the FLSA-related claims that remain outstanding, without arguing the merits of those claims, and should outline for the court and the transferor court how they anticipate resolving those claims.

### D. California

#### (1) 3:05-cv-528, <u>Alexander</u>

The <u>Alexander</u> drivers allege violations of the Family and Medical Leave Act; violations of various California wage-related statutes, including failure to reimburse, failure to pay overtime, late payment of wages, failure to provide meal and break periods, and illegal deductions from wages; unlawful coercion; fraud; unfair business practices; and wrongful termination. They seek an accounting, civil penalties, declaratory relief, and injunctive relief. The court granted certification for the state law claims, but denied certification for the FMLA claims because the federal claims require individualized evidence for predominant issues.

36

*See* Op. and Or., Mar. 25, 2008, at 65-66 [Doc. No. 1119]. The parties filed cross-motions for summary judgment. For the reasons stated below, the court grants summary judgment to FedEx and denies the plaintiffs' motion for summary judgment. The holding that the plaintiffs are independent contractors under California state law resolves the state law claims. The parties haven't briefed the FMLA-related claims, and those claims require further development. The court will suggest remand of the <u>Alexander</u> case for further disposition of the FMLA-related claims.

The parties agree that because the relevant statutes in question don't define "employee," the applicable employment status test is set forth in <u>S.G. Borello & Sons, Inc. v. Department of Indus. Relations</u>, 256 Cal. Rptr. 543 (Cal. 1989). *See* <u>Estrada v. FedEx Ground Package Sys.</u>, 64 Cal. Rptr. 3d 327, 335 (Cal. Ct. App. 2007). The principal test of employment status is "whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired. If control may be exercised only as to the result of the work and not the means by which it is accomplished, an independent contractor relationship is established." <u>S.G. Borello & Sons v. Department of Indus. Relations</u>, 256 Cal. Rptr. at 548 (*citing* <u>Tieberg v. Unemployment Ins. Appeals Bd.</u>, 88 Cal. Rptr. 175, 177 (Cal. 1970)). The right to discharge at will, without cause, is strong evidence of the existence of employee status. <u>S.G. Borello & Sons v. Department of Indus. Relations</u>, 256 Cal. Rptr. at 548 (*citing* <u>Tieberg v. Unemployment Ins. Appeals Bd.</u>, 88 Cal. Rptr. at 179). Other factors to be

37

considered are the remaining factors from the Restatement (Second) of Agency § 220. <u>S.G. Borello & Sons v. Department of Indus. Relations</u>, 256 Cal. Rptr. at 548 (*citing* <u>Tieberg v. Unemployment Ins. Appeals Bd.</u>, 88 Cal. Rptr. at 179-180 & n.4). Individual factors aren't applied mechanically as separate tests; they are intertwined and their weight often depends on particular combinations and the circumstances and facts of each case. <u>S.G. Borello & Sons v. Department of Indus. Relations</u>, 256 Cal. Rptr. at 548.

<u>S.G. Borello & Sons</u> pushed this traditional right to control test in the direction of an "economic realities" test, without eliminating the applicability of the right to control test and the Restatement factors. This way of approaching the common law factors differs materially from other states considered in today's decisions. <u>S.G. Borello & Sons</u> was a worker's compensation case and heavily emphasized the history and remedial and social purposes of California's Worker's Compensation Act: (1) to ensure that the cost of industrial injuries will be part of the cost of goods rather than a burden on society; (2) to guarantee prompt, limited compensation for an employee's work injuries, regardless of fault, as an inevitable cost of production; (3) to spur increased industrial safety; and (4) to insulate the employer from tort liability for an employee's injuries. <u>S.G. Borello & Sons v. Department of Indus. Relations</u>, 256 Cal. Rptr. at 550. Traditional common law analysis didn't meet these concerns:

> The common law and statutory purposes of the distinction between "employees" and "independent contractors" are substantially different. While the common law tests were developed to define an

> employer's liability for injuries caused *by* his employee, the basic inquiry in compensation law involves which injuries *to* the employee should be insured against by the employer.

S.G. Borello & Sons v. Department of Indus. Relations, 256 Cal. Rptr. at 549 (citations and quotations omitted). In the face of employee-protective legislation, a worker's status must be resolved "with deference to the purposes of the protective legislation" and "[t]he nature of the work, and the overall arrangement between the parties, must be examined to determine whether they come within the 'history and fundamental purposes' of the statute." Id. at 550 (citations omitted).

To assist with this analysis, S.G. Borello & Sons mentioned a six-factor test other jurisdictions use in the worker's compensation context, while maintaining that the test was basically a re-hashing of the Restatement test:

> Besides the 'right to control the work,' the factors include (1) the alleged employee's opportunity for profit or loss depending on his managerial skill; (2) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (3) whether the service rendered requires a special skill; (4) the degree of permanence of the working relationship; and (5) whether the service rendered is an integral part of the alleged employer's business.

S.G. Borello & Sons v. Department of Indus. Relations, 256 Cal. Rptr. at 551 (citations omitted). Each situation must still be evaluated on its own facts, and the dispositive circumstances may vary from case to case. Id.

The S.G. Borello & Sons court applied a "right to control overall process" test that it believed met the policy objectives behind California's Worker's Compensation Act. The workers in S.G. Borello & Sons were cucumber harvesters who worked for short periods of time and were paid half the gross proceeds of the

cucumbers harvested. The harvesters alone were responsible for deciding the best method of hoeing, weeding, irrigating, and harvesting the cucumbers to maximize their payments, so the grower didn't reserve a right to control the details of the harvesters' work. Id. at 551-552; *see also* Rinaldi v. Workers' Comp. Appeals Bd., 278 Cal. Rptr. 105, 109 (Cal. Ct. App. 1991) (noting lack of traditional control over cucumber harvesters in Borello). But the Borello court turned to what later courts have described as the "economic realities" of the situation to take into account that the grower was in the business of producing and selling agricultural crops, and despite ceding control to the harvesters over a piecemeal aspect of the operation, the grower maintained "pervasive control over the operation as a whole." S.G. Borello & Sons v. Departmentt of Indus. Relations, 256 Cal. Rptr. at 552. The grower controlled all meaningful aspects of the business relationship—price, crop cultivation, fertilization, insect prevention, payment, and the right to deal with buyers. The grower thus maintained all "necessary" control over the work, and the lack of control of the details was attributable to the simplicity of the work, not to a relinquishment of control. Id. at 552. In sum, the S.G. Borello & Sons court's analysis found that S.G. Borello & Sons had a right to control the overall process, the harvesters were a regular and integral part of S.G. Borello & Sons' business operation, the harvesters' work was permanent insofar as they returned season after season for work, the harvesters didn't hold themselves out as businesses, the harvesters made no investment other than

personal service and hand tools, the harvesters had no opportunity for profit or loss, and the harvesters' terms of service were non-negotiable. Id. at 552-553.

Post-Borello courts have held the coupling of the right to control the overall process with the integral nature of a person's work in a business to indicate employee status. See Air Couriers Int'l v. Employment Dev. Dep't, 59 Cal. Rptr. 3d 37 (Cal. Ct. App. 2007) (affirming finding of employee status for employment tax purposes where courier retained all necessary control over the overall delivery operation, the work was simple, the workers weren't engaged in a separate profession or operating an independent business, and the delivery work was an integral aspect of the courier's business); JKH Enters., Inc. v. Department of Indus. Relations, 48 Cal. Rptr. 3d 563, 579 (Cal. Ct. App. 2006) (finding drivers in courier business to be employees because JKH retained all necessary control over the operation as a whole, drivers' work wasn't highly skilled, and drivers' function was integral to courier business, even though JKH didn't exercise control over the details of the work and JKH was more concerned with the results of the work than the means of its accomplishment); Rinaldi v. Workers' Comp. Appeals Bd., 278 Cal. Rptr. 105, 109 (Cal. Ct. App. 1991) (finding almond grower to be employer of injured worker because, although the grower lacked control in the traditional sense, he retained all necessary control over the Almond growing operation as a whole, harvesting almonds didn't require much skill, and the harvesters' work was integral to the grower's operation).  But no case before this court, except for the trial court's decision in Estrada v. FedEx Ground, No. BC

41

210130 (Cal. Super. Ct. July 26, 2004) [Exh. B to Pltfs' Req. for Judicial Notice, Apr. 24, 2008], indicates what might happen if the S.G. Borello & Sons workers had entrepreneurial opportunities such that their work could be conducted from the auspices of a separately operating business. Each case must be analyzed under its own facts and circumstances. Nothing indicates a rule of law that an employer's right to control the overall operation together with integration into an employer's business necessarily requires a finding of employee status regardless of the other factors to be considered.

Cases after S.G. Borello & Sons haven't uniformly applied the "right to control overall operations" approach highlighted here. Some have focused on the traditional right to control methods and means test used by other states considered in today's decisions. *See* Antelope Valley Press v. Poizner, 75 Cal. Rptr. 3d 887, 899-900 (Cal. Ct. App. 2008) (using manners and means approach to evaluate the right to control); Estrada v. FedEx Ground Package Sys., Inc., 64 Cal. Rptr. 3d 327, 335 (Cal. Ct. App. 2007) ("The essence of the [right to control] test is the 'control of details'—that is, whether the principal has the right to control the manner and means by which the worker accomplishes the work."). As in S.G. Borello & Sons, Antelope Valley Press was a worker's compensation case where that court, in harmony with S.G. Borello & Sons's policy analysis, expressed concern about newspaper carriers' inability to distribute the risk and cost of injury as an expense of doing business because no evidence showed the carriers had other sources of business income. Antelope Valley Press v. Poizner, 75 Cal.

Rptr. 3d at 900. The <u>Estrada</u> court zeroed in on extensive extrinsic evidence of the right to control FedEx Single Work Area drivers' methods and means of doing their work. <u>Estrada v. FedEx Ground Package Sys.</u>, 64 Cal. Rptr. 3d at 331-337.

The drivers haven't argued the policies and purposes behind the California wage statutes in question. In a case similar to the one before this court, in which FedEx drivers sought reimbursement for work-related expenses, the <u>Estrada</u> appellate court didn't discuss the wage statutes' policies and purposes. Today's case doesn't involve concerns that injured employees should have their costs of on-the-job injuries covered, employers should cover those costs, employers should have their liability for these costs capped, and consumers of specific products of that work should ultimately bear the costs and not the public at large. *See* <u>S.G. Borello & Sons v. Department of Indus. Relations</u>, 256 Cal. Rptr. at 551; <u>Rinaldi v. Workers' Comp. Appeals Bd.</u>, 278 Cal. Rptr. at 111 (expressing concern that to come to a different conclusion "would virtually guarantee that in all such cases the costs of injuries would be borne by society at large through the Uninsured Employer's Fund"). Rather, the concerns behind the statutes here at issue seem to be protecting employees from being deprived of their due wages and preventing employers from using contractual arrangements as a subterfuge to avoid paying due wages to employees. *Cf.* <u>Narayan v. EGL, Inc.</u>, 616 F.3d 895, 897 (9th Cir. 2010) (stating, in the context of overtime, improper deductions, and business expenses claims, that "statutes enacted to confer special benefits on workers are designed to defeat rather than implement contractual arrangements" (quotation

43

omitted)). To the extent today's plaintiff drivers agreed to bear certain expenses of their work and be paid by FedEx in a way that accounts for these expenses, the court doesn't believe that special policy considerations (which the drivers didn't bring before the court) should color today's decision. Rather, the court applies the S.G. Borello & Sons common law test using both types of right to control found in California cases as a method of determining whether the contractual arrangement before the court is a subterfuge to avoid statutory duties imposed on employers or is a valid contractual arrangement between an employer and independent contractors.

The drivers state early in their supplemental brief that "[i]n California, local delivery drivers like the FXG drivers here are employees as a matter of law." The drivers' citations give this argument force, but the argument also forgets the Estrada trial court's finding that the MWA plaintiff was an independent contractor. The cases cited by the drivers contain findings that drivers were integral to the employer's business, but don't indicate that the workers had entrepreneurial opportunities or opportunities for profit, and so are readily distinguishable from the Alexander drivers' case for this reason (and for other reasons the court needn't discuss here, such as deferential standard of review). See Messenger Courier Assoc. of the Ams. v. California Unemp't Ins. Appeals Bd., 96 Cal. Rptr. 3d 797, 802 (Cal. Ct. App. 2009); Antelope Valley Press v. Poizner, 75 Cal. Rptr. 3d 887, 900 (Cal. Ct. App. 2008); Air Couriers Int'l v. Employment

Dev. Dep't, 59 Cal. Rptr. 3d 37, 46-48 (Cal. Ct. App. 2007); JKH Enters. v. Department of Indus. Relations, 48 Cal. Rptr. 3d 563, 577 (Cal. Ct. App. 2006).

Under the right to control details approach, this court has held that there is no reasonable inference that FedEx has retained the right to control the plaintiff drivers' methods and means of conducting their work on a class-wide basis. Kansas Decision, at 73. The court also addressed and weighed all the Restatement factors in its Kansas Decision and incorporates here its reasoning in that decision. Although the S.G. Borello & Sons court's economic realities approach would give greater emphasis to the finding that the plaintiff drivers' work is integral to FedEx's business, that approach also would give greater emphasis to the plaintiff drivers' class-wide entrepreneurial opportunities, which this court has held to be highly indicative of independent contractor status. California law, though different from Kansas law in its focus on economic realities, doesn't produce an outcome materially different from that under Kansas law. For the reasons stated here and in the Kansas Decision, the Alexander drivers are independent contractors under the right to control details approach.

The right to control details holding doesn't automatically apply under California's "right to control overall process" approach. FedEx clearly has the right to control the overall process of its package delivery business. As in S.G. Borello & Sons, the drivers perform a service that is an essential part of FedEx's overall business. FedEx controls the overall process by controlling pricing and by implementing many results-oriented controls to ensure proper package delivery,

45

as was discussed the Kansas Decision. Yet, the right to control, though a primary consideration, isn't dispositive; what is dispositive here is the drivers' class-wide ability to own and operate distinct businesses, own multiple routes, and profit accordingly. The court agrees with, and finds persuasive, the Estrada trial court's distinction between SWA and MWA drivers.[10] The court has weighed all the other relevant factors in the Kansas Decision and incorporates that decision here insofar as it addresses relevant factors other than the right to control details. The Alexander drivers are independent contractors under the right to control overall process approach.

The court instructs the parties to file a joint proposed pretrial order with this court within twenty-one days of entry of this order. In addition to summarizing the history of this case, including significant orders and their docket numbers (including, but not limited to, evidentiary, class certification, and dispositive orders), the parties should provide a detailed description of the FMLA-related claims that remain outstanding, without arguing the merits of those claims, and should outline for the court and the transferor court how they anticipate resolving those claims.

### (2) 3:06-cv-429, Pedrazzi

Jeremiah Pedrazzi, a sole plaintiff and a member of the California Alexander class, alleges illegal kickbacks, unfair business practices, violations of California's

---

[10] As already discussed, the court parts company with the Estrada trial court's finding of FedEx's right to control details, due to the differing evidentiary and procedural postures of these cases.

46

wage statutes and related statutes, breach of contract, retaliation, hostile work environment, employment discrimination based on disability, infliction of emotional distress, and wrongful termination in violation of public policy. FedEx moved for summary judgment, incorporating its Alexander arguments and also arguing that employment status under California's antidiscrimination statutes is governed by the standard set forth in S.G. Borello & Sons, Inc. v. Department of Indus. Relations, 256 Cal. Rptr. 543. Mr. Pedrazzi responded, agreeing that S.G. Borello & Sons controls his antidiscrimination claims. For the reasons just stated in Alexander, the court grants in part FedEx's request for summary judgment on Mr. Pedrazzi's wage-related and breach of contract claims,[11] which are identical to the claims made in Alexander, and the court will suggest remand of Mr. Pedrazzi's case to its transferor court for further disposition on his discrimination-related claims.

Although the parties agree that S.G. Borello & Sons applies to Mr. Pedrazzi's disability discrimination claims, the court notes that S.G. Borello & Sons applies the common law employment status test in light of the remedial purposes of the California statute in question. See Alexander decision, supra at 37-48. The parties haven't briefed the policy purposes behind California's antidiscrimination statutes and how those purposes affect the common law analysis set forth in S.G. Borello

---

[11] Mr. Pedrazzi's breach of contract claim is premised on the argument that FedEx misclassified him as an independent contractor. Like most other breach of contract claims in today's decisions, the determination that Mr. Pedrazzi is an independent contractor decides the breach of contract claim against him and in favor of FedEx.

& Sons. As discussed in <u>Alexander</u>, taking these policy purposes into account is essential under <u>S.G. Borello & Sons</u>. If, as Mr. Pedrazzi alleges in his complaint, FedEx terminated his contract because of his disabilities, the court can't say without briefing on the issue that today's <u>Alexander</u> holding should apply to Mr. Pedrazzi in the potentially different context of the remedial purposes of California's antidiscrimination laws. Mr. Pedrazzi's claims of intentional and negligent infliction of emotional distress, retaliation, hostile work environment, and wrongful termination in violation of public policy might be tied to a separate determination of Mr. Pedrazzi's employment status under California's antidiscrimination statutes. Additionally, Mr. Pedrazzi's discrimination-related claims aren't class claims, so further discovery of particularized evidence seems likely to be appropriate for the resolution of those claims.

The court instructs the parties to file a joint proposed pretrial order with this court within twenty-one days of entry of this order. In addition to summarizing the history of this case, including significant orders and their docket numbers (including, but not limited to, evidentiary, class certification, and dispositive orders), the parties should provide a detailed description of the discrimination-related claims that remain outstanding, without arguing the merits of those claims, and should outline for the court and the transferor court how they anticipate resolving those claims.

*(3) 3:08-cv-52, <u>Huerta</u>*

Ricardo Huerta, a member of the California <u>Alexander</u> class, brings several claims of breach of contract, fraud, misrepresentation, and violations of California's wage (and related) statutes. FedEx filed a motion for summary judgment incorporating its <u>Alexander</u> arguments, and Mr. Huerta's response also incorporates the <u>Alexander</u> arguments. Because Mr. Huerta is a member of the <u>Alexander</u> class, today's decision in <u>Alexander</u> is binding on him; he is an independent contractor. For the reasons stated in <u>Alexander</u>, the court grants summary judgment to FedEx. Unlike most breach of contract claims in these MDL cases, a number of Mr. Huerta's breach of contract claims appear to be premised on his position as an independent contractor and so appear to require further disposition. The court will suggest remand of Mr. Huerta's case to the transferor court for further disposition.

The court instructs the parties to file a joint proposed pretrial order with this court within twenty-one days of entry of this order. In addition to summarizing the history of this case, including significant orders and their docket numbers (including, but not limited to, evidentiary, class certification, and dispositive orders), the parties should provide a detailed description of the claims that remain outstanding, without arguing the merits of those claims, and should outline for the court and the transferor court how they anticipate resolving those claims.

*E. Florida*

49

*(1) 3:05-cv-664 Carlson*

The Carlson drivers claim violations of Florida's Deceptive and Unfair Trade Practices Act, negligently supplied false information, breach of contract, and fraud; they seek rescission and declaratory judgment. The drivers indicated that all their claims would turn on the predominant, common issue of whether they are employees or independent contractors under Florida law. *See* Memo. in Support of Mot. to Certify Class (Florida), April 2, 2007, at 1 [Doc. No. 584]. The parties have filed cross-motions for summary judgment. For the reasons stated below, the court grants summary judgment to FedEx and denies the Carlson drivers' summary judgment motion. Because the Florida claims stand or fall on the common question of whether FedEx Ground misclassified its drivers as independent contractors, judgment will be entered for FedEx on all claims in this Florida (Carlson) case.

The contents of the Operating Agreement and generally applicable Policies and Procedures are undisputed, so the determination of employment status "depends upon the legal relationship that the undisputed facts engender." Hilldrup Transfer & Storage of New Smyrna Beach, Inc. v. Department of Labor and Emp't Sec., Div. of Emp't, 447 So.2d 414, 415 (Fla. Dist. Ct. App. 1984) (*citing* Cantor v. Cochran, 184 So.2d 173, 174 (Fla. 1966)); *see also* Harper v. Toler, 884 So.2d 1124, 1130 (Fla. Dist. Ct. App. 2004) ("Thus, if the only reasonable view of the evidence compels the conclusion that an employment relationship did not exist, a court may determine the issue as a matter of law.").

Florida courts have stated Florida's common law employment status test in various ways over the last few decades. Some have turned to a very traditional four-factor test (see today's Alabama decision, *supra* at 19-25), with right to control being the weightiest factor. *See* <u>Saudi Arabian Airlines Corp. v. Dunn</u>, 438 So.2d 116 (Fla. Dist. Ct. App. 1983). Others have concluded that the test involves weighing seven of the Restatement factors. *See* <u>Carroll v. Kencher, Inc.</u>, 491 So.2d 1311, 1312 (Fla. Dist. Ct. App. 1986). Still others have held that the main test is simply whether the purported employer has direction and control over the purported employee. *See* <u>Verchick v. Hecht Invs., Inc.</u>, 924 So.2d 944, 946 (Fla. Dist. Ct. App. 2006).

The Florida Supreme Court, however, has turned to the full list of factors set forth in the Restatement (Second) of Agency, § 220(2). *See* <u>Cantor v. Cochran</u>, 184 So.2d at 174. One particular appellate court nicely summed up the law in a way fully consistent with other Florida appellate decisions and the Florida Supreme Court's decision in <u>Cantor v. Cochran</u>:

> The "extent of control" referred to in Restatement section 220(2)(1) has been recognized as the most important factor in determining whether a person is an independent contractor or an employee. Of course, employees and independent contractors both are subject to some control by the person or entity hiring them. The extent of control exercised over the details of the work turns on whether the control is focused on simply the "result to be obtained" or extends to the "means to be employed." A control directed toward *means* is necessarily more extensive than a control directed toward *results*. Thus, the mere control of results points to an independent contractor relationship; the control of means points to an employment relationship. Furthermore, the relevant issue is the extent of control which, by the agreement, the master *may* exercise over the details of

the work. Thus, [i]t is the right of control, not actual control or actual interference with the work, which is significant in distinguishing between an independent contractor and [an employee].

Harper v. Toler, 884 So.2d at 1131 (citations and quotations omitted; emphasis and alterations in the original); *see also* Keith v. News & Sun Sentinel Co., 667 So.2d 167, 172 (Fla. 1995) (noting that intent and right to control factors must be given special weight among the Restatement factors so as to avoid inconsistent results when applying them).

Florida courts consistently point out that no bright-line rule exists for applying these principles, and each case must be determined on its own facts and in light of the totality of the circumstances. Keith v. News & Sun Sentinel Co., 667 So.2d at 170 (holding that presumption of newspaper delivery person's status as independent contractor doesn't exist because "the facts peculiar to each case govern the decision"); Magarian v. Southern Fruit Distribs., 1 So.2d 858, 861 (Fla. 1941) ("[E]ach case must stand on its own facts and, therefore, no useful purpose may be served by citing particular cases involving different factual conditions."). Nonetheless, the parties' arguments search for bright-line rules.

FedEx urges the court to place dispositive weight on the intent expressed in the Operating Agreement that an independent contractor relationship should exist, an intent buttressed by provisions in the Agreement prohibiting FedEx from exercising control over drivers' means and methods of conducting their work. As in the Kansas Decision, the intent factor weighs "strongly" in FedEx's favor because of the clarity of the stated intent in the contracts, not because of its

relative weight vis-à-vis other factors, particularly the right to control. Some Florida courts have given the intent factor special significance, second only, perhaps, to the right to control. *See* Keith v. News & Sun Sentinel Co., 667 So.2d at 171 ("Hence, courts should initially look to the agreement between the parties, if there is one, and honor that agreement, unless other provisions of the agreement, or the parties' actual practice, demonstrate that it is not a valid indicator of status."). But be that as it may, Florida courts also have issued the usual caution against accepting form over substance, so today's decision doesn't rely on giving the intent factor dispositive weight. *See, e.g.*, Adams v. Department of Labor & Emp't Sec., Div. of Unemp't Comp., 458 So.2d 1161, 1162 (Fla. Dist. Ct. App. 1984) (*citing* Cantor v. Cochran, 184 So.2d at 174 (Fla. 1966)).

The drivers rely heavily on Justice v. Belford Trucking Co., Inc., 272 So.2d 131 (Fla. 1972), in which a worker's compensation claimant filled out an employment application with Belford Trucking and signed a contract that expressly stated the intent to create an independent contractor relationship. The claimant was to lease a trailer from Belford Trucking for five years for exclusive use in the service of Belford Trucking. The claimant made pickups and deliveries at the command of Belford and was told he risked termination if he refused a trip. Sometimes, Belford Trucking would lease the claimant over to other carriers without his input. Belford Trucking took worker's compensation premiums out of the claimant's paychecks, paid him a percentage of his freight, and issued W-2's showing taxes withheld. Id. at 132-134.

The drivers argue that <u>Justice</u> is directly analogous to their situation, but the facts are readily distinguishable. FedEx drivers are ultimately responsible for obtaining their own equipment, which they can use for their own purposes so long as FedEx logos are removed; FedEx doesn't lease the contractor-drivers over to other carriers; and FedEx drivers are paid as independent contractors, i.e., no taxes are withheld and 1099 Forms are issued. <u>Justice</u> is instructive, but it doesn't compel a trial or judgment for the plaintiffs here: each case must be assessed on its own facts. <u>Keith v. News & Sun Sentinel Co.</u>, 667 So.2d at170; <u>Magarian v. Southern Fruit Distribs.</u>, 1 So.2d at 861.

The court has held that "the only reasonable inference that can be drawn is that FedEx hasn't retained the right to control the details of the contractors' work methods on a class-wide basis." Kansas Decision, at 73. Whether the court looks only to the right to control, or to all the Restatement factors or some number of factors in-between, the result is the same. The relevant factors are all addressed in the Kansas Decision, which is incorporated here. The <u>Carlson</u> drivers are independent contractors under Florida law.

### *(2) 3:09-cv-356, <u>Ward</u>*

Scott Ward and Juan Gomez allege age discrimination and tortious interference with their businesses; they seek declaratory relief finding that they are employees and not independent contractors.

54

Mr. Gomez might be a member of the Florida class; Mr. Ward might not be a member of the class. *See* Sealed Document, June 16, 2009 [Doc. Nos. 1758-18 & 1758-19]. Their complaint doesn't specify their class status. If they are class members, today's decision in <u>Carlson</u> binds them and they are independent contractors. If they aren't class members, the transferor court will decide how much weight to give to today's procedurally distinct decision in <u>Carlson</u> when deciding their case. The tortious interference claim appears to be premised on their position as independent contractors. Because these remaining claims wouldn't benefit from continued inclusion in this docket, the court will suggest remand of their case to its transferor court for further disposition.

The court instructs the parties to file a joint proposed pretrial order with this court within twenty-one days of entry of this order. In addition to summarizing the history of this case, including significant orders and their docket numbers (including, but not limited to, evidentiary, class certification, and dispositive orders), the parties should provide a detailed description of the claims that remain outstanding (including an indication of whether they are members of the <u>Carlson</u> class), without arguing the merits of those claims, and should outline for the court and the transferor court how they anticipate resolving those claims.

### *F. Georgia (3:05-cv-411, <u>White</u>)*

The <u>White</u> drivers allege unjust enrichment; they seek rescission, a constructive trust and other equitable relief, and injunctive and declaratory relief.

All the drivers' claims are class certified and stand or fall on the determination of the drivers' employment status under Georgia law. The parties filed cross-motions for summary judgment. For the reasons stated below, the court grants summary judgment to FedEx and denies the <u>White</u> drivers' summary judgment motion. Judgment will be entered for FedEx on all the <u>White</u> claims.

The drivers rely on <u>Atkins v. MRP Park Lake, L.P.</u>, 687 S.E.2d 215, 220 (Ga. Ct. App. 2009), to suggest that if the facts are disputed, Georgia law requires a trial on the question of employment status. The <u>Atkins</u> court found summary judgment improper because the parties had no written contract, and disputed evidence showed that the employer exercised control. <u>Id</u>. at 220. The matter before this court centers around the right to control retained in a written contract. The contract's contents and the applicable policies and procedures aren't in dispute; rather, the dispute relates to the law's application to the undisputed facts.

As the drivers argued in their summary judgment motion, and as the court set forth in the class certification order, Georgia's "chief test [of employment status] lies in whether the contract gives, or the employer assumes, the right to control the time, manner, and method of executing the work as distinguished from the right merely to require certain definite results in conformity to the contract." <u>Ross v. Ninety-Two West, Ltd.</u>, 412 S.E.2d 876, 881 (Ga. Ct. App. 1991); Op. and Ord., July 27, 2009, at 16-24 (citing cases) [Doc. No. 1770]; *see also* <u>RBF Holding Co. v. Williamson</u>, 397 S.E.2d 440, 441 (Ga. 1990); <u>Larmon v. CCR Enters.</u>, 647 S.E.2d 306, 595 (Ga. Ct. App. 2007); <u>Cotton States Mut. Ins. Co. v. Kinzalow</u>, 634

S.E.2d 172, 175 (Ga. Ct. App. 2006). Some Georgia cases have turned to the factors recited in the Restatement (Second) of Agency § 220(2), though those cases seem to be a small minority. *See* <u>Murphy v. Blue Bird Body Co.</u>, 429 S.E.2d 530, 532 (Ga. Ct. App. 1993) (applying Restatement factors to employment status issue). Georgia courts recognize that a contracting company, such as FedEx, is "entitled to take steps to ensure compliance with its contract and to monitor the results obtained thereunder," and that "the exercise of [its] right to protect and control its trade name and good will does not equate to managing the daily operations of [the drivers'] business." <u>Cotton States Ins. v. Kinzalow</u>, 634 S.E.2d at 401-402; *see also* <u>McLaine v. McLeod</u>, 335 S.E.2d 695, 700 n.5 (Ga. Ct. App. 2008) (gathering cases where supervision to ensure contracted-for result didn't result in employee status).

Georgia law holds somewhat uniquely that a rebuttable presumption of independent contractor status arises when a contract for services explicitly designates a worker as an independent contractor. This presumption disappears if the contract "provides that [the worker] shall be subject to any rules or policies of the employer which may be adopted in the future." <u>Ross v. Ninety-Two West, Ltd.</u>, 412 S.E.2d at 881; *see also* <u>Cotton States Ins. v. Kinzalow</u>, 634 S.E.2d at 175. The Operating Agreement in question obligates drivers to keep their personal appearance "consistent with reasonable standards of good order as maintained by competitors and promulgated from time to time by FedEx Ground." OA, § 1.12 [Doc. No. 1237-2]. The Agreement also obligates drivers to purchase or lease

communications equipment, such as scanners, that comply "with specifications promulgated from time to time by FedEx Ground." OA, § 1.13. These provisions allow FedEx to issue further rules in the future and raise a cautionary flag against presuming independent contractor status, but they don't, by themselves, indicate employee status.

The drivers cite a few cases to suggest that, at minimum, a trial is needed. In Jordan v. Townsend, 197 S.E.2d 482 (Ga. Ct. App. 1973), the appellate court reversed a grant of summary judgment because the contract at issue created a material issue of fact regarding whether the corporation retained the right to control a tractor-trailer contractor's employee. The Jordan case is distinguishable because that contract expressly allowed the corporation to provide without restriction written specifications, which weren't expressly articulated in the contract, to timber harvesters in the future. *See* id. at 483 ("There were no restrictions on what 'reasonable rules' might be adopted by Union Camp or what the rules might consist of."). But, as noted in the Kansas Decision, the FedEx Operating Agreement places express limits on FedEx's authority to direct the means and methods of FedEx Ground drivers' work (and the question of whether FedEx actually breached those limits isn't before the court).

The drivers also rely on the inapposite case of Brown v. Who's Three, Inc., 457 S.E.2d 186 (Ga. Ct. App. 1995), which involved the question of whether an apprentice facial esthetician was an employee or independent contractor in a personal injury matter. The Brown court discussed at length Georgia statutory

58

and public policy placing *respondeat superior* liability on apprentices' supervisors. As a matter of policy, the esthetician couldn't be considered an independent contractor so the <u>Brown</u> court didn't examine the traditional common law test as to whether she was or wasn't a contractor: it ruled simply, "[t]he statute precludes, by public policy, the status of independent contractor for an apprentice." <u>Id.</u> at 191.

Finally, the court in <u>Mark Six Realty Assocs., Inc. v. Drake</u>, 463 S.E.2d 917 (Ga. Ct. App. 1995), held that a real estate salesperson was, atypically, an employee rather than an independent contractor, in a situation in which the agent sold a house containing numerous structural defects. Mark Six assigned the agent to work on the subdivision in question, required her to follow certain negotiating procedures and use standard forms, subjected her to quarterly performance reviews, and exercised other similar controls. <u>Id.</u> at 919-920. The case differs for two reasons. First, the case's procedural posture was the appeal of a trial court's denial of a motion for judgment notwithstanding the verdict after a jury found for Drake. Under that posture, the procedural rules weighed heavily in favor of the plaintiff: "The standard of review is whether any evidence supports the jury's verdict, and we must construe the evidence in the light most favorable to the party who prevailed before the jury." <u>Id.</u> at 919. Nothing indicates what the trial court thought of the case at summary judgment, or whether such a motion had been filed. Because "some" evidence existed that Mark Six retained the right to exercise, and did exercise, control over the time, manner, and method of the agent's

performance of her duties, the trial court didn't err in denying the JNOV motion. Id. at 920. Second, the contract required the agent in question to work solely and exclusively for Mark Six during specified hours. Id. at 920. This MDL case involves much more freedom to apply the law to the undisputed facts and involves drivers who can have complete freedom in their schedules by hiring assistants or by otherwise taking advantage of the entrepreneurial opportunities allowed to them.

The court incorporates the Kansas Decision and its conclusion that there is no reasonable inference that FedEx has retained the right to control the plaintiffs' work methods on a class-wide basis. Kansas Decision, at 73. To the extent Georgia law would recognize a broader examination of the employment status question using the Restatement test, the court again incorporates here the reasoning of the Kansas Decision. The White drivers are independent contractors under Georgia law.

### G. Indiana (3:05-cv-390, Riewe)

The Riewe drivers claim illegal deductions from wages, in violation of Indiana Code §§ 22-2-6 and 22-2-4-4, and fraud. They seek rescission and declaratory and injunctive relief. Though the drivers didn't seek to certify the fraud claim, they don't indicate that their claims turn on anything other than a determination of their employment status under Indiana law. See Memo. in Support of Mot. to Certify Class (Indiana), Mar. 12, 2007, at 1 [Doc. No. 556]. The parties filed cross-motions for summary judgment. For the reasons stated below,

60

the court grants summary judgment to FedEx and denies the <u>Riewe</u> drivers'
summary judgment motion. Because the Indiana claims stand or fall on the
common question of whether FedEx Ground misclassified its drivers as
independent contractors, judgment will be entered for FedEx on all claims in the
Indiana case.

The applicable Indiana statutes don't define the term "employee," and the
parties agree the court should interpret the term by using Indiana's common law
test for employment status. *See* <u>Mortgage Consultants, Inc. v. Mahaney</u>, 655
N.E.2d 493, 495 (Ind. 1995). Indiana courts look to the ten-factor analysis
outlined in Restatement (Second) of Agency § 220 to resolve employment status.
<u>Moberly v. Day</u>, 757 N.E.2d 1007, 1009-1010 (Ind. 2001). The right to control the
means and methods of achieving results is the most important factor; the right to
control contracted-for results doesn't indicate employee status. The Restatement
factors should be weighed in a balancing test that takes account of the facts and
circumstances as a whole and "not merely tallied in a majority-wins formulation."
*See* <u>Moberly v. Day</u>, 757 N.E.2d at 1010 & n.3, 1011, 1013; <u>Mortgage Consultants
v. Mahaney</u>, 655 N.E.2d at 495-496.

The drivers rely heavily on <u>Dague v. Fort Wayne Newspapers, Inc.</u>, 647
N.E.2d 1138 (Ind. Ct. App. 1995), in which a husband was delivering newspapers
for his wife, who herself had contracted to deliver newspapers for Fort Wayne
Newspapers. The husband collided with a motorcycle and the motorcyclist was
killed. The wife had signed a contract stating she was an independent contractor;

Fort Wayne Newspapers provided a list of subscribers to whom papers needed to be delivered; the delivery person could hire replacements; the delivery person bore the costs of papers delivered wet or torn; Fort Wayne Newspapers didn't provide a vehicle or dictate the vehicle type; and Fort Wayne Newspapers provided a manual to carriers on how to generate sales, conduct collections, and provide good service. The Dague court reversed a grant of summary judgment to Fort Wayne Newspapers and held that a material issue of fact existed because competing inferences could be drawn from the undisputed facts. *See* id. at 1143.

A few overlapping facts aren't enough to make Dague controlling under a legal test in which no one fact is dispositive and the totality of the circumstances must be considered. The Dague court made the effort to point out that "Christine could not buy or lease her route, and she could not sell the route to another person if she discontinued as a carrier." Id. at 1141. The FedEx Ground drivers have a proprietary interest in their routes, can sell their routes, and can acquire multiple routes—they have real profit potential, and, like any independent business, loss potential. *See* Kansas Decision, at 35-37, 90-91, 101.

The drivers hint that because FedEx restricts the sale of routes to approved buyers and because FedEx can reconfigure routes, their situation is like that of the contractor in Dague, who had no proprietary interest in her newspaper delivery route. The court can't agree: a mildly qualified right to sell isn't equivalent to no right to sell—the Fort Wayne Newspaper employees couldn't sell their job and didn't have the contractual rights for entrepreneurial growth that FedEx

Ground drivers have. FedEx can't be expected to provide this right to its contractors without ensuring contracted-for results. FedEx's limitations on these rights are to the mutual benefit of drivers and FedEx: customer satisfaction means business for both. Nothing about the limitations in themselves compels a finding of employee status.

Additionally, Fort Wayne Newspapers provided subscriber lists indicating to whom the carriers had to deliver papers and required papers to be delivered dry and in one piece or else the carrier would bear the cost of the paper. Without more, these facts wouldn't have indicated employee status. *See* Twin States Publ'g Co., Inc. v. Indiana Unemp't Ins. Bd., 678 N.E.2d 110, 114 (Ind. Ct. App. 1997) (finding carriers weren't employees even though they had to deliver "by 5:00 p.m. on Tuesdays, place the guides in a dry place, and perform their services in a workmanlike manner"). As Indiana courts have repeated,

> When the person employing may prescribe what shall be done, but not how it is to be done, or who shall do it, the person so employed is a contractor and not a servant. The fact that the work is to be done under the direction and to the satisfaction of certain persons representing the employer does not render the [worker] . . . a servant.

Nash v. Meguschar, 91 N.E.2d 361, 363 (Ind. 1950); Dallas Moser Transporters, Inc. v. Ensign, 594 N.E.2d 454, 457 (Ind. Ct. App. 1992).

This court held that "the only reasonable inference that can be drawn is that FedEx hasn't retained the right to control the details of the contractors' work methods on a class-wide basis." Kansas Decision, at 73. The Kansas Decision listed and addressed the Restatement factors, as well as all other relevant factors

63

under the totality of the circumstances, and the court incorporates here that decision. The Riewe drivers are independent contractors under Indiana law.

### H. Kentucky (3:05-cv-599, Coleman)

The Coleman drivers claim unlawful withholding of wages in violation of Kentucky's Wage Payment statute and fraud; they seek rescission, and declaratory and injunctive relief. Though the drivers didn't seek to certify the fraud claim, they don't indicate that their claims turn on anything other than a determination of their employment status under Kentucky law. *See* Memo. in Support of Mot. to Certify Class (Kentucky), Apr. 23, 2007, at 1 [Doc. No. 602]. The drivers and FedEx filed cross-motions for summary judgment. The drivers' claims raise two distinct questions: (1) whether the drivers are employees under Kentucky common law; and (2) whether the drivers are employees under Kentucky's Wage Payment statute, KY. REV. STAT. §§ 337.060 and 337.070.

For the reasons stated below, the court grants in part FedEx's motion for summary judgment to the extent it seeks a determination that the drivers are independent contractors under Kentucky common law, and the court grants in part the drivers' summary judgment motion to the extent it seeks a determination that they are employees under Kentucky Revised Statute § 337.010 *et seq*. To the extent the Kentucky plaintiffs' claims rely on a generalized determination that they are employees under Kentucky common law, their claims won't proceed beyond this stage. To the extent the Kentucky plaintiffs' claims depend on a determination

that they are employees under Kentucky Revised Statute § 337.010 *et seq.*, the court will suggest remand for further proceedings in the transferor court.

Kentucky common law considers the same multi-factor test set forth in the Restatement (Second) of Agency § 220(2), outlined in the Kansas Decision. *See* Kentucky Unemp't Ins. Comm'n v. Landmark Cmty. Newspapers of Kentucky, Inc., 91 S.W.3d 575, 579 (Ky. 2002). Both parties rely heavily on the Landmark Newspapers case, which clarifies that Kentucky treats the right to control differently from Kansas: rather than being the most important factor, the right to control is weighed as just one among many factors. *See* id. at 580. Though the Landmark Newspapers case was an unemployment insurance case, its analysis of the right to control test applies here. Each case must be addressed on its own facts and, when the facts are undisputed, employment status is a question of law for the court to decide. Id.

The drivers' key argument is that the "regular business of the employer" Restatement factor is of prime importance and even dispositive in Kentucky. This court has held that the plaintiff drivers form an integral part of FedEx's business, and a line of Kentucky worker's compensation cases emphasize this factor. *See* Purchase Transp. Servs. v. Estate of Wilson, 39 S.W.3d 816, 818 (Ky. 2001); Uninsured Empl'rs Fund v. Garland, 805 S.W.2d 116, 118-119 (Ky. 1991); Chambers v. Wooten's IGA Foodliner, 436 S.W.2d 265, 266 (Ky. 1969); Ratliff v. Redmon, 396 S.W.2d 320, 325 (Ky. 1965) (noting right to control should focus not on control of details of the work to be done but rather on "the nature of the

65

claimant's work in relation to the regular business of the employer."); *see also* Hargis v. Baize, 168 S.W.3d 36, 42 (Ky. 2005) (noting that if the case were a worker's compensation case, the Garland (805 S.W.2d at 118-119) test would apply). These cases refocus the Restatement inquiry into four factors, recognizing "the difference between compensation law and vicarious liability in the purpose and function of the employment concept" as a policy matter for worker's compensation. Ratliff v. Redmon, 396 S.W.2d 320, 324 (Ky. 1965). The four factors are: (1) the nature of the work being performed as it relates to employer's business; (2) the extent of control that the employer exercises; (3) the professional skill required of the worker; and (4) the true intentions of the parties. *E.g.,* Purchase Transp. Servs. v. Estate of Wilson, 39 S.W.3d at 818.

The court can't agree that this four factor test, which gives greater emphasis to the integral nature of the work, is the test to be applied to whether, as a general matter under Kentucky common law, the FedEx drivers are employees or independent contractors. A review of Kentucky cases, published and unpublished,[12] shows that this shift in emphasis occurs only in the worker's

---

[12] *See* Crunk v. Dean Milk Co., Inc., No. 3:06-CV-609, 2008 WL 2473662 (W.D.Ky. June 17, 2008) (personal injury); Purchase Transp. Servs. v. Estate of Wilson, 39 S.W. 3d 816, 818 (Ky. 2001) (worker's compensation); Uninsured Emp'rs Fund v. Poyner, 829 S.W.2d 430 (Ky. Ct. App. 1992) (worker's compensation); Husman Snack Foods Co. v. Dillon, 591 S.W.2d 701 (Ky. Ct. App. 1979) (worker's compensation); Kelly Mountain Lumber v. Meade, Nos. 2007-SC-507 & 526, 2008 WL 3890701 (Ky. Aug. 21, 2008) (worker's compensation); Ranck v. Gray, No. 2005-SC-863, 2006 WL 2456411 (Ky. Aug. 24, 2006) (worker's compensation); Dixon v. Don Amburgey Plumbing, No. 2005-SC-426, 2006 WL 1652579 (Ky. June 15, 2006) (worker's compensation); Hicks v. Eck Miller Transp., No. 2003-SC-272, 2004 WL 868489 (Ky. Apr. 22, 2004) (worker's compensation); KC Transp., Inc. v. Thompson, No. 2009-CA-617, 2010 WL 3214062 (Ky. Ct. App. Aug. 13, 2010) (worker's compensation); Robinson v. Gatewood, No. 2009-CA-2328, 2010 WL 2052120 (Ky. Ct. App. May 21, 2010) (worker's compensation); Boils v. Lovan, No. 2009-CA-256, 2010 WL 1253177

compensation and personal injury contexts. The full Restatement test, with no single factor being dispositive, applies here. *See generally* <u>Kentucky Unemp't Ins. Comm'n v. Landmark Cmty. Newpapers of Ky., Inc.</u>, 91 S.W.3d 575 (Ky. 2002) (applying Restatement test in unemployment insurance context).

The court incorporates here its reasoning from the Kansas Decision, which applies even when, as here, the right to control factor is considered as just one among the other factors. The parties explicitly stated their intent in the Operating Agreement that the drivers would be independent contractors. The drivers aren't terminable at will, they hold proprietary interests in their routes, and they may hire assistants and expand their businesses to include multiple trucks and routes. These entrepreneurial opportunities show decreased control of the drivers (they are free to work or not work, as they please) and give rise to distinct businesses and increased need for skill. Also, the drivers are responsible for obtaining their own equipment. When weighed equally with the lack of right to control, these factors outweigh the factors pointing toward employment outlined in the Kansas Decision. Although some facts cut both ways, the court still may make a determination of law on the undisputed facts that the <u>Coleman</u> drivers are

---

(Ky. Ct. App. Apr. 2, 2010) (worker's compensation); <u>Sweet v. Slusher</u>, No. 2007-CA-1245,  2009 WL 792547 (Ky. Ct. App. Mar. 27, 2009) (personal injury); <u>Broughton v. Quality Carriers</u>, No. 2006-CA-62, 2006 WL 2382747 (Ky. Ct. App. Aug. 18, 2006) (worker's compensation); <u>Golden Rule Publishers v. Edwards</u>, No. 2003-CA-1596, 2004 WL 2315272 (Ky. Ct. App. Oct. 15, 2004) (personal injury); <u>Adjuster Serv. of Ky., Inc. v. Hamilton</u>, No. 2003-CA-672, 2004 WL 1909379 (Ky. Ct. App. Aug. 27, 2004) (worker's compensation).

independent contractors under Kentucky common law. *See* Kentucky Unemp't Ins. Comm'n v. Landmark Cmty. Newspapers, 91 S.W.3d at 581.

The Kentucky drivers' claims also turn on whether they are employees under Kentucky's Wage Payment statute, KY. REV. STAT. § 337.010 *et seq.* The wage payment statute defines "employee" broadly as "any person employed by or suffered or permitted to work for an employer." KY. REV. STAT. § 337.010(1)(e). Kentucky's Administrative Regulations clarify that employee status under Kentucky Revised Statutes Chapter 337 is "broader than the traditional common law concept of the master and servant relation." 803 KY. ADMIN. REGS. 1:005 §1(2).

Kentucky's Administrative Regulations identify factors similar to the Restatement and common law factors discussed in the Kansas Decision. Some factors favor a finding of an independent contractor relationship, such as the right to control, 803 KY. ADMIN. REGS. 1:005 § 4(1), and the alleged employee's opportunities for profit and loss. Id. at § 4(2)(c). But the Regulations also identify factors broadening the scope of statutory employees beyond the traditional common law factors. "Where the facts clearly establish that the possible employee is the subordinate party, the relation is one of employment." Id. at § 4(3). Factors used to determine whether the drivers are subordinate parties are:

> a.   Whether there are restrictive provisions in the contract between the possible employer and possible employee which require that the work must be satisfactory to the possible employer and detailing, or giving the possible employees the right to detail how the work is to be performed;

      b.      Whether the possible employer has control over the business of the person performing work for him even though the possible employer does not control the particular circumstances of the work;

      c.      Whether the contract is for an indefinite period or for a relatively long period;

      d.      Whether the possible employer may discharge employees of the alleged independent contractor;

      e.      Whether the possible employer may cancel the contract at his discretion, and on how much notice;

      f.      Whether the work done by the alleged independent contractor is the same or similar to that done by admitted employees.

803 KY. ADMIN. REG. 1:005 § 4(3)(a)-(f). Though the court's research finds no case law to guide its interpretation of these Regulations, it seeks here to follow the plain meaning of the Regulations' text and the explicitly stated purpose of broadening the scope of who is an employee beyond the common law. On balance, these factors indicate that the plaintiff drivers are "subordinate" to FedEx and so are employees for purposes of Kentucky's Wage Payment Act.

     Factor (a) eliminates the results vs. means distinction at common law. Though the drivers have the right to detail how their work is to be accomplished, the Operating Agreement contains many results-oriented controls and the results of the drivers' work must be satisfactory to FedEx for the drivers' contracts to continue. Factor (b) eliminates any distinction between "a little control" and "a lot of control" of the drivers' businesses. FedEx limits the number of routes drivers may own at a given terminal, sets minimum requirements for who may be a hired

assistant or employee of the contractor (though it is up to the driver to find assistants or employees and not up to FedEx to suggest candidates to the driver), requires drivers to accept assigned work, and controls the flow of packages through individual trucks (though this is a mutually beneficial contractual obligation on FedEx to maximize efficient use of drivers' trucks). Factor (f) partially indicates employee status because the drivers' work as drivers (but not as business owners) is the same as that done by admitted employees of FedEx Express and by employees at UPS, DHL, and the USPS.

Factors (c), (d), and (e) don't outweigh the refocusing of the employment status balance caused by factors (a) and (b). The drivers' contracts are for limited duration, but they renew automatically absent any other action. FedEx can't discharge drivers' employees, but FedEx can refuse to dispatch a truck if a driver's employee is unsatisfactory to FedEx. FedEx can't cancel the contract at will, but it can cancel the contract for breach or on thirty days' notice (as can the drivers). While factors (c), (d), and (e) cut in the direction of independent contractor status, they don't do so strongly enough to outweigh the reshaping of the control question caused by factors (a) and (b). Finding the drivers to be subordinate to FedEx, in light of the clearly stated policy of the Kentucky statutes and regulations, the Coleman drivers are employees for purposes of the Kentucky Wage Payment statute, KY. REV. STAT. § 337.010 *et seq.*

No reason exists for the statutory wage payment claims to remain in this centralized docket, so the court instructs the parties to file a joint proposed

70

pretrial order with this court within twenty-one days of entry of this order. In addition to summarizing the history of this case, including significant orders and their docket numbers (including, but not limited to, evidentiary, class certification, and dispositive orders), the parties should provide a detailed description of the wage payment statute-related claims that remain outstanding, without arguing the merits of those claims, and should outline for the court and the transferor court how they anticipate resolving those claims.

## I. Louisiana (3:08-cv-193, _Boudreaux_)

The _Boudreaux_ drivers allege fraud, misrepresentation, violations of Louisiana Revised Statutes §§ 23:631, 23:634, 23:635, 23:824, and 23:963, and breach of the duty of good faith and fair dealing. They seek rescission and declaratory relief. The drivers didn't move to certify the fraud and misrepresentation claims. This court denied certification of the drivers' claims under Louisiana Revised Statutes §§ 23:635 and 23:963, as well as their rescission claim. _See_ Op. and Ord., July 27, 2009, at 25-40 [Doc. No. 1770]. The drivers have argued—and have never indicated otherwise—that all their claims are premised on a determination of whether they are employees or independent contractors under Louisiana law. _See_ Memo. in Support of Mot. for Summ. Judg., Sept. 28, 2009, at 1 [Doc. No. 1797] ("The over-arching issue in this case is whether FXG has categorically misclassified its workforce of pickup and delivery drivers as independent contractors."); Memo. in Support of Mot. to Certify Class

71

(Louisiana), Aug. 4, 2008, [Doc. No. 1540]. The parties filed cross-motions for summary judgment. For the reasons stated below, the court grants summary judgment to FedEx and denies the drivers' motion for summary judgment. The Louisiana drivers are independent contractors under Louisiana law. Because the Louisiana claims stand or fall on the common question of whether FedEx Ground misclassified its drivers as independent contractors, judgment will be entered in FedEx's favor in the Louisiana case.

In their original summary judgment motion, the Louisiana drivers argued that the common law right to control test applied to their employment status question and that the test was no different from other states' right to control tests. *See* Memo. in Support of Mot. for Summ. Judg., Sept. 28, 2009, at 1 (*citing* Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (1992), as in the plaintiffs' other summary judgment motions). The drivers originally argued that "it is not the supervision and control which is actually exercised which is significant; the important question is whether . . . the right to do so exists." Memo. in Support of Mot. for Summ. Judg., at 7 (citing multiple Louisiana cases emphasizing this point). The plaintiffs also emphasized that the principal test is the "control over the work reserved by the employer." Id. at 9 (discussing Hickman v. Southern Pac. Transp. Co., 262 So.2d 385, 390-391 (La. 1972)). In their motion for class certification—consistent with all their motions for class certification and their arguments to get their case before this MDL court—the Louisiana drivers argued that "FXG's reserved rights to control the Louisiana pickup and delivery drivers

flow directly from the standard form Operating Agreement ("OA") that every driver must sign and FXG's standardized policies and procedures the company uses to implement the OA. These common controls lie at the heart of each and every Louisiana driver's claim and provide the common proof from which the Court can make a categorical determination of each driver's employment status." Memo. in Support of Mot. to Certify Class (Louisiana), Aug. 4, 2008, at 1.

After the Kansas Decision, the Louisiana drivers took a turn in their argument and now complain that this court "refused" to consider extrinsic evidence in the Kansas Decision. They further argue that Louisiana law looks to evidence of actual control to determine employment status. For years, the Louisiana drivers have been on notice of this case's procedural posture and the resulting consequences on the scope of evidence the court could consider. Louisiana law looks to evidence of actual control to infer a right to control, but so do all the other states considered in today's decisions. *See* <u>Fuller v. United States Aircraft Ins. Group</u>, 530 So.2d 1282, 1289 (La. Ct. App. 1988) ("The degree of supervision and control actually exercised by the principal over the work performed . . . is highly indicative of reserved control."). But just like other right-to-control states, Louisiana law doesn't require a court to look to extrinsic evidence of actual control to infer a right to control. As the <u>Fuller</u> court stated, "[t]he amount of supervision and control actually exercised is not the crucial question, but rather the amount of supervision and control reserved by the principal from the nature of the relationship." <u>Id.</u>; *see also* <u>McLeod v. Moore</u>, 7

73

So.3d 190, 193 (La. Ct. App. 2009) ("[I]t is not the supervision and control actually exercised that is significant; the important question is whether, from the nature of the relationship, the right to do so exists."); <u>Arroyo v. East Jefferson Gen. Hosp.</u>, 956 So.2d 661, 664 (La. Ct. App. 2007) ("The important question is whether, from the nature of the relationship, the right to [control] exists, not whether supervision and control was actually exercised."); <u>Hughes v. Goodreau</u>, 836 So.2d 649, 656 (La. Ct. App. 2002) ("It is not the actual supervision or control which is actually exercised by the employer that is significant, but whether, from the nature of the relationship, the right to do so exists."). Louisiana courts, like courts in other states, take the evidence before them as it is and decide whether the right to control exists. *See generally* <u>Smith v. Prime, Inc.</u>, 20 So.3d 1184 (La. Ct. App. 2009) (relying on written agreement to determine nature of relationship); *compare* <u>Green v. Independent Oil Co.</u>, 201 A.2d 207 (Pa. 1964) (finding independent contractor status on evidence available to court, which was mostly the parties' written agreement), *with* <u>Juarbe v. City of Philadelphia</u>, 431 A.2d 1073 (Pa. Super. Ct. 1981) (finding employee status where testimony of actual exercises of control shed light on the nature of the parties' agreement, and distinguishing that case from the almost identical contractual agreement in <u>Green v. Independent Oil Co.</u>). As noted in the general introduction to today's decisions, the Louisiana drivers' argument on this point isn't well-taken; the drivers should have requested decertification if they found the procedurally limited scope of evidence to be disadvantageous to them. The law doesn't require the court to consider evidence

74

that would violate the commonality requirement for class certification and the law doesn't require the court to ignore the conditions it set forth for class certification.

The court reads the worker's compensation cases cited by the drivers with a wary eye because Louisiana's worker's compensation statute contains a statutory presumption of employee status that might have colored the way Louisiana courts have viewed the facts in worker's compensation cases. *See, e.g.*, Pitcher v. Hydro-Kem Servs., Inc., 551 So.2d 736, 740; Fuller v. United States Aircraft Ins. Group, 530 So.2d at 1288 (*quoting* LA. REV. STAT. ANN. § 23:1044).

> Louisiana courts look to five factors to examine the right to control:
>
> (1) whether there is a valid contract between the parties; (2) whether the work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it; (3) whether the contract calls for specific piecework as a unit to be done according to the individual's own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered; (4) whether there is a specific price for the overall undertaking agreed upon; and (5) whether the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.

Hickman v. Southern Pac. Transp. Co., 262 So.2d at 390-391. The most important factor is the right to control. *See* Smith v. Prime, Inc., 20 So.3d at 1188 ("[T]he essence of an employer/employee relationship, rather than a[n] independent contractor relationship, is the right of control."); Guillory v. State Farm Ins. Co., 662 So.2d 104, 117 (La. Ct. App. 1995) ("[T]he key issue in determining independent contractor status is control over the process of performing the work."). No one factor is dispositive, and each case must be decided on its own

facts and circumstances. <u>Smith v. Prime, Inc.</u>, 20 So.3d at 1188; <u>Tate v. Progressive Sec. Ins. Co.</u>, 4 So.3d 915, 916 (La. Ct. App. 2009); <u>Kibodeaux v. Progressive Ins. Co.</u>, 4 So.3d 222, 225 (La. Ct. App. 2009).

The drivers argue that under Louisiana law, FedEx's control of their workloads—requiring every package to be delivered every day, pickup and delivery within certain time windows, and the like—isn't "results-oriented," but rather indicates control of the process of performing work. Louisiana maintains the common law distinction between control of results, which doesn't indicate employee status by itself, and control of means and methods of work, which does indicate employee status. Hence, telling a truck driver "where and from whom to pick up loads of sand, the times to be at a particular site to begin loading, and the location where loads of sand were to be deposited" doesn't indicate employee status because these are contracted-for results. <u>Tate v. Progressive Sec. Ins. Co.</u>, 4 So.3d at 917 & 921-922 ("[T]o suggest that Mr. Brown should have been given the discretion of delivering the loads to wherever he chose is not reasonable."); *see also* <u>McLeod v. Moore</u>, 7 So.3d at 193 (finding independent contractor status even though company "controlled the process of loading and unloading the asphalt, and all drivers were expected to operate under the same [company] rules and procedures for loading, delivering, and unloading the asphalt" and drivers were expected to deliver the asphalt quickly); <u>Kibodeaux v. Progressive Ins. Co.</u>, 4 So.3d at 225 ("Both servant and independent contractor are engaged in the performance of an employment for the benefit of the employer."); <u>Mullen v. R.A.M. Enterprises</u>,

844 So.2d 376, 379 (La. Ct. App. 2003) (finding independent contractor status even though deliverymen were required to obtain signatures for each delivery, fill out a daily manifest form, and deliver each day's packages every day); Guillory v. State Farm Ins. Co., 662 So.2d at 107-108, 117 (reversing jury determination and finding independent contractor status even where State Farm threatened to terminate Guillory's agency contract if he didn't comply with State Farm's "added cars only program," stating that "requiring a contractor to comply with the owner's rules does not signify the requisite right of operational control necessary to vitiate the independent contractor relationship").

The drivers argue that their ability to hire assistants and drivers doesn't count in the Louisiana analysis because their assistants and drivers are subject to FedEx's approval. The plaintiffs offer a dubious citation to Pitcher v. Hydro-Kem Services., Inc., 551 So.2d at 739, to argue the point. In Pitcher, an injured carpenter was held to be an employee deserving worker's compensation benefits. In examining the worker's right to hire helpers and assistants, the court found that the carpenter had to ask his employer to provide assistants if he needed them; the carpenter had no right to hire assistants at all. There is quite a leap from having no right at all to hire assistants to saying that Louisiana holds that if a worker has a qualified right to hire, that qualified right to hire is equivalent to no right to hire. The drivers' argument on this point isn't the law in Louisiana.

The drivers also argue that the "independent nature" factor is viewed in light of the worker's integration into the employer's business and that Louisiana courts

77

place heavy emphasis on this factor. As one court put it, "it would be specious" to say that an employer couldn't control the particulars of a job when that work is integral to the employer's business. <u>Fuller v. United States Aircraft Ins. Group</u>, 530 So.2d at 1291. The <u>Fuller</u> court's statement, however, applied to the facts and circumstances before that court. The integral nature of work to a business isn't dispositive. Otherwise, an insurance agent working exclusively for a single insurance company could never be considered an independent contractor, yet Louisiana courts have considered insurance agents to be independent contractors. *See* <u>Guillory v. State Farm Ins. Co.</u>, 662 So.2d 104 (La. Ct. App. 1995) (reversing a jury's finding of employee status and finding independent contractor status as a matter of law for State Farm insurance agent).

Finally, the drivers argue that the payment factor favors them because, they say, the relevant inquiry under Louisiana law is whether payment is made at regular intervals and whether the individual can bill for services provided. They rely on <u>Kibodeaux v. Progressive Ins. Co.</u>, 4 So.3d 222 (La. Ct. App. 2009), where an electrical inspector who was paid bi-monthly for years and wasn't allowed to bill for his own services was found to be an employee. <u>Id.</u> at 226. However, the regularity of payment in <u>Kibodeaux</u> wasn't dispositive—the facts as a whole were dispositive, with the "most telling" fact being that the contract in question was terminable at will. <u>Id.</u> at 227; *see also* <u>Smith v. Prime, Inc.</u>, 20 So.3d at 1188 ("None of these factors is determinative. Instead, the totality of the factors must be considered."); <u>Tate v. Progressive Sec. Ins. Co.</u>, 4 So.3d at 918-919 (finding

78

truck driver to be independent contractor even though he was paid every Friday and worked primarily for a single company for many years).

For purposes of this case, Louisiana's common law right to control test doesn't differ materially from Kansas' method of distinguishing independent contractors from employees. "[T]he only reasonable inference that can be drawn is that FedEx hasn't retained the right to control the details of the contractors' work methods on a class-wide basis." Kansas Decision, at 73. The court addressed all other relevant factors in its Kansas Decision and incorporates that reasoning here. The Boudreaux drivers are independent contractors under Louisiana law.

### J. Maryland (3:06-cv-485, Westcott; 3:07-cv-189, Jones)

The Westcott drivers allege violations of Maryland's Wage Payment and Collection Act, fraud, and unjust enrichment; they seek declaratory and injunctive relief. Though the drivers didn't move to certify the fraud claim, they don't indicate that their claims turn on anything other than a determination of their employment status under the Maryland Wage Payment and Collection Act, MD. CODE ANN., LAB. & EMPL. § 3-501 et seq. See Memo. in Support of Mot. to Certify Class (Maryland), Mar. 12, 2007, at 1 [Doc. No. 546]. The parties indicate that both Maryland cases depend on the briefing in Westcott case because Laron Jones is a member of the Westcott Maryland class. The court grants FedEx's motions for summary judgment in both cases and denies the drivers' summary judgment motion in Westcott. Because the Maryland claims stand or fall on the common question of

whether FedEx Ground misclassified its drivers as independent contractors, judgment will be entered for FedEx on all claims in both Maryland cases.

The parties rely heavily on cases that don't apply to whether FedEx drivers are employees or independent contractors for purposes of the Maryland Wage Payment and Collection Act, MD. CODE., LAB. & EMPL. § 3-501 *et seq*. Many cases the parties cite deal with the worker's compensation statutes, in which Maryland courts have distilled a test to be used in a context different from that presented here. *See, e.g.*, Great Atlantic & Pacific Tea Co., Inc. v. Imbraguglio, 697 A.2d 885, 893-894 (Md. 1997) (setting forth five factors and citing cases setting forth same five factors for worker's compensation context).

The court instead must consider the six factors set forth in Baltimore Harbor Charters, Ltd. v. Ayd to determine whether the drivers are employees covered by the Maryland Wage Payment and Collection Act:

1. Whether the employer actually exercised or had the right to exercise control over the performance of the individual's work;

2. Whether the individual's service is outside all the usual course of business of the enterprise for which such service is performed;

3. Whether the individual is customarily engaged in an independently established trade, occupation, profession, or business;

4. Whether it is the employer or the employee who supplies the instrumentalities, tools, and location for the work to be performed;

80

5.    Whether the individual receives wages directly from the
employer or from a third party for work performed on the
employer's behalf; and

6.    Whether the individual held an ownership interest in the
business such that the individual had the ability and discretion
to affect the general policies and procedures of the business.

780 A.2d 303, 318-319 (Md. 2001). The Baltimore Harbors court emphasized the

right to control factor, *see* id. at 315-316, 318, and distilled these six factors from

the multi-factor test set forth in the Restatement (Second) of Agency, § 220(2). *See*

id. at 318. The Baltimore Harbors court expressly stated that it wasn't following

the broad definitions of employee, "such as 'any person suffered or permitted to

work by an employer,'" contained in the statutes of other jurisdictions, and

instead turned to the traditional common law distinctions made between

employees and independent contractors. Id. at 315.

Baltimore Harbors clarified that "[t]he emphasis on the right to exercise

control is whether [the alleged employer] could have exercised control over [the

alleged employee], not whether [it] actually did." Id. at 319. As in the Kansas

Decision, the only reasonable inference to be drawn from the facts before the

court, under the posture of this case, is that FedEx hasn't retained the right to

control the details of the contractors' performance on a class wide basis. Kansas

Decision, at 73. The court incorporates here the reasoning of the Kansas Decision.

Addressing the other Maryland factors, this court has held that the drivers'

service is integral to FedEx's business, so the second factor weighs in favor of

employee status. The third factor also weighs in favor of employee status because

81

drivers for UPS, DHL, FedEx Express, and the USPS are employees, yet it also weighs in favor of a finding of an independent contractor relationship because the Maryland FedEx drivers have the ability to grow their businesses in the service of FedEx. Drivers ultimately are responsible for supplying their own instrumentalities and tools, though FedEx supplies the routes by virtue of its own package delivery business. Drivers receive wages directly from FedEx, and no evidence before the court suggests drivers have an ownership interest in FedEx.

Because of the emphasis Maryland places on the right to control as being the weightiest factor in this and other employment question contexts, *see, e.g.*, Great Atlantic & Pacific Tea Co., Inc. v. Imbraguglio, 697 A.2d at 894 (stating in workers' compensation context, "control is paramount and, in most cases, decisive," and citing cases with similar strong language), the court holds that the Maryland (Westcott and Jones) drivers are independent contractors for purposes of the Maryland Wage Payment and Collection Act.

### K. Minnesota (3:05-cv-533, Lee)

The Lee drivers allege illegal deductions from wages, in violation of Minnesota Statutes § 181.79; failure to keep records, in violation of Minnesota Statutes § 177.30; violations of the Prevention of Consumer Fraud Act, MINN. STAT. § 325F.69; and fraud. They seek rescission and declaratory and injunctive relief. The drivers didn't move to certify the fraud claim, but they don't indicate that their claims turn on anything other than a determination of their employment status

82

under Minnesota law. *See* Memo. in Support of Mot. to Certify Class, Apr. 2, 2007, at 1 [Doc. No. 576]. The parties filed cross-motions for summary judgment. For the reasons stated below, the court denies the drivers' motion for summary judgment and grants FedEx's summary judgment motion. The Minnesota drivers are independent contractors under Minnesota law. Because the Minnesota claims all stand or fall on the common question of whether FedEx Ground misclassified its drivers as independent contractors, judgment will be entered for FedEx on all claims in the Minnesota case.

Minnesota law looks to five factors to resolve employment status: (1) the right to control the means and manner of performance;[13] (2) the mode of payment; (3) the furnishing of material or tools; (4) the control of the premises where the work is done; and (5) the employer's right to discharge. Boily v. Commissioner of Econ. Sec., 544 N.W.2d 295, 296 (Minn. 1996) (*citing* MINN. R. 3315.0555). Other factors can be considered if the five factors are inconclusive. *See* MINN. R. 3315.0555. The court doesn't review all those additional factors here because these five factors are conclusive.[14]

---

[13] Criteria for determining control include: authority over assistants; compliance with instructions; oral or written reports; place of work; personal performance; existence of a continuing relationship; right to discharge; set hours of work; training; amount of time; tools and materials; expense reimbursement; and satisfying requirements of regulatory and licensing agencies. MINN. R. 3315.0555, Subp. 3. The court considered all these factors in the Kansas Decision.

[14] The court already has weighed most of Minnesota's additional factors in the Kansas Decision by examining the totality of the circumstances. These factors include, but aren't limited to, availability to public; compensation on job basis; realization of profit or loss; obligation; substantial investment; simultaneous contracts; responsibility; and services in the course of the employer's organization, trade, or business. MINN. R. 3315.0555, Subp. 2.

The right to control the means and manner of performance is the most important factor. Boily v. Commissioner of Econ. Sec., 544 N.W.2d at 296; *see also* Corbin v. Commissioner of Revenue, 240 N.W.2d 809, 812 (Minn. 1976) ("The approach invariably used by this court for determining whether one is an employee or an individual contractor focuses on the nature and extent of control reserved by the person for whom the work is done."); Pettis v. Harken, Inc., 116 N.W.2d 565, 567-568 (Minn. 1962) ("The most important factor is the right of the employer to control the means and manner of performance."). The second key factor is the right to discharge. MINN. R. 3315.0555, Subp. 1(B); *see also* Pettis v. Harken, Inc., 116 N.W.2d at 568 (finding that company's right to reclaim equipment and terminate relationship at any time supplied necessary authoritative control to establish employer-employee relationship); Anfinson v. A.O.U.W. Ins. Co., 3 N.W.2d 7, 9 (Minn. 1942) ("Th[e] unrestricted right of discharge afforded adequate means for controlling Anfinson's work.").

Regular payment doesn't by itself indicate employee status. Relevant to the payment factor is whether wages are based on hours worked or are tied to the amount of contract performance. *See* Boily v. Commissioner of Econ. Sec., 544 N.W.2d at 296 (noting independent contractor dentists were paid monthly). Providing space and fixtures and major equipment doesn't by itself indicate employee status, particularly if the contractors are responsible for some of their own equipment. *See* id. (noting independent contractor dentists were provided office space, fixtures, and major items of equipment but had to supply their own

hand instruments and pay their own malpractice insurance premiums and continuing dental education fees). On the other hand, even if the pay and equipment factors weighed clearly in favor of independent contractor status, these two factors don't indicate independent contractor status if there is a right to control the means and manner of performance. *See* Pettis v. Harken, Inc., 116 N.W.2d at 292-293 (deciding that person supplying his own tractor and being paid on acreage basis rather than hourly rate was employee where there was a right to terminate at any time); Anfinson v. A.O.U.W. Ins. Co., 3 N.W.2d at 9 (deciding that neither the fact that employee supplied his own sawmill nor that he was paid on the basis of what he produced was controlling).

The Minnesota drivers complain in their supplemental brief that in the Kansas Decision the court "refused to consider instances in which FXG exercised control." They argue that in Minnesota an exercise of actual control "form[s] a basis for inferring a right of further control if and when it should become necessary." Minnesota Pltfs' Supp. Stmt., Sept. 24, 2010, at 3 [Doc. No. 2177] (*quoting* Anfinson v. A.O.U.W. Ins. Co., 3 N.W.2d 7, 9 (Minn. 1942)). Today's general introduction addresses the drivers' characterization of this court's approach to the scope of the evidence.[15] The court doesn't read Minnesota law as requiring courts to look to the actual exercise of control. The Anfinson case was unique because no written agreement existed between a log cutter and a farm

---

[15] The court also chronicled an example of the inconsistencies in the plaintiffs' arguments on the scope of evidence in today's Louisiana decision.

manager; they had an oral and informal relationship. <u>Anfinson v. A.O.U.W. Ins. Co.</u>, 3 N.W.2d at 8. To see whether the farm manager had a right to control the log cutter's manner and means of performance, extrinsic evidence of the parties' agreement was necessary, including an examination of letters the farm manager wrote to the log cutter. *See* <u>id.</u> at 8. The letters showed actual control of the details of the logger's work, and the <u>Anfinson</u> court found that in the absence of a written agreement it could properly assume that the employer had an unrestricted right to discharge the log cutter, and "[t]his unrestricted right of discharge afforded adequate means for controlling [the log cutter's] work." <u>Id.</u> at 9.

The drivers cite no case other than this unique 1942 case to support their complaint that the court didn't look at extrinsic evidence of actual control. The right to control, not the actual exercise of control, is determinative under Minnesota law. *See, e.g.*, <u>Hunter v. Crawford Door Sales</u>, 501 N.W.2d 623, 624 (Minn. 1993) ("Furthermore, the fundamental test of employment is the right, not just the exercise, of the employer to control the details of the work."); <u>Pettis v. Harken, Inc.</u>, 116 N.W.2d at 568 ("As to the element of control, we have held that the right to control rather than the exercise of the right is decisive."); *see also* MINN. R. 3315.0501 ("'Control' is the power to instruct, direct, or regulate the activities of an individual whether or not the power is exercised."). The evidence available under this case's procedural posture—the Operating Agreement and generally applicable policies and procedures—has allowed the court to examine FedEx's right to control the methods and means of the plaintiff drivers' work.

86

Articulating a principle that applies across all these MDL cases, the Anfinson court stated, "[i]t must be remembered that manner and means as opposed to result necessarily vary in kind and degree with each fact situation." Anfinson v. A.O.U.W. Ins. Co., 3 N.W.2d at 9; *see also* Iverson v. Independent Sch. Dist., 257 N.W.2d 572, 573 (Minn. 1977) ("The very nature of the work [driving handicapped students] required some form of control by the school district."). Each case must be resolved on its unique facts, and what constitutes control of results in one case ("I agree to deliver dry newspapers by 7 a.m. everyday") may constitute control of means in another case ("I agree to drive a load of newspapers from Indianapolis to Chicago by noon tomorrow, but you also tell me to overload my truck, take the scenic route to avoid police, and leave before I've finished my coffee, or else you'll hire someone else"). *See* Pettis v. Harken, Inc., 116 N.W.2d at 567 ("No general rule can be laid down which covers all situations. Each case must depend to a great extent upon its own particular facts."); MINN. R. 3315.0555, Subp. 1 ("Other factors, including some not specifically identified in this part, may be considered if a determination is inconclusive when applying the essential factors, and the degree of their importance may vary depending upon the occupation or work situation being considered and why the factor is present in the particular situation."). Thus, for example, a newscarrier can be an independent contractor even if she must complete deliveries in a timely fashion, maintain a certain order in her deliveries to meet customer expectations, maintain records of her deliveries, and respect the contractee's concerns if one of her freely hired

assistants incurs customer complaints directed to the contractee. *See* <u>Neve v. Austin Daily Herald</u>, 552 N.W.2d 45, 46-47 (Minn. Ct. App. 1996). In the world of newspaper deliveries, where customers expect dry newspapers delivered on time every day, such "controls" go to contracted-for results and not to how those results are to be achieved. <u>Id.</u> at 48. The same can easily be said of package delivery services.

Despite the uniqueness of each case, the plaintiffs argue that <u>Corbin v. Commissioner of Revenue</u>, 240 N.W.2d 809 (Minn. 1976), requires a grant of their summary judgment motion because, they say, the facts overlap in a controlling fashion. In <u>Corbin</u>, sales drivers were assigned routes and stops, couldn't change a route without the employer's agreement, and had no freedom to shop around for other suppliers. Beyond that, though, the employer owned the trucks, the employer maintained worker's compensation insurance for its sales drivers, and, more importantly, "[e]ither party could terminate the relationship without any contractual liability with the exception that a driver was bound by a 5-year covenant not to compete." <u>Id.</u> at 811-812. The facts of <u>Corbin</u> don't overlap with today's case in a compelling way. As <u>Corbin</u> stated, it is "necessary to examine the overall relationship between the parties to determine" employment status. <u>Id.</u> at 812.

The court already has decided—taking into account numerous subfactors under the totality of the circumstances—that "the only reasonable inference that can be drawn is that FedEx hasn't retained the right to control the details of the

88

contractors' work methods on a class-wide basis." Kansas Decision, at 73. Further, FedEx doesn't have the right to terminate the plaintiff drivers at will. Less importantly in Minnesota, the plaintiff drivers ultimately are responsible for obtaining their own trucks, and the drivers are paid according to a complex formula that takes into account the number of packages they deliver. Finally, FedEx doesn't control the premises because the contracts are performed on public roadways. *See* Iverson v. Independent Sch. Dist. No. 547, 257 N.W.2d at 573. The court incorporates here its reasoning in the Kansas Decision and concludes that the Lee drivers are independent contractors under Minnesota law.

*L. Nevada*

*(1) 3:07-cv-120, DeCesare*

The DeCesare drivers allege violations of Nevada's False Claims Act, NEV. REV. STAT. Chap. 357, violations of Nevada's Tax Liability Statutes, NEV. REV. STAT. § 363B.110(2), multiple violations of Nevada Revised Statutes Chapter 608, failure to fulfill statutory duties concerning unemployment insurance and worker's compensation, NEV. REV. STAT. §§ 612.455 & 616B.612, and fraud. They seek rescission and declaratory and injunctive relief. The court denied the Nevada drivers' motion to certify, except for the worker's compensation claim, NEV. REV. STAT. § 616B.612, which is class certified. Only the drivers moved for summary judgment. For the reasons stated below, the court finds that the DeCesare drivers are statutory employees for purposes of their worker's compensation claim, NEV.

REV. STAT. § 616B.612. The court will suggest remand of all claims for further disposition.

Nevada's Industrial Insurance Act defines "employee" as "every person in the service of an employer under any appointment or contract of hire." NEV. REV. STAT. § 616A.105. Independent contractors are expressly classified as statutory employees for purposes of Chapters 616A through 616D. NEV. REV. STAT. § 616A.210. A limited scope of employers of independent contractors are excluded from the provisions of Chapters 616A through 616D—a person isn't a statutory employer if (a) the person enters into a contract with another person or business that is an independent enterprise and (b) the person isn't in the same trade, business, profession, or occupation as the independent enterprise. NEV. REV. STAT. § 616B.603(1). The test is fully conjunctive, so if either prong isn't met, the independent contractor is a statutory employee for purposes of Chapters 616A through 616D. *See* Hays Home Delivery, Inc. v. Employers Ins. Co. of Nevada, 31 P.3d 367, 370 (Nev. 2001) (emphasizing conjunctive nature of test).

The Nevada drivers' work is a regular and integral part of FedEx's business and is essential to FedEx's business. *See* Kansas Decision, at 93. The drivers and FedEx are engaged in the same trade, business, profession, or occupation: package delivery. FedEx concedes as much by not addressing the plaintiffs' certified class claim under Chapter 616 in its post-Kansas supplemental brief. Because FedEx and the plaintiff drivers are engaged in the same business, the DeCesare drivers are statutory employees for purposes of Nevada Revised Statutes

Chapter 616. *See* <u>Hays Home Delivery, Inc. v. Employers Ins. Co.</u>, 31 P.3d at 371 ("[N]otwithstanding any minimal distinction between Green's and Hays's functions, both are in the same trade of delivering merchandise."). Whether the plaintiff drivers are "independent enterprises" makes no difference here. *See* <u>id.</u> at 370 ("We conclude that although Green was an independent enterprise, Green and Hays were, in fact, in the 'same trade.' Therefore, an employment relationship existed between Green and Hays, and Green is entitled to workers' compensation benefits.").

The court denied class certification for the drivers' claims under Nevada Revised Statutes Chapter 608 because no statutory language or case law clarified the test for dividing employees from independent contractors for those claims. *See generally* Op. and Ord., Feb. 17, 2010 [Doc. No. 2004]; Op. and Ord., July 27, 2009, at 44-50 [Doc. No. 1770]. FedEx now asks the court, based on <u>Baldonado v. Wynn Las Vegas, LLC</u>, 194 P.3d 96 (Nev. 2008), to deny the drivers' Chapter 608 claims for failure to pursue administrative remedies. The court declines to do so because the question at issue is the <u>DeCesare</u> drivers' status as employees or independent contractors. The Chapter 608 claims weren't certified, and the defense FedEx raises involves a question that can't be answered by the common evidence available for purposes of determining the drivers' employment status.

The drivers argue that the test distinguishing employees from independent contractors under Chapter 616A through 616D should be applied to their Chapter 608 claims. This court has expressly rejected the drivers' argument to

91

superimpose the Chapter 616 test onto Chapter 608. *See generally* Op. and Ord., Feb. 17, 2010 [Doc. No. 2004]; Op. and Ord., July 27, 2009, at 44-50 [Doc. No. 1770]. Further, the definitions in Nevada Revised Statutes §§ 616A.105, 616A.210, and 616B.603 expressly reference Chapters 616A through 616D, which would, by the plain terms of the text, appear to limit the scope of the test applicable to the Chapter 616 claims to only the Chapter 616 claims. In the absence of interpretive guidance, the court denied the drivers' motion for class certification on their Chapter 608 claims. Now, without a class for the Chapter 608 claims, evidence need not be limited in scope for the named Nevada plaintiffs in the same way the evidence has been limited in scope for the MDL plaintiffs' classes. The court again declines to accept the drivers' argument on this issue.

No reason remains under 28 U.S.C. § 1407 for these statutory Nevada claims to remain in this centralized docket. The court instructs the parties to file a joint proposed pretrial order with this court within twenty-one days of entry of this order. In addition to summarizing the history of this case, including significant orders and their docket numbers (including, but not limited to, evidentiary, class certification, and dispositive orders), the parties should provide a detailed description of the claims that remain outstanding, without arguing the merits of those claims, and should outline for the court and the transferor court how they anticipate resolving those claims.

*(2) 3:08-cv-234, <u>Campbell</u>*

Rob Campbell alleges unjust enrichment, breach of contract, breach of implied covenant of good faith and fair dealing, and violations of the Fair Labor Standards Act, 29 U.S.C. § 207. His complaint is distinct from the other Nevada case (DeCesare) in that many of his claims appear to be premised on his relationship with FedEx as an independent contractor and not on an allegation that FedEx has misclassified him as an independent contractor. No motion for summary judgment has been filed in the Campbell case, and the common question concerning the DeCesare drivers' employment status doesn't apply to Mr. Campbell's case. No reason of efficiency or economy appears to justify this case's continued placement in this centralized docket, so the court will suggest remand of Mr. Campbell's case to its transferor court.

The court instructs the parties to file a joint proposed pretrial order with this court within twenty-one days of entry of this order. In addition to summarizing the history of this case, including significant orders and their docket numbers (including, but not limited to, evidentiary, class certification, and dispositive orders), the parties should provide a detailed description of the claims that remain outstanding, without arguing the merits of those claims, and should outline for the court and the transferor court how they anticipate resolving those claims.

*M. New Hampshire (3:05-cv-601, <u>Gennell</u>)*

The <u>Gennell</u> drivers allege failure to pay overtime and provide meal breaks, conversion, fraud, unfair business practices, and failure to reimburse employee expenses; they seek rescission, an accounting, and declaratory judgment. Though the drivers didn't seek to certify the fraud claim, they don't indicate that their claims turn on the anything other than a determination of their employment status under New Hampshire law. *See, e.g.*, Memo. in Support of Mot. to Certify Class (New Hampshire), May 17, 2007, at 1 [Doc. No. 655]. The drivers filed the only summary judgment motion, which requires the court to resolve two distinct questions: (1) whether the drivers are employees under New Hampshire common law; and (2) whether the drivers are employees within the various New Hampshire statutes under which the New Hampshire drivers seek relief. For the reasons stated below, the court grants in part what is now called judgment independent of the motion to FedEx because the drivers are independent contractors under New Hampshire common law. The court grants in part the drivers' summary judgment motion because the drivers are employees under the relevant New Hampshire statutes. The drivers' common law claims are denied here and won't proceed beyond this stage. The court will suggest remand for further proceedings in the transferor court for the drivers' statutory claims.

As noted, FedEx didn't file a motion for summary judgment against the New Hampshire class. In its supplemental brief, FedEx asks the court to enter judgment *sua sponte* (now called judgment independent of the motion) in its favor.

94

As set forth in the general introduction to today's decisions, the court takes this request seriously because summary judgment is appropriate under New Hampshire law, the drivers' employment status can be examined today without prejudice to the drivers, and answering now the question of the drivers' employment status under New Hampshire law will conserve judicial resources.

FedEx argued at first that New Hampshire law requires a jury to determine the question of employment status even if the facts are undisputed. FedEx quoted New Hampshire courts as saying, "we [have] concluded that our concern will usually be 'whether on all the facts the community would consider the person an employee.'" Boissonnault v. Bristol Federated Church, 642 A.2d 328, 329 (N.H. 1994) (*quoting* Hunter v. R.G. Watkins & Son, Inc., 265 A.2d 15, 17 (N.H. 1970)). FedEx also relied on First Circuit case law stating that "New Hampshire . . . has decided to leave the marshalling and weighing of the factors, and the unavoidable policy judgments lurking beneath the surface of the amorphous 'control' test to a properly instructed jury." Kassel v. Gannett Co., 875 F.2d 935, 941-942 (1st Cir. 1989). In their supplemental brief, the drivers, who had previously argued strongly in favor of summary judgment issuing in New Hampshire, now rely on the Kassel language in an effort to prevent a result similar to Kansas.

The New Hampshire Supreme Court hasn't shied away from affirming summary judgments when the facts are undisputed. *See, e.g.*, Boissonnault v. Bristol Federated Church, 642 A.2d 328 (N.H. 1994). The "community" language FedEx quotes appears in a case in which the New Hampshire Supreme Court

affirmed without fuss a summary judgment holding of non-employee status. *See id.* at 329. The <u>Kassel</u> case was before the First Circuit following a jury trial. The court can't say whether the First Circuit would have had something different to say about the case had its procedural posture been different. The court today follows the New Hampshire Supreme Court's lead from the later case of <u>Boissonnault v. Bristol Federated Church</u>, 642 A.2d 328 (N.H. 1994), and holds that summary judgment on the employment status question is appropriate in New Hampshire when the facts are undisputed.

New Hampshire common law on the distinction between employees and independent contractors follows a totality of the circumstances approach using the multi-factor test set forth in Restatement (Second) of Agency § 220. <u>Boissonnault v. Bristol Federated Church</u>, 642 A.2d at 329; <u>Hunter v. R.G. Watkins & Son</u>, 265 A.2d at 17. The drivers argued in their original summary judgment briefs that the right to control was dispositive in New Hampshire; they have retreated from that position. New Hampshire adopted the totality of the circumstances approach because the old approach of looking only to the right to control was too narrow. Yet, as this court noted when granting class certification to the New Hampshire plaintiffs, the right to control remains a weighty consideration: employee status is likely if the right to control exists; other factors might yet indicate employee status if the right to control doesn't exist. Op. and Ord., Mar. 25, 2008, at 96-97 [Doc. No. 1119]; *see also* <u>Boissonnault v. Bristol Federated Church</u>, 642 A.2d at 329 (discussing only the right to control when

96

affirming summary judgment); <u>Continental Ins. Co. v. New Hampshire Ins. Co.</u>, 422 A.2d 1309, 1311 (N.H. 1980) (noting that control is an important factor); <u>Hunter v. R.G. Watkins & Son, Inc.</u>, 265 A.2d 15, 17 (N.H. 1970) ("[W]here other facts indicate the nonexistence of an employer-employee relationship, control may be a decisive factor.").

The drivers argue in their supplemental brief that New Hampshire law makes no distinction between the right to control contracted-for results and the right to control the means and methods of obtaining those results. The court can't agree. As with other common law tests, the results vs. means distinction applies in New Hampshire. *See* <u>Boissonnault v. Bristol Federated Church</u>, 642 A.2d at 329 ("[T]he judge found that although the church may have had control over the tasks assigned to Seeler, it had no right to control the physical performance or the details of the accounting services she performed. To carry the plaintiffs' argument to its logical conclusion could result in a client of a certified public accountant being liable for the accountant's negligent driving while delivering the client's tax return."); <u>Continental Ins. Co. v. New Hampshire Ins. Co.</u>, 422 A.2d at 1311("The State determined when and where Mitch's trucks would plow snow, but there was no evidence that the State either exercised or had the right to control the actual operations of the truck itself.").

The New Hampshire drivers also argue that the stated intent of their contracts—that the drivers be independent contractors—carries no weight in New Hampshire. New Hampshire common law follows the Restatement test, so intent

is a factor to be considered along with all the other factors. *See* Continental Ins. Co. v. New Hampshire Ins. Co., 422 A.2d at 1312 (noting that "all of the facts" considered included the actual contract between the State and truck driver). The drivers are correct that intent isn't dispositive, *see* Merchants Ins. Grp. v. Warchol, 560 A.2d 1162, 1165 (N.H. 1989) (holding worker to be employee where intent of oral contract was the only factor court found favoring independent contractor relationship and other factors outweighed the intent factor), but that doesn't change the outcome here.

The court addressed the right to control test, the Restatement factors, and the totality of the circumstances in the Kansas Decision. For the reasons stated in the Kansas Decision, the Gennell drivers are independent contractors under New Hampshire common law.

The New Hampshire drivers' claims also turn on whether they are employees under several New Hampshire statutes that state broadly, "'Employee' means and includes every person who may be permitted, required, or directed by any employer, in consideration of direct or indirect gain or profit, to engage in any employment." N.H. REV. STAT. ANN. §§ 275:4 II, 275:42 II, 279:1 X. New Hampshire statutes contain a narrow exception to the definition of "employee" for independent contractors who meet all of certain enumerated criteria, meaning that if any one factor weighs in favor of employee status, then there must be a finding of such status. N.H. REV. STAT. ANN. §§ 275:4 II; 275:42 II; 279:1 X. Effective January 2008, the New Hampshire legislature narrowed the independent

contractor category by increasing the number of required exception factors from five to twelve. The additions to the list of criteria don't affect the outcome of today's decision because at least one factor that was part of the original five factor list indicates employment status.

One factor common to the old and new lists of factors asks whether "[t]he person holds himself or herself out to be in business for himself or herself." N.H. REV. STAT. ANN. §§ 275:4(e); 275:42 II(e); 279:1 X(e). The drivers' delivery services are a regular and integral part of FedEx's business. *See* Kansas Decision, at 8-9, 93. At the same time, the drivers can take advantage of their entrepreneurial opportunities to own and operate multiple delivery routes and can profit accordingly. But even if the drivers take advantage of those opportunities, they still must hold themselves out as part of the FedEx system. FedEx requires drivers' trucks to bear the FedEx logo when used for deliveries, and requires drivers to wear FedEx uniforms because "the presentation of a consistent image and standard of service to customers throughout the system is essential in order to be competitive . . . and to permit recognition and prompt access to customers' places of business." Kansas Decision, at 14 (*quoting* OA, ¶ 1.12). The goal of the results-oriented contractual requirements is simple: "Contractors agree to conduct their businesses so that they can be identified as part of the FedEx system." Id., at 4-5 (*citing* OA, Background). The New Hampshire "holding out" statutory factor eviscerates the common law distinction between results and means that otherwise has applied under these facts. Nothing in the evidence before the court supports

an inference that FedEx drivers hold themselves out as being in business for themselves (even though in many respects they can be). Drivers are contractually required to hold themselves out as being part of the FedEx system so as to further FedEx's business objectives. The New Hampshire drivers are FedEx employees under the relevant New Hampshire statutes.

No reason of economy or efficiency supports retaining this case in this centralized docket. The court instructs the parties to file a joint proposed pretrial order with this court within twenty-one days of entry of this order. In addition to summarizing the history of this case, including significant orders and their docket numbers (including, but not limited to, evidentiary, class certification, and dispositive orders), the parties should provide a detailed description of the New Hampshire statutory claims that remain outstanding, without arguing the merits of those claims, and should outline for the court and the transferor court how they anticipate resolving those claims.

### N. New Jersey

### (1) 3:05-cv-595, Tofaute

The Tofaute (class) drivers assert violations of New Jersey's Consumer Fraud Act, N.J. STAT. ANN. § 56:8-1 et seq., misrepresentation, violations of New Jersey's Wage Payment Law, N.J. STAT. ANN. § 34:11-4.1(a), and breach of duty of good faith and fair dealing. They seek rescission and declaratory relief. The New Jersey plaintiffs didn't seek to certify their misrepresentation claim, but they don't

indicate that their claims turn on anything other than a determination of their employment status under New Jersey law. *See* Memo. in Support of Mot. to Certify, Mar. 12, 2007, at 1 [Doc. No. 552]. The parties filed cross-motions for summary judgment. For the reasons stated below, the court grants summary judgment to FedEx and denies the drivers' motion for summary judgment. Because the New Jersey (Tofaute class) claims stand or fall on the common question of whether FedEx Ground misclassified its drivers as independent contractors, judgment will be entered for FedEx for all claims in this New Jersey (3:05-cv-595, Tofaute) case.

The parties agree that New Jersey courts look to the multi-factor test set forth in Restatement (Second) of Agency § 220 to decide if an employment relationship exists. Carter v. Reynolds, 815 A.2d 460, 464 (N.J. 2003) ("[W]e recognize § 220 of the Restatement (Second) of Agency as the touchstone for determining who is a servant."); Mavrikidis v. Petullo, 707 A.2d 977, 984 (N.J. 1998); MacDougall v. Weichert, 677 A.2d 162, 190-191 (N.J. 1996) (Pollock, J., dissenting) ("Traditionally, this Court has adopted the test in Restatement (Second) of Agency § 220 when determining whether a hired person is an employee or an independent contractor."). The essence of the employment relationship is control or the right to control the person employed. Carter v. Reynolds, 815 A.2d at 464.

The drivers urge the court to view the outcome in Tofani v. Lo Biondo Brothers Motor Express, Inc., 200 A.2d 493 (N.J. Super. Ct. App. Div. 1964), a

worker's compensation case, as controlling. As in many other states, New Jersey law may consider a worker to be an independent contractor for some purposes, but will, by force of public policy, consider that worker to be an employee for other purposes. MacDougall v. Weichert, 677 A.2d at 166 (majority opinion). To give effect to the remedial purposes of New Jersey's worker's compensation law, courts construe employee status under that law more broadly than employee status under the common law. *See* Tofani v. Lo Biondo Bros. Motor Express, Inc., 200 A.2d at 501-503 (using "relative nature of the work" test); *see also* Philadelphia Newspapers, Inc. v. Board of Review, 937 A.2d 318, 324 (N.J. Super. Ct. App. Div. 2007) (acknowledging broader scope of employee status for remedial purposes of unemployment benefits statute). The court can't agree that Tofani's outcome controls this case because the Tofani court added to the right to control analysis a broad "relative nature of the work" test to be applied in the worker's compensation context, and the plaintiffs' case here isn't a worker's compensation case.

The drivers' supplemental brief comes terribly close to misleading the court. While the drivers correctly state that New Jersey follows the Restatement test, they quote and underline in the same paragraph the following language: "Any single one [factor favoring employee status] is virtually proof of the Employment relation; while contrary evidence as to Any one fact is at best only mildly persuasive evidence of contractorship and sometimes is of no force at all." Pltfs' Supp. Br., Sept. 24, 2010, at *1 (*quoting* Tofani v. Lo Biondo Bros. Motor Express, 200 A.2d

102

at 498  (alteration by the plaintiffs)). In their supplemental briefs in these MDL cases, the drivers generally tend to rely on subtle exaggerations and incomplete statements of the various states' laws. The court can't ignore without comment the New Jersey brief's incomplete and misleading statement of the law.

The drivers' selective quotation and editorial addition of "factor favoring employment status" strongly implies that if any one of the ten Restatement factors supports employee status, then that one factor, by itself, is sufficient proof of employee status in New Jersey. That implication is incorrect. The <u>Tofani</u> court wrote the following words[16] before the language the plaintiffs quote: "Of the four factors evidencing right of control, Any single one . . . ." <u>Tofani v. Lo Biondo Bros. Motor Express, Inc.</u>, 200 A.2d at 498. Continued reading of this <u>Tofani</u> paragraph reveals the following: "[E]mployment can, if necessary, often be solidly proved on the strength of one of the four items: direct evidence of control, method of payment, furnishing of equipment and right to fire." <u>Id.</u> at 498-499. Four factors isn't the same as ten factors, so the drivers should have given further thought to the quoted language. Indeed, the <u>Tofani</u> court stated: "Where some of the above listed factors [from the Restatement] point one way and some the other, a court must follow some mental weighing process according to some principle." <u>Tofani v. Lo Biondo Bros. Motor Express</u>, 200 A.2d  at 498. The <u>Tofani</u> court all but

---

[16] The <u>Tofani</u> court was, all the while, quoting extensively from Professor Larson's work on employment status.

expressly said that one factor indicating employee status under the Restatement test doesn't necessarily prove an employer-employee relationship.

Tofani explained in detail that the four-factor test (under which any one factor proves employee status) is a test for the right to control, and the ten-factor Restatement test is really the right to control test plus nine subordinate factors. Tofani v. Lo Biondo Bros. Motor Express, 200 A.2d at 497-499; *see also* Wright v. State, 778 A.2d 443, 452 (N.J. 2001) (discussing four factor control test); Lowe v. Zarghami, M.D., 731 A.2d 14, 19-20 (N.J. 1999) (outlining same four factor control test). In New Jersey, only the right to control can be dispositive—the other Restatement factors help the analysis but aren't themselves dispositive. This court addressed the four factors in New Jersey's right to control test in the Kansas Decision; each factor was held to favor independent contractor status or to be neutral. The drivers' misstatement of the law, if followed by this court, wouldn't have been harmless.

The drivers complain that the court "refused" to look at extrinsic evidence of actual control and they quote Tofani as saying, "Under the control test, the right to control is usually inferred from direct evidence of right of control and exercise of control." Id. at 498. This court addressed the drivers' characterization of its analysis in today's general introduction.[17] As the Tofani court observed, "it is constantly said that the right to control the details of the work is the primary

---

[17] The court also chronicled an example of the plaintiffs' inconsistent arguments on the scope of evidence in today's Louisiana decision.

test." Id. at 498; *see also* Lowe v. Zarghami, M.D., 731 A.2d 14, 20 (N.J. 1999) ("The control test is satisfied whenever the employer retains the right of control, even if the employer may not exercise actual control over the worker."). Saying that the exercise of control is evidence from which the right to control can be inferred isn't the same as requiring a court to look to extrinsic evidence of actual control to infer a right to control. Were a court so required, class certification wouldn't have been proper in this case.

For purposes of today's decision, New Jersey law doesn't materially differ from Kansas law. As the court held in the Kansas Decision, "the only reasonable inference that can be drawn is that FedEx hasn't retained the right to control the details of the contractors' work methods on a class-wide basis." Kansas Decision, at 73. The other factors relevant in New Jersey also were considered in the Kansas Decision, which is incorporated here. The Tofaute (class) drivers are independent contractors under New Jersey law.

### (2) 3:05-cv-535, *Capers*

Jessie Capers and his co-plaintiffs bring claims of race and age discrimination and denials of equal opportunity under state and federal law, breach of contract, violation of good faith and fair dealing, misrepresentation, retaliation, restraint of trade and commerce, infliction of emotional distress, racketeering, and negligence. FedEx moved for summary judgment. Mr. Capers is a member of the Tofaute class, and he has indicated in his summary judgment

response that the <u>Tofaute</u> class decision will be binding on his claims. At the same time, Mr. Capers' complaint alleges multiple times that he and his co-plaintiffs actually are independent contractors and, unlike most other breach of contract claims in these MDL cases, his breach of contract claim is premised on him being an independent contractor rather than on FedEx's alleged misclassification of the drivers. Thus, the court grants in part FedEx's motion for summary judgment because the issues briefed don't appear to dispose of all of Mr. Capers' claims.

For the reasons stated in <u>Tofaute</u>, Mr. Capers is an independent contractor under New Jersey law. His additional tort claims, breach of contract claim, and claims of discrimination under state and federal law weren't briefed and aren't addressed here. Those claims aren't class claims, so the transferor court will decide what weight to give to today's procedurally distinct decision in <u>Tofaute</u>. Today's decision isn't meant to suggest Mr. Capers' employment status under the facts and laws that apply to his remaining claims. None of the factors under 28 U.S.C. § 1407 counsel this case's retention in this centralized docket, so the court will suggest remand of Mr. Capers' case to the transferor court.

The court instructs the parties to file a joint proposed pretrial order with this court within twenty-eight days of entry of this order. In addition to summarizing the history of this case, including significant orders and their docket numbers (including, but not limited to, evidentiary, class certification, and dispositive orders), the parties should provide a detailed description of the claims that remain outstanding, without arguing the merits of those claims, and should

outline for the court and the transferor court how they anticipate resolving those claims.

### (3) 3:07-cv-327, <u>Farrell</u>

Richard Farrell alleges violations of the Uniformed Service Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301-4333, breach of contract, breach of the duty of good faith and fair dealing, and tortious interference with a contract and/or prospective business relationship. Mr. Farrell is a member of the <u>Tofaute</u> class, and today's decision in <u>Tofaute</u> binds him: he is an independent contractor under New Jersey law. The <u>Tofaute</u> decision doesn't address Mr. Farrell's federal law claim or his contractual claims premised on his status as an independent contractor. Those claims aren't class claims, so the transferor court will decide what weight to give to today's procedurally distinct decision in <u>Tofaute</u>. The court will suggest remand of Mr. Farrell's case to its transferor court.

The court instructs the parties to file a joint proposed pretrial order with this court within twenty-eight days of entry of this order. In addition to summarizing the history of this case, including significant orders and their docket numbers (including, but not limited to, evidentiary, class certification, and dispositive orders), the parties should provide a detailed description of the claims that remain outstanding, without arguing the merits of those claims, and should outline for the court and the transferor court how they anticipate resolving those claims.

### (4) 3:09-cv-2, _Tofaute_

Michael Tofaute, a named plaintiff in today's New Jersey class decision, brings a separate complaint alleging violations of FMLA, breach of implied good faith and fair dealing, and violations of New Jersey's antidiscrimination laws. Today's class decision in 3:05-cv-595 (_Tofaute_) binds Mr. Tofaute, and his relationship with FedEx under the Operating Agreement is one of an independent contractor. Because New Jersey law recognizes broader definitions of who is an employee under circumstances different from those considered in today's decisions, Mr. Tofaute might or might not be an independent contractor for purposes of his remaining FMLA and discrimination claims. These claims aren't class claims, so the transferor court will decide what weight to give to today's procedurally distinct decision in _Tofaute_. The court declined to certify class FMLA claims because resolution of those claims would require consideration of particularized evidence. _See_ Op. and Ord., Mar. 25, 2008, at 61-66 [Doc. No. 1119]. The court will suggest remand of Mr. Tofaute's case to the transferor court.

The court instructs the parties to file a joint proposed pretrial order with this court within twenty-eight days of entry of this order. In addition to summarizing the history of this case, including significant orders and their docket numbers (including, but not limited to, evidentiary, class certification, and dispositive orders), the parties should provide a detailed description of the claims that remain outstanding, without arguing the merits of those claims, and should

outline for the court and the transferor court how they anticipate resolving those claims.

### O. New York

### (1) 3:05-cv-538, _Louzau_

The _Louzau_ drivers allege violations of New York's wage statutes and fraud; they seek rescission and declaratory judgment. Though the New York drivers didn't move to certify the fraud claim, they don't indicate that their claims turn on anything other than a determination of their employment status under New York law. _See, e.g._, Memo. in Support of Mot. to Certify Class (New York), Mar. 12, 2007, at 1 [Doc. No. 548]. The parties filed cross-motions for summary judgment. For the reasons stated below, the court grants FedEx's summary judgment motion and denies the drivers' summary judgment motion. Because the New York claims stand or fall on the common question of whether FedEx Ground misclassified its drivers as independent contractors, judgment will be entered in FedEx's favor for all claims in the New York case.

New York's wage statute defines "employee" as "any person employed for hire by an employer in any employment." N.Y. LAB. LAW § 190(2). The statute excludes independent contractors from this definition, so courts turn to New York's common law test to decide whether someone is an employee or independent contractor. _See_ Bynog v. Cipriani Group, Inc., 802 N.E.2d 1090, 1093 (N.Y. 2003); Akgul v. Prime Time Transp., Inc., 742 N.Y.S.2d 553, 556 (N.Y. App. Div. 2002).

"Where the proof on the issue of control presents no conflict in evidence or is undisputed, the matter may properly be determined as a matter of law." Bhanti v. Brookhaven Mem'l Hosp. Med. Ctr., Inc., 687 N.Y.S.2d 667, 669 (N.Y. App. Div. 1999).

Like most common law tests, New York's common law test focuses on the right to control.

> [T]he critical inquiry in determining whether an employment relationship exists pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results. Factors relevant to assessing control include whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule.

Bynog v. Cipriana Group, 802 N.E.2d at 1092-1093.

The drivers argue in their supplemental brief that the Bynog v. Cipriani Group formulation shows that New York common law is unique because of its use of the disjunctive "or": if FedEx controls the results of their work, the drivers say, then that control establishes an employer-employee relationship under New York law. The court can't agree with this reading of New York law, though it seems plausible on its face. No New York case has declared employee status merely because of an employer's control of contracted-for results. Rather, New York courts focus on control of means and methods and not on control of results. *See* Gfeller v. Russo, 846 N.Y.S.2d 501, 502 (N.Y. App. Div. 2007) ("Control of the method and means by which the work is to be done . . . is the critical factor in determining whether one is an independent contractor or an employee for the

110

purposes of tort liability."); In re Askew, 826 N.Y.S.2d 840, 841 (N.Y. App. Div. 2007) (focusing on "sufficient supervision, direction and control over the manner in which claimant was required to perform his work such that there was an employer-employee relationship"); Matter of Pepsi-Cola Buffalo Bottling Corp., 534 N.Y.S.2d 532, 533-534 (N.Y. App. Div. 1988) ("[W]hile no single factor is determinative, control over the means used to achieve the desired result is particularly significant."). Indeed, New York courts aren't shy about reversing administrative decisions and finding that an independent contractor relationship existed. See, e.g., Matter of Hertz Corp., 811 N.E.2d 5 (N.Y. 2004); In re Ted Is Back Corp., 475 N.E.2d 113 (N.Y. 1984); In re 12 Cornelia St., Inc., 438 N.E.2d 1117 (N.Y. 1982); In re Wilson Sullivan Co., 44 N.E.2d 387 (N.Y. 1942); Irrutia v. Terrero, 642 N.Y.S.2d 328 (N.Y. App. Div. 1996); Claim of Werner, 619 N.Y.S.2d 379 (N.Y. App. Div. 1994); Claim of Pavan, 570 N.Y.S.2d 696 (N.Y. App. Div. 1991). Such reversals would be unlikely if New York law indicated employee status simply because of results-oriented controls in a contractual relationship.

Judge Finch, sitting on the New York Court of Appeals, originated the disjunctive "or" language, and when he did so he didn't write it in a way suggesting so seismic a shift away from the common law distinction between control of results and control of means and methods. He wrote: "[U[pon the record in this case it cannot be seriously contended that there are any facts sufficient to show that the respondent exercises control over either the results produced by its salesmen or the means employed by them to achieve the results." In re Wilson

111

Sullivan Co., 44 N.E.2d at 388. Two years earlier, Judge Finch stated that "the distinction between an employee and an independent contractor has been said to be the difference between one who undertakes to achieve the agreed result and to accept the directions of his employer as to the manner in which the result shall be accomplished, and one who agrees to achieve a certain result but is not subject to the orders of the employer as to the means which are used." In re Morton, 30 N.E.2d 369, 371 (N.Y. 1940). The Court of Appeals author who originated the "or" language clearly distinguished between controlling contracted-for results and controlling the means and methods of attaining those results. Control of results didn't indicate employee status; control of means and methods did indicate employee status.

Although the contemporary Bynog court used the disjunctive "or" in reciting the employment status test, that court's analysis is in line with the form and substance of the common law test in other states. *See* Bynog v. Cipriani Group, 802 N.E.2d at 1092-1093 (finding plaintiffs to be independent contractors). The Bynog court didn't discuss contracted-for results in finding temporary waiters to be independent contractors. Yet surely the contracting company "controlled" the "results" of waiters' performance by declining to hire or continue to employ temporary waiters who didn't produce satisfactory results. *See generally* Bynog v. Cipriani Group, Inc., 802 N.E.2d 1090 (N.Y. 2003).

Before <u>Bynog v. Cipriani Group</u>, the New York Court of Appeals stated in in <u>Matter of Ted Is Back Corp.</u>, 472 N.E.2d 113 (N.Y. 1984), that although the employment determination

> may rest upon evidence that the employer exercises either control over the results produced or over the means used to achieve the results, control over the means is the more important factor to be considered. Thus, incidental control over the results produced without further indicia of control over the means employed to achieve the results will not constitute substantial evidence of an employer-employee relationship.

475 N.E.2d at 114. The <u>Ted Is Back</u> court went on to say that "the evidence does not support a finding of control over the means of achieving the results" even where the corporation provided sales leads, retained the right to approve contract price, and supplied form contracts for salespeople's use. <u>Id.</u> at 115. After <u>Bynog v. Cipriani Group</u>, New York's highest court reiterated, "Incidental control over the results produced—without further evidence of control over the means employed to achieve the results—will not constitute substantial evidence of an employer-employee relationship." <u>Matter of Hertz Corp.</u>, 811 N.E.2d 5, 6 (N.Y. 2004).

Control over results is "incidental" if there is no control over the means used to achieve those results. In <u>Matter of Pavan</u>, 570 N.Y.S.2d 696 (N.Y. App. Div. 1991), self-employed limousine drivers subjected themselves to numerous results-oriented controls to become members of a dispatch pool: a membership committee screened prospective members, and the rules of the membership corporation required the limousine drivers to maintain a neat appearance, keep their cars clean and satisfactory, obtain and use specific radios, acquire vehicles meeting

113

specific requirements, work during rush hours, and complete accepted assignments. Id. at 698. The court viewed those membership requirements as evidencing "at most, 'incidental control over the results produced without further indicia of control over the means employed to achieve the results.'" Id. (*quoting* Matter of Ted Is Back Corp., 475 N.E.2d at 114). "Absent these insignificant controls, UTOG could not possibly conduct its business." Matter of Pavan, 570 N.Y.S.2d at 698 (*citing* Matter of Ted Is Back Corp., 475 N.E.2d at 114-115); *see also* Matter of Hertz. Corp., 811 N.E.2d at 6 (giving claimant instructions on what to wear, what products to promote, and how to make a presentation didn't require conclusion that claimant was employee); Irrutia v. Terrero, 642 N.Y.S.2d 328, 329 (N.Y. App. Div. 1996) ("Although drivers interested in receiving dispatches from Corona Car agreed to certain basic standards of conduct and rules of operation, these rules and standards related to largely incidental matters and constituted the exercise by Corona Car of only general supervisory powers."). In short, "[t]he requirement that work be done properly is a condition just as readily required of an independent contractor as of an employee and not conclusive as to either." Matter of Hertz Corp., 811 N.E.2d at 6.

Because this court has held that FedEx doesn't have the right to control the drivers' means and methods of how they go about their work, FedEx's results-oriented controls don't result in employee status even under New York law. If FedEx did control means and methods, then the extensive results-oriented controls would weigh in under New York law.

114

Although the Bynog court clarified that the employment test involved five factors, most New York cases seem to take a totality of the circumstances approach to determining whether the right to control exists. *See, e.g.*, Etherington v. Empire Improvements, Inc., 389 N.Y.S.2d 459, 460 (N.Y. App. Div. 1976) ("The question of whether or not an employment relationship exists is factual and no one fact can be exclusively relied upon to prove or disprove the relationship."). Some cases highlight Restatement factors without citing to the Restatement. *See* Gfeller v. Russo, 846 N.Y.S.2d 501, 502 (N.Y. App. Div. 2007); Fitzpatrick v. Holimont, Inc., 669 N.Y.S.2d 88, 89 (N.Y. App. Div. 1998). Some courts issue a summary ruling without much discussion at all, other than to note that the right to control exists or doesn't exist. Other cases have placed weight on a contractor's ability to hire others to drive his vehicle and to sell his franchise. *See* In re Jarzabek, 738 N.Y.S.2d 742, 743 (N.Y. App. Div. 2002).

The court follows the Bynog approach, but notes that whatever the common law approach used—Bynog, Restatement, right to control, totality of the circumstances, or any permutation of these—the reasoning of the Kansas Decision holds, and the drivers are independent contractors chiefly (though not only) because FedEx doesn't have the right to control the means and methods of the drivers' work. The court held in the Kansas Decision that FedEx drivers can have complete freedom with their time to the extent they choose to hire assistants or otherwise take advantage of their entrepreneurial opportunities—to this extent the drivers work at their own convenience and don't work a fixed schedule. The

drivers are free to engage in other employment, and they receive fringe benefits only to the extent they choose to take advantage of them. The court incorporates the reasoning of the Kansas Decision and concludes that under the <u>Bynog</u> test and other New York permutations of the common law test, the <u>Louzau</u> drivers are independent contractors.

### (2) 3:05-cv-537, *Johnson*

Curtis and Margaret Johnson allege breach of contract, fraud, tortious interference with contract, intentional infliction of economic harm, and discrimination based on race. They aren't members of the New York <u>Louzau</u> class. FedEx filed a motion for partial summary judgment. Because the Johnsons aren't members of the <u>Louzau</u> class, the procedural posture of their case is distinct, particularly regarding the scope of evidence available to the court, and nothing justifies keeping their case in this centralized docket any longer. The transferor court will decide how much weight to give today's decision in <u>Louzau</u> to the Johnsons' claims in light of the differing procedural and evidentiary postures of the two New York cases. The court denies FedEx's motion for partial summary judgment as premature, and will suggest remand of their case to its transferor court.

The court instructs the parties to file a joint proposed pretrial order with this court within twenty-eight days of entry of this order. In addition to summarizing the history of this case, including significant orders and their docket

numbers (including, but not limited to, evidentiary, class certification, and dispositive orders), the parties should provide a detailed description of the claims that remain outstanding, without arguing the merits of those claims, and should outline for the court and the transferor court how they anticipate resolving those claims.

### P. North Carolina (3:07-cv-326, <u>Whiteside</u>)

The <u>Whiteside</u> drivers allege ERISA violations, breach of contract, fraud, unjust enrichment, and violations of North Carolina's Unfair Trade Practices Act, N.C. GEN. STAT. § 75-1.1(a). They seek rescission and declaratory relief. Though the drivers didn't move to certify the fraud or breach of contract claims, they don't indicate that these claims turn on anything other than a determination of their employment status under North Carolina law. *See* Memo. in Support of Mot. for Summ. Judg., Sept. 28, 2009, at 1 [Doc. No. 1799]; Memo. in Support of Mot. to Certify Class (North Carolina), Oct. 1, 2007, at 1 [Doc. No. 869-2].

Because the drivers indicate in their complaint that they haven't pursued all administrative remedies, the court denies the ERISA claim without prejudice in accord with the decision on the ERISA claims in the Kansas case. The court fully incorporates here its decision denying the Kansas ERISA claims, Op. and Ord., June 28, 2010 [Doc. No. 2078].

The North Carolina drivers filed the only summary judgment motion on the employment status question. For the reasons stated below, the court denies the

drivers' motion and grants judgment independent of the motion to FedEx. Because the North Carolina claims (other than the ERISA claims) stand or fall on the common question of whether FedEx Ground misclassified its drivers as independent contractors under North Carolina law, judgment will be entered for FedEx in the North Carolina case on all claims.

As noted, FedEx didn't file a summary judgment motion addressing the North Carolina class. In its supplemental brief, FedEx asks the court to enter judgment *sua sponte* (now calleded judgment independent of the motion) in its favor. As set forth in the general introduction to today's decisions, the court takes this request seriously because summary judgment is appropriate under North Carolina law, the drivers' employment status can be examined today without prejudice to the drivers and answering now the question of the plaintiff drivers' employment status under North Carolina law will conserve judicial resources.

Summary judgment in North Carolina is appropriate on the employment status question when the facts are undisputed and only one inference can be drawn from those facts. Johnson v. News and Observer Publ'g Co., 604 S.E.2d 344, 346 (N.C. Ct. App. 2004) (stating that summary judgment is appropriate "[w]here the facts are undisputed or the evidence is susceptible of only a single inference and a single conclusion"); *see also* McCown v. Hines, 549 S.E.2d 175 (N.C. 2001) (finding claimant was independent contractor as a matter of law and reversing Industrial Commission award of worker's compensation benefits); Youngblood v. North State Ford Truck Sales, 364 N.E.2d 433 (N.C. 1988) (finding

claimant was employee as a matter of law and affirming Industrial Commission award of worker's compensation benefits).

In North Carolina, the "vital" test distinguishing employees from independent contractors is the retained right to control the details of a worker's means and methods of performing a job. Hayes v. Board of Trs. of Elon College, 29 S.E.2d 137, 140 (N.C. 1944); *see also* McCown v. Hines, 549 S.E.2d 175, 177-178 (describing factors as facilitating determination of whether alleged employer has retained the right to control and direct the details of work). North Carolina courts turn to eight factors to help determine if an alleged employer has retained the right to control: whether the person employed (a) is engaged in an independent business, calling, or occupation; (b) is to have the independent use of his special skill, knowledge, or training in the execution of the work; (c) is doing a specified piece of work at a fixed price, for a lump sum, or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing the work rather than another; (e) is not in the regular employ of the other contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; and (h) selects his own time. McCown v. Hines, 549 S.E.2d at 177; Hayes v. Board of Trs. of Elon College, 29 S.E.2d at 140. At least one North Carolina case has noted a differently formulated list of four "generally recognized" factors to evaluate the right to control: (a) method of payment; (b) the furnishing of equipment; (c) direct evidence of exercise of control; and (d) the right to fire. Youngblood v. North State Ford Truck Sales, 364 S.E.2d 433, 439 (N.C. 1988). No

single factor is controlling under either approach, nor must all factors be in agreement; these factors are considered "along with all other circumstances." McCown v. Hines, 549 S.E.2d at 178; Youngblood v. North State Ford Truck Sales, 364 S.E.2d at 438; Hayes v. Board of Trs. of Elon College, 29 S.E.2d at 140.

The drivers argue in their supplemental brief that in North Carolina, customer-based requirements placed on workers are control of means and methods and not control of results. The court disagrees. Independent contractors don't become employees just because they are subject to controls "as to the result of the work" to be done. McCown v. Hines, 549 S.E.2d at 177; Youngblood v. North State Ford Truck Sales, 364 S.E.2d at 437; Hayes v. Board of Trs. of Elon College, 29 S.E.2d at 140. North Carolina courts take this division between control of means and control of results seriously. For example, in the seminal Hayes case, the defendant Board issued instructions that it wanted electrical poles cut within certain parameters, including cutting ten feet off each pole. Even though the poles could have been cut in other ways, the court viewed these instructions as being results-oriented and not controls of the means and methods of how the workers actually cut the poles. 29 S.E.2d at 142.

In McCown v. Hines, the defendant home owner instructed a roofer to use some old, mismatched shingles, and directed where the roofer placed them on the roof. 549 S.E.2d at 176. The court found the home owner's instructions amounted "to nothing more than aesthetic decisions within the control of the owner" and

didn't go to the details of how the roofer performed the work. Id. at 178. The distinction between means and results holds true in North Carolina as in Kansas.

The drivers argue that the first factor—engagement in "an independent business, calling, or occupation"—looks at the independent nature of a worker's trade only by looking at whether the work involved was a regular part of the employer's business. See Cooper v. Asheville Citizen-Times Publ'g Co., Inc., 129 S.E.2d 107, 114 (N.C. 1963). The court doesn't agree that North Carolina courts interpret this factor only in this way. See McCown v. Hines, 549 S.E.2d at 178 (discussing roofer's independent calling where he engaged in roofing for ten years, had a certain degree of skill and experience, and provided his own equipment). If they did, this factor would weigh in favor of employee status because the drivers' work is integral to FedEx's business. By its terms, the first factor also asks whether the worker is engaged in an independent business, and FedEx drivers have the contractual right to be engaged in an independent business: they can acquire multiple trucks and routes, and they are free to do other work while operating their delivery business. This first factor encompasses considerations weighing on both sides of the equation.

The drivers say North Carolina courts have adopted a broader view of what constitutes the right to terminate: if a person can be discharged for breach of contract, that person is an employee. The drivers conclude that they are employees in North Carolina because FedEx can terminate them for breach of contract. Such a rule would radically alter the dynamics of independent contractor

relationships by forbidding a usually permitted method contractees have to ensure contracted-for results. The plaintiffs cite to Johnson v. News and Observer Publ'g Co. 604, S.E.2d 344 (N.C. Ct. App. 2004), where the court noted that a newspaper retained the right to fire a delivery person if he breached any provision of his contract and so could terminate "at will for a broad range of reasons." Id. at 348. But controlling precedent from North Carolina's Supreme Court indicates that Johnson didn't declare the far-sweeping rule of law the drivers suggest; rather, the Johnson decision applies to the facts that were before the Johnson court without declaring broad-sweeping changes to the common law. See McCown v. Hines, 549 S.E.2d at 176, 179 (noting that though injured roofer "did not feel completely free to leave the work site without getting fired," his duty to perform his contractual obligations didn't amount to him being subject to discharge for adopting one method of doing the work rather than another); Youngblood v. North State Ford Truck Sales, 364 S.E.2d at 438 ("North State retained the right to discharge plaintiff for any reason. The right to fire is one of the most effective means of control. An independent contractor is subject to discharge only for cause and not because he adopts one method of work over another. An employee, on the other hand, may be discharged without cause at any time." (citations omitted)). As noted in the Kansas Decision, FedEx can't discharge a driver at will; a termination must be based on one or more of five limited circumstances, including breach of contract—in other words, a termination must be "for cause". See Kansas Decision, at 95-97.

North Carolina law doesn't materially differ from Kansas law for purposes of today's decision. All the North Carolina factors and the totality of the circumstances were addressed and fully discussed in the Kansas Decision, which the court incorporates here. For these reasons, the <u>Whiteside</u> drivers are independent contractors under North Carolina common law.

### Q. Ohio

### (1) 3:08-cv-336, <u>Kelly</u>

The <u>Kelly</u> drivers allege unjust enrichment, denial of FMLA benefits, and fraud; they seek a constructive trust and declaratory and injunctive relief. All claims were class certified except the FMLA claim,[18] which the drivers didn't seek to certify because of the denial of certification for the California class' FMLA claim. *See* Op. and Or., Mar. 25, 2008, at 61-66 [Doc. No. 1119]. Only the drivers moved for summary judgment. For the reasons stated below, the court denies the drivers' motion and grants judgment independent of the motion to FedEx on all state law claims. The court will suggest remand of the FMLA-related claims for further disposition.

As noted, FedEx didn't file a summary judgment motion against the <u>Kelly</u> drivers. In its supplemental brief, FedEx asked this court to enter judgment *sua sponte* (now called judgment independent of the motion) in its favor. As set forth

---

[18] Unlike other states, the *Kelly* class plaintiffs sought to certify their fraud claim, and that claim was class certified along with the other claims.

123

in the general introduction to today's decisions, the court takes this request seriously because summary judgment is appropriate under Ohio law, the drivers' employment status can be examined today without prejudice to the drivers, and answering now the question of the plaintiff drivers' employment status under Ohio law will conserve judicial resources.

In response to the Ohio drivers' summary judgment motion, FedEx argued that Ohio courts disfavor resolving employment status questions on summary judgment. The parties have adopted each other's original arguments in the wake of the Kansas Decision. The drivers now argue in their supplemental brief that if any of the factors supports employment status, the employment status question can't be decided on summary judgment.  Ohio law doesn't support the proposition that the presence of absolutely any indicia of employee status results in a jury trial in Ohio. Ohio follows the right to control test, recognizing that "where the evidence is not in conflict or the facts are admitted, the question of whether a person is an employee or an independent contractor is a matter of law to be decided by the court. However, the issue becomes a jury question where the claimant offers some evidence that he was an employee rather than an independent contractor." Bostic v. Connor, 524 N.E.2d 881, 884 (Ohio 1988). Ohio courts grant summary judgment when the facts are undisputed and allow but one inference on the right to control. See Richardson v. Mehan, 430 N.E.2d 927 (Ohio 1982) (finding employee status); Perron v. Hood Indus., Inc., No. L-06-1396, 2007 WL 2458472 (Ohio Ct. App. Aug. 31, 2007) (finding independent contractor

status);[19] <u>Conway v. Calbert</u>, 695 N.E.2d 271 (Ohio Ct. App. 1997) (finding independent contractor status); <u>Testement v. National Highway Express</u>, 683 N.E.2d 439 (Ohio Ct. App. 1996) (finding independent contractor status and affirming lower court's disagreement with worker's compensation tribunal's finding of employee status); <u>Harmon v. Schnurmacher</u>, 616 N.E.2d 591 (Ohio Ct. App. 1992) (finding employee status); <u>Napier v. Administrator, Ohio Bureau of Emp't Servs.</u>, No. 89AP-741, 1990 WL 31774 (Ohio Ct. App. Mar. 22, 1990) (finding employee status).

Ohio courts use the common law right to control test to determine employment status. The determination depends on the facts of each case, and multiple factors are considered—who controls the details and quality of the work; who controls the hours worked; who selects the materials, tools and personnel used; who selects the routes traveled; the length of employment; and any pertinent agreements or contracts—though the list is "certainly not limited to such indicia." <u>Bostic v. Connor</u>, 524 N.E.2d 881, 883-884 (Ohio 1988) (*citing* RESTATEMENT (SECOND) OF AGENCY § 220).

The drivers' chief argument is that the <u>Bostic</u> court's use of the present tense "controls" and "selects" indicates that Ohio courts authorize the use of evidence of actual control as proof of the right of control. Ohio courts—like those

---

[19] Both sides rely in part on unpublished court opinions, but Ohio has abolished the distinction in weight between unpublished and published opinions, and even before that rule was changed unpublished opinions could be considered persuasive as a court deems fit. *See* Ohio Supreme Court Rules for the Reporting of Opinions, Rule 4.

in all the other states—look to evidence of actual control when such evidence is available, but Ohio law doesn't require examination of actual control when, as here, examination of individualized evidence would violate the rules of class certification concerning common evidence. *See generally* Perron v. Hood Indus., Inc., No. L-06-1396, 2007 WL 2458472 (Ohio Ct. App. Aug. 31, 2007) (relying heavily on written terms of contract between parties and finding independent contractor status). The court examines the relationship between the Kelly drivers and FedEx under the procedural posture of these MDL cases.

Ohio law under Bostic doesn't differ materially from Kansas law. The distinction between control of results (which doesn't indicate employee status) and control of means and methods of achieving those results (which indicates employee status) holds in Ohio as it does in Kansas and elsewhere. *See* Conway v. Calbert, 695 N.E.2d at 273-274 (finding independent contractor status because "the carrier [was] solely responsible for the satisfactory delivery of the advertising materials in the plastic bags within the contracted area" even though DCS told the carrier what materials to put in bags for delivery, where to make deliveries, and where to place deliveries on site, and subjected the carrier to delivery inspections and other special customer-specific instructions); Perron v. Hood Indus., Inc., 2007 WL 2458472, at *5 (quoting lengthy selection from AMERICAN JURISPRUDENCE discussing the distinction between control of results and control of means and methods, and citing Ohio authority supporting this distinction).

126

FedEx hasn't retained the right to control the means and methods of the plaintiff drivers' work on a class-wide basis. Kansas Decision, at 73. The court incorporates here the Kansas Decision, which considered all factors relevant in Ohio and the totality of the circumstances, and concludes that the <u>Kelly</u> drivers are independent contractors under Ohio law.

The court instructs the parties to file a joint proposed pretrial order with this court within twenty-eight days of entry of this order. In addition to summarizing the history of this case, including significant orders and their docket numbers (including, but not limited to, evidentiary, class certification, and dispositive orders), the parties should provide a detailed description of the FMLA-related claims that remain outstanding, without arguing the merits of those claims, and should outline for the court and the transferor court how they anticipate resolving those claims.

### (2) 3:06-cv-801, <u>Wallace</u>

Walter Wallace alleges breach of contract, labor law violations, unjust enrichment, conversion, FMLA and ERISA violations, race discrimination, and fraud. He seeks an accounting. Mr. Wallace is a member of the <u>Kelly</u> class, so today's decision that the <u>Kelly</u> class members are independent contractors binds him. Because today's decision leaves some of his claims unresolved, the court will suggest remand of Mr. Wallace's case to its transferor court.

The court instructs the parties to file a joint proposed pretrial order with this court within twenty-eight days of entry of this order. In addition to summarizing the history of this case, including significant orders and their docket numbers (including, but not limited to, evidentiary, class certification, and dispositive orders), the parties should provide a detailed description of the claims that remain outstanding,[20] without arguing the merits of those claims, and should outline for the court and the transferor court how they anticipate resolving those claims.

### R. Oregon (3:05-cv-596, *Slayman*; 3:07-cv-328, *Leighter*)

In Slayman, 3:05-cv-596, the Oregon drivers allege illegal wage deductions in violation of Oregon Revised Statutes § 652.610 *et seq.* and fraud; they seek rescission and declaratory relief. In Leighter, 3:07-cv-328, the drivers allege illegal wage deductions under Oregon Revised Statutes § 652.610 *et seq.* and violations of Oregon's Wage and Hour Laws; they seek rescission, declaratory and injunctive relief, and penalty wages. Though the Slayman plaintiffs didn't seek to certify their fraud claim, they haven't indicated that their fraud claim turns on anything other than a determination of their employment status under Oregon common law. *See* Memo. in Support of Mot. to Certify Class (Oregon), Mar. 12, 2007, at 1 [Doc. No.

---

[20] For example, the parties should break down Mr. Wallace's breach of contract claim and ferret out those claims that were premised on him being misclassified as an independent contractor (because he is an independent contractor) from those claims that are premised on him actually being an independent contractor (such as the claim that FedEx breached its contract with him by assigning too many packages to him to deliver in a single day).

557]. The court denied the <u>Leighter</u> class' motion to certify its rescission claim and decertified the <u>Slayman</u> class's rescission claim because the rescission claims require consideration of individualized evidence of actual control and the plaintiffs' engagement in independently established businesses. *See* Op. and Ord., July 27, 2009, at 56-67 [Doc. No. 1770]. In both cases, only the drivers moved for summary judgment. For the reasons stated below, the court denies the drivers' motion for summary judgment and grants judgment independent of the motion to FedEx on all but the rescission claims. The court will suggest remand of these cases for further disposition on the rescission claims because the evidence considered here won't resolve those claims, which involve the important question of whether the Operating Agreement in question violates Oregon public policy.

FedEx didn't move for summary judgment as to the Oregon class. In its supplemental brief, FedEx asks the court to enter judgment *sua sponte* (now called judgment independent of the motion) in its favor. As set forth in the general introduction to today's decisions, the court takes this request seriously because summary judgment is appropriate under Oregon law, the drivers' employment status can be examined today without prejudice to the plaintiffs, and answering now the question of the plaintiff drivers' employment status under Oregon law will conserve judicial resources.

FedEx argued in response to the Oregon drivers' motions that summary judgment in these cases would be inappropriate under Oregon law. To the contrary, Oregon courts have stated that when the facts are undisputed,

"[w]hether an individual is an employee or an independent contractor is a legal conclusion." Schaff v. Ray's Land & Sea Food, Inc., 45 P.3d 936, 939 (Or. 2002).

The common law test for employment status in Oregon examines whether the alleged employer "had the right to control the manner in which [the worker] performed services." Schaff v. Ray's Land & Sea Food, 45 P.3d at 939. The right to control, not the exercise of control, is determinative. S-W Floor Cover Shop v. National Council on Comp. Ins., 872 P.2d 1, 5 (Or. 1994); HDG Enters. v. National Council on Comp. Ins., 856 P.2d 1037, 1040 (Or. Ct. App. 1993). Although the extent of an employer's control over a worker isn't always easy to measure, "control over performance remains the principal test." Schaff v. Ray's Land & Sea Food, 45 P.3d at 939 (quoting Jenkins v. AAA Heating & Cooling, Inc., 421 P.2d 971, 973 (Or. 1966)). Oregon courts distinguish between control over results and control over "the physical conduct in the performance of the services." Schaff v. Ray's Land & Sea Food, 45 P.3d at 942 (quoting RESTATEMENT (SECOND) OF AGENCY, § 220(1) (1958)); see also Cy Inv., Inc. v. National Council on Comp. Ins., 876 P.2d 805, 807 (Or. Ct. App. 1994) (citing Great Am. Ins. v. General Ins., 475 P.2d 415, 417 (Or. 1970)).

In the worker's compensation context, the Oregon Court of Appeals has looked to a traditional four-factor test to further tease out standards for the right to control test: (1) direct evidence of the right to, or exercise of, control; (2) the furnishing of tools and equipment; (3) the method of payment; and (4) the right to

130

fire. *E.g.*, Stamp v. Department of Consumer and Bus. Servs., 9 P.3d 729, 731 (Or. Ct. App. 2000); HDG Enters. v. National Council on Comp. Ins., 856 P.2d at 1039.

The drivers focus their supplemental brief on the right to control factor and say that a single factor in favor of employment status can be enough proof to establish an employer-employee relationship. They do well to focus on the right to control factor because the Oregon Supreme Court has only spoken of the right to control as being determinative in the vicarious liability context. The drivers rely on factual analogies to two worker's compensation cases[21] to argue that Oregon's right to control test differs materially from Kansas' right to control test. They say specifications about the nature and quality of the work to be completed doesn't show control of results, but rather shows control of means and methods.

The court reads Oregon law differently. In Reforestation General Contractors, Inc. v. National Council on Comp. Ins., 872 P.2d 423 (Or. Ct. App. 1994), a worker's compensation case, a logging consultant specified the contract completion time for the loggers he hired, marked land boundaries or the timber to be cut, and supervised the contracts. The Reforestation court disagreed with the hearing officer's legal conclusion that this supervision and general determination of work assignments amounted to a right to control the loggers'

---

[21] *See* Stamp v. Department of Consumer and Bus. Servs., 9 P.3d at 733 (approving of hearing officer's reliance on evidence regarding assignment of work, performance and quality control of that work, and the party held responsible for the work); HDG Enters. v. National Council on Comp. Ins., 856 P.2d at 1040 (agreeing with findings of fact that employer was specific about nature and quality of finished product desired, employer regulated quality of work but didn't supervise the work, and customer turned to employer if there was a problem with the work).

methods and means of achieving contracted-for results. The <u>Reforestation</u> court

stated, "Any independent contractor is subject to the control of the hiring party

by virtue of the fact that the contractor is directed to accomplish a desired result."

<u>Id.</u> Thus, an owner may retain as much control as necessary

> to ensure that he gets the end result from the contractor that he
> bargained for. Accordingly, a hiring party's control over the quality or
> the description of the work, as opposed to the person performing it,
> will not automatically convert an independent contractor relationship
> into one of employment. Here, the petitioner's specification of a
> completion date and marking of the physical boundaries for each job
> are part of the end result for which petitioner contracted and are not
> necessarily indicative of employee status. Similarly, petitioner's right
> to supervise the agreements goes to the right to ensure that the
> ultimate goal of the contract is accomplished.

<u>Id.</u> at 432 (internal citations omitted); *see also* <u>Oregon Drywall Sys., Inc. v.</u>

<u>National Council on Comp. Ins.</u>, 958 P.2d 195, 198 (Or. Ct. App. 1998) ("The

monitoring of progress toward job completion does not amount to the exercise of

direction and control over the means and method of doing the work."); <u>Bob Wilkes</u>

<u>Falling, Inc. v. National Council on Comp. Ins.</u>, 878 P.2d 1136, 1139 (Or. Ct. App.

1994) ("The direct evidence establishes that Wilkes controlled the result but not

the method of performance. Wilkes pointed out the boundaries of the timber to be

cut, set a completion date, specified log lengths and required that NWT and LPL

perform the job in a 'good and workmanlike manner.' These specifications deal

with the desired result of the contract, not the manner and means of its

performance.").

Nothing in Oregon law indicates that Oregon differentiates control of results vs. control of means and methods differently from Kansas or other states. Each case must be examined on its own facts, so factual analogies can enlighten but don't automatically control, especially when, as here, the context and facts are quite unique and truly applicable factual analogies are elusive.

This court has ruled that "the only reasonable inference that can be drawn is that FedEx hasn't retained the right to control the details of the contractors' work methods on a class-wide basis." Kansas Decision, at 73. The Kansas Decision, which the court incorporates here, addressed the other Oregon factors. The Oregon plaintiff drivers are independent contractors under Oregon law.

The court instructs the parties to file joint proposed pretrial orders (one each for Slayman and Leighter) with this court within twenty-eight days of entry of this order. In addition to summarizing the history of this case, including significant orders and their docket numbers (including, but not limited to, evidentiary, class certification, and dispositive orders), the parties should provide a detailed description of rescission claims that remain outstanding, without arguing the merits of those claims, and should outline for the court and the transferor court how they anticipate resolving those claims.

*S. Pennsylvania*

*(1) 3:05-cv-597, Willis; 3:05-cv-598, Hart*

The Pennsylvania drivers in 3:05-cv-597 (Willis) allege violations of Pennsylvania's Wage Payment and Collection Law, 43 PA. CONS. STAT. § 260.1 *et seq.*; violations of Pennsylvania's Minimum Wage Act, 43 PA. CONS. STAT. § 333.101 *et seq.*; violations of Pennsylvania's Workman's Compensation Act, 77 PA. CONS. STAT. § 501(a)(d); and fraud. They seek rescission and injunctive and declaratory relief. Though the Pennsylvania drivers didn't move to certify the Minimum Wage Act, Workman's Compensation Act, and fraud claims, they don't indicate that their claims turn on anything other than a determination of their employment status under Pennsylvania law. *See* Memo. in Support of Mot. to Certify Class (Pennsylvania), Apr. 2, 2007, at 1 [ Doc. No. 579]. Only the drivers filed a motion for summary judgment. For the reasons stated below, the court denies the drivers motion for summary judgment and grants judgment independent of the motion to FedEx.

Jeffrey Hart, 3:05-cv-598, brought a class action complaint alleging violations of Pennsylvania's Minimum Wage Act, 43 PA. CONS. STAT. § 333.104(a); violations of Pennsylvania's Wage Payment and Collection Law, 43 PA. CONS. STAT. § 260.3; and unjust enrichment. Mr. Hart is a member of the Pennsylvania class certified in the Willis case. His case has languished for years without activity. His claims aren't unique or distinct from the Willis case, and because he is a member of the Pennsylvania class, today's decision resolves his employment status.

134

Because these Pennsylvania claims stand or fall on the common question of whether FedEx Ground misclassified its drivers as independent contractors, judgment will be entered for FedEx in these Pennsylvania cases (3:05-cv-597, Willis; 3:05-cv-598, Hart).

As noted, FedEx didn't file a summary judgment motion against the Willis drivers. In its supplemental brief, FedEx asks the court to enter judgment *sua sponte* (now called judgment independent of the motion) in its favor. As set forth in the general introduction to today's decisions, the court takes this request seriously because summary judgment is appropriate under Pennsylvania law, the drivers' employment status can be examined today without prejudice to the plaintiffs, and answering now the question of the plaintiff drivers' employment status under Pennsylvania law will conserve judicial resources.

FedEx argued in its summary judgment response brief that a trial on the employment status question is required in Pennsylvania. The court can't agree. Summary judgment is appropriate in Pennsylvania because when the facts are undisputed, employment status is a question of law. *E.g.*, Lutz v. Cybularz, 607 A.2d 1089, 1091 (Pa. Super. Ct. 1992); Johnson v. Workmen's Comp. Appeal Bd., 631 A.2d 693, 696 (Pa. Super. Ct. 1993).

For all relevant purposes here, Pennsylvania courts use a common law analysis to distinguish between independent contractors and employees. Multiple factors are considered and these factors are not controlling, but rather provide general guidance to courts: (1) the control of the manner in which work is to be

done; (2) responsibility for result only; (3) terms of agreement between the parties; (4) the nature of the work or occupation; (5) the skill required for performance; (6) whether one employed is engaged in a distinct occupation or business; (7) which party supplies the tools; (8) whether payment is by the time or by the job; (9) whether the work is part of the employer's regular business; and (10) the right to terminate the employment at any time. The most important consideration is the right to control the manner in which the work is to be accomplished. The right to control, and not the actual exercise of control, is determinative. Hammermill Paper Co. v. Rust Eng'g Co., 243 A.2d 389, 392 (Pa. 1968); Morin v. Brassington, 871 A.2d 844, 850 (Pa. Super. Ct. 2005) (Wage Payment and Collections Law); Johnson v. Workmen's Comp. Appeal Bd., 631 A.2d at 696 (worker's compensation). In the vicarious liability context, Pennsylvania courts tend to look solely to the right to control and the totality of facts showing a right to control. Green v. Independent Oil Co., 201 A.2d 207, 210 (Pa. 1964); Lutz v. Cybularz, 607 A.2d at 1091; Myszkowski v. Penn Stroud Hotel, Inc., 634 A.2d 622, 625-626 (Pa. Super. Ct. 1993).

The drivers say Juarbe v. City of Philadelphia, 431 A.2d 1073 (Pa. Super. Ct. 1981), compels either a trial or a finding of employee status. They argue that, for purposes of their case, Juarbe shows that Pennsylvania law materially differs from Kansas law because, they say, in Pennsylvania the power to terminate for breach of contract and the exercise of supervision and provision of suggestions necessarily indicate employee status. They also say that Juarbe shows that, in

136

Pennsylvania, requiring customer service and performance standards, and inspecting work to ensure compliance with a contract, evidences employee status and not a results-oriented approach.

In Juarbe, the lessee of a gas station from lessor Exxon agreed to keep the station open for certain minimum hours, keep the station clean and sanitary, keep the premises unobstructed, place no signs on the premises without Exxon's permission, purchase motor fuels exclusively from Exxon in certain amounts and at prices set by Exxon, and render satisfactory customer service through employees he hired. Juarbe v. Philadelphia, 431 A.2d at 1076-1078. The Juarbe court held that a substantial fact issue existed as to whether the lessee was in a master-servant relationship with Exxon. Similar to Juarbe, the station operator in Green v. Independent Oil Co., 201 A.2d 207, 209-210 (Pa. 1964), had to purchase all motor oils and fuels from the petroleum company, could have his contract terminated for breach, and received visits from representatives of the petroleum company.  Different from Juarbe, the service station operator in Green was held to be an independent contractor as a matter of law.

The distinction made by Pennsylvania courts between Juarbe and Green illustrates the context that has helped shape this court's decisions in these MDL cases. The Juarbe court said Green would have been controlling (meaning the Juarbe court would have held the lessee to be an independent contractor as a matter of law) but for a key difference: extensive evidence was present before the Juarbe court that Exxon "frequently threatened not to renew the leases and sales

agreements of its operators if they failed to adhere not only to the requirements of those documents, but also to Exxon's 'suggested' business conduct." <u>Juarbe v. City of Philadelphia</u>, 431 A.2d at 1079. As this court has noted elsewhere in today's decisions, there is nothing exceptional about an employer ensuring that a contractor produce contracted-for results. The evidence presented to the <u>Juarbe</u> court, though, went above and beyond the ordinary right to terminate for breach of contract and to supervise contracted-for results: the testimonial evidence created an inference of constant strong-arming, leaving open a fact issue for a jury to decide as to whether Exxon controlled the day-to-day details of the lessee's conduct. <u>Juarbe v. City of Philadelphia</u>, 431 A.2d at 1079. But for that additional evidence, the <u>Juarbe</u> court said, "we would probably feel that the <u>Green</u> decision was controlling." <u>Id.</u> <u>Juarbe</u> is unique for the evidence before that court and not for demonstrating a material difference between Pennsylvania and Kansas law. The procedural posture of these MDL cases, with the scope of evidence limited to evidence common across the nation, renders these cases more similar to <u>Green</u> than to <u>Juarbe</u>.[22]

_____

[22] As noted in the general introduction to today's decisions, the procedural posture of these MDL cases isn't the only factor driving today's decisions. This court has found the lack of right to control methods and means of achieving contracted-for results, lack of right to terminate at will, and plaintiffs' responsibility for acquiring equipment to indicate independent contractor status. But most compellingly, the plaintiffs' entrepreneurial opportunities indicate independent contractor status. The court can't say whether a different procedural posture allowing extrinsic evidence to be presented would change this outcome and directs the plaintiffs to the trial court's decision in <u>Estrada</u> for another court's take on their claims, showing that even with additional extrinsic evidence a court may likely still find them (at least the MWA drivers and classes including MWA drivers) to be independent contractors. *See generally*, <u>Estrada v. FedEx Ground</u>, No. BC 210130 (Cal. Super. Ct. July 26, 2004) [Exh. B to Pltfs' Req. for Judicial Notice, Apr. 24, 2008].

Highlighting that <u>Juarbe</u> was decided on the basis of its particular facts and circumstances, and not on the basis of a material difference in law, post-<u>Juarbe</u> decisions demonstrate the similarities between Pennsylvania and Kansas law material to today's decision. For example, in <u>Myszkowski v. Penn Stroud Hotel, Inc.</u>, 634 A.2d at 627, Penn Stroud contracted with Best Western to use the Best Western brand in marketing its hotel. Best Western imposed a program of quality control, with corresponding rules and regulations, and conducted workshops to achieve quality service. The <u>Myszkowski</u> court concluded that those controls didn't create a master-servant relationship. "[T]he fact that Best Western sets certain standards in order to maintain a uniform quality of inn service only addresses the *result* of the work and not the *manner* in which it is conducted." <u>Id.</u> at 627 (emphasis in the original). Best Western could further enforce contracted-for results through biannual inspections and termination of its contract with Penn Stroud for breach. "Such a sanction [termination for breach], however, does not indicate that there is a continuous subjection to the will of the alleged master so as to constitute a master-servant relationship. . . . Best Western cannot compel Penn Stroud to alter its conduct. It merely has the ability to either terminate its relationship with Penn Stroud or threaten to terminate it." <u>Id.</u> at 627.

The drivers' argument that the threat of contract termination indicates employee status is without merit. The facts before this court don't rise to the type of control present before the <u>Juarbe</u> court, which created an issue of material fact in that case. The Kansas Decision addressed all the factors relevant in

139

Pennsylvania, together with the totality of the circumstances (Pennsylvania factors aren't limited to those listed in the cases, as stated by the Pennsylvania courts), and the court incorporates that decision here. The Pennsylvania drivers are independent contractors under Pennsylvania law.

### (2) 3:09-cv-3, *Mitchell*

Plaintiff David Mitchell alleges breach of contract, lack of good faith and fair dealing, and violations of the federal Family Medical Leave Act. Mr. Mitchell isn't a member of the Pennsylvania plaintiffs' class, and today's decision in Willis isn't necessarily binding on him because of the different procedural posture of his case. The first two counts of his complaint appear premised on his status as an independent contractor. The FMLA claim requires him to be considered an employee for FMLA purposes and requires individualized and particularized evidence of his relationship with FedEx. *See* Op. and Ord., Mar. 25, 2008, at 61-66 [Doc. No. 1119]. Retaining this case in a centralized docket won't further any of the interests of 28 U.S.C. § 1407, so the court will suggest remand of Mr. Mitchell's case to its transferor court.

The court instructs the parties to file a joint proposed pretrial order with this court within twenty-eight days of entry of this order. In addition to summarizing the history of this case, including significant orders and their docket numbers (including, but not limited to, evidentiary, class certification, and dispositive orders), the parties should provide a detailed description of the claims

that remain outstanding, without arguing the merits of those claims, and should outline for the court and the transferor court how they anticipate resolving those claims.

### T. Rhode Island (3:05-cv-599, _Tierney_)

The Tierney drivers allege fraud; they seek rescission and declaratory relief. Though the drivers didn't move to certify the fraud claim, they don't indicate that their claims turn on anything other than a determination of their employment status under Rhode Island law. _See_ Memo. in Support of Mot. to Certify Class (Rhode Island), Apr. 23, 2007, at 1 [Doc. No. 596]. The parties filed cross-motions for summary judgment. For the reasons stated below, the court denies the drivers' motion for summary judgment and grants FedEx's motion for summary judgment. Because the Rhode Island claims stand or fall on the common question of whether FedEx Ground misclassified its drivers as independent contractors, judgment will be entered in FedEx's favor in the Rhode Island case.

Rhode Island looks to the traditional common law test of right to control to distinguish employees from independent contractors. The right to control, not the exercise of control, is determinative. Croce v. Whiting Milk Co., 228 A.2d 574, 576-577 (R.I. 1967); Pasetti v. Brusa, 98 A.2d 833, 834 (R.I. 1953); _see also_ Absi v. State Dep't of Admin., 785 A.2d 554, 556 (R.I. 2001). Some Rhode Island courts look to the factors found in the Restatement (Second) of Agency § 220. _See_ Estate of Perry v. Green Card, Inc., No. PC/03-4671, 2006 WL 3479056 (R.I. Super. Dec.

141

1, 2006) (unpublished). The Rhode Island Supreme Court hasn't gone beyond saying that the test is simply the right to control, but has said that "it is impossible to determine the relationship of employer and employee by any hard and fast rule" and "the answer to such question depends in each case upon its particular facts taken as a whole." DiOrio v. R.L. Platter, Inc., 211 A.2d 642, 644 (R.I. 1965).

In their supplemental brief, the drivers rely almost exclusively on the unpublished opinion in Estate of Perry v. Green Card, Inc. to argue that Rhode Island's interpretation of the ten Restatement factors differs materially from Kansas. Rhode Island Supreme Court Appellate Procedure Rule 16(j) states that unpublished orders "shall have no precedential effect." This court's duty is to decide this case as Rhode Island's Supreme Court would, and that court would give no precedential weight to the Perry case. Additionally, Estate of Perry contains material factual differences from the case to be decided today, including an employer's ability to terminate a worker at will. See Estate of Perry v. Green Card, Inc., 2006 WL 3479056, at *6. A unique factual context containing a strong indicator of employment status, such as the right to terminate at will, in an unpublished opinion doesn't indicate that Rhode Island courts interpret the Restatement factors any differently than other state courts do.

Rhode Island law doesn't materially differ from Kansas law for purposes of today's decisions. As fully explained in the Kansas Decision, "the only reasonable inference that can be drawn is that FedEx hasn't retained the right to control the

details of the contractors' work methods on a class-wide basis." Kansas Decision,
at 73. Based on only the consideration of the right to control, the plaintiff drivers
are independent contractors under Rhode Island law. To the extent Rhode Island
courts look to the Restatement factors and/or to the totality of the circumstances,
the court has addressed these tests and factors in its Kansas Decision, which the
court incorporates here. The Tierney drivers are independent contractors.

### U. South Carolina (3:05-cv-668, Cooke)

The Cooke drivers allege fraud and illegal wage deductions in violation
South Carolina Code § 41-10-40; they seek rescission and declaratory relief.
Though the South Carolina drivers didn't move to certify the fraud claim, they
don't indicate that their claims turn on anything other than a determination of
their employment status under South Carolina law. See Memo. in Support of Mot.
to Certify Class (South Carolina), Apr. 2, 2007, at 1 [Doc. No. 578]. Only the
drivers moved for summary judgment. For the reasons stated below, the court
denies the plaintiffs' motion for summary judgment and grants judgment
independent of the motion to FedEx. Because the South Carolina claims stand or
fall on the common question of whether FedEx Ground misclassified its drivers as
independent contractors, judgment will be entered for FedEx in the South
Carolina case.

As noted, FedEx didn't file a motion for summary judgment against the
South Carolina class. In its supplemental brief, FedEx asks the court to enter

judgment *sua sponte* (now called judgment independent of the motion) in its favor. As set forth in the general introduction to today's decisions, the court takes this request seriously because summary judgment is appropriate under South Carolina law, the drivers' employment status can be examined today without prejudice to the plaintiffs, and answering now the question of the plaintiff drivers' employment status under South Carolina will conserve judicial resources.

Citing Young v. Warr, 165 S.E.2d 797, 806 (S.C. 1969), FedEx argued in its summary judgment response that even where the evidence on employment status is undisputed, the issue must go to a jury unless only one inference is available from the undisputed evidence. Young didn't hold that summary judgment on employment status is always inappropriate in South Carolina; the Young court declared independent contractor status in the very paragraph in which it stated the general jury trial rule. *See* id. Summary judgment is appropriate if the facts lend themselves to a single inference, as in most other jurisdictions. *See, e.g.*, Wilkinson v. Palmetto State Transp. Co., 676 S.E.2d 700 (S.C. 2009) (finding independent contractor status and reversing lower court's finding of employee status).

The parties agree that the drivers' claims are to be decided by South Carolina's common law test for employee status. In South Carolina, analysis of whether a worker is an employee or independent contractor focuses on whether the alleged employer had the right to control the worker in the performance of the work. Wilkinson v. Palmetto State Transp. Co., 676 S.E.2d at 702 (*citing* South

Carolina Workers' Comp. Comm'n v. Ray Covington Realtors, Inc., 459 S.E.2d 302, 303 (S.C. 1995)). South Carolina courts look to four factors to analyze the right to control: (1) direct evidence of the right or exercise of control; (2) furnishing of equipment; (3) method of payment; and (4) right to fire. Wilkinson v. Palmetto State Transp. Co., 676 S.E.2d at 702 (citing South Carolina Workers' Comp. Comm'n v. Ray Covington Realtors, Inc., 459 S.E.2d at 303). The right to control analysis is "a fact-specific determination reached by applying certain general principles." South Carolina Workers' Comp. Comm'n v. Ray Covington Realtors, Inc., 459 S.E.2d at 303 (citing Young v. Warr, 165 S.E.2d at 802). The South Carolina Supreme Court recently held that the four factors should be evaluated with equal force, overruling an earlier holding that an employer-employee relationship is indicated if any one factor weighed in favor of employee status. Wilkinson v. Palmetto State Transp. Co., 676 S.E.2d at 702 (overruling single factor employment rule in Dawkins v. Jordan, 534 S.E.2d 700, 703 (S.C. 2000) ("For the most part, any single factor is not merely indicative of, but, in practice, virtually proof of, the employment relation.")). The right to control, not the actual exercise of control, is determinative. Dawkins v. Jordan, 534 S.E.2d at 703, overruled on other grounds by Wilkinson v. Palmetto State Transp. Co., 676 S.E.2d at 702; Young v. Warr, 165 S.E.2d at 802 ("The general test is that of control by the employer. It is not the actual control then exercised, but whether there exists the right and authority to control and direct the particular work or undertaking, as to the manner or means of its accomplishment.").

The drivers argue that although this court held FedEx's controls to be results-oriented in its Kansas Decision, South Carolina would find those controls to indicate employee status. They cite Crim v. Decorator's Supply, 352 S.E.2d 520 (S.C. Ct. App. 1987) for the proposition that customer-requested results equate to FedEx's control of the drivers' methods and means of performance. The Crim court did note that Lexington Floor Covering gave clients' addresses to the alleged independent contractor and "sent him to install whatever materials the client ordered." Id. at 521. But that's not why the Crim court declared employee status. Various controls were exercised over Crim, and Crim didn't treat himself as an independent contractor; a key fact was that termination of Crim's relationship with Lexington Floor Covering was solely within Lexington's control. Id.; see also South Carolina Indus. Comm'n v. Progressive Life Ins. Co., 131 S.E.2d 694, 695 (S.C. 1963) ("The power to discharge or fire at will rested in the Company. The power to fire is the power to control. The absolute power to terminate the relationship without liability is not consistent with the concept of independent contract, . . ." (quotation omitted)). The Crim court held Crim was an employee under the totality of the circumstances and not merely because he had to fulfill customer expectations communicated through Lexington Floor Covering.

The drivers also rely on Smoky Mountain Secrets, Inc. v. South Carolina Emp't Sec. Comm'n, 458 S.E.2d 429 (S.C. 1995), because it overturned an appellate court decision that declared independent contractor status. The Smoky Mountain Secrets decision is the very definition of summary: it provides no

146

reasoning and in three short paragraphs states that substantial evidence supported the Employment Security Commission's findings. This court can't accept the drivers' implied, though bold, argument that summarily overturning a lower court's decision indicates a rule that all the indications of independent contractor status found by the lower court actually indicated employee status, so this court should find these drivers to be employees because some of those facts overlap with the drivers' facts. Without greater indication as to why the Smoky Mountain Secrets court ruled as it did, that case can stand for little more than the proposition that the South Carolina Supreme Court sometimes reverses a lower court.

"[T]he only reasonable inference that can be drawn is that FedEx hasn't retained the right to control the details of the contractors' work methods on a class-wide basis." Kansas Decision, at 73. The plaintiff drivers are ultimately responsible for obtaining their own equipment, such as trucks; the drivers are paid according to a complex formula that takes into account the number of packages delivered; and FedEx doesn't have the right to terminate the plaintiff drivers at will. The court incorporates here the Kansas Decision and holds that the Cooke drivers are independent contractors under South Carolina common law.

### V. Tennessee (3:05-cv-600, Smith)

The Smith drivers allege violations of Tennessee's Consumer Protection Act of 1977, TENN. CODE ANN. § 47-18-101 *et seq.*, and fraud. They seek an

accounting, rescission, and declaratory and injunctive relief. The Tennessee drivers didn't move to certify the fraud claim, but they don't indicate that their claims turn on anything other than a determination of their employment status under Tennessee law. *See* Memo. in Support of Mot. to Certify Class (Tennessee), Apr. 23, 2007, at 1 [Doc. No. 599-2]. The parties filed cross-motions for summary judgment. For the reasons stated below, the court denies the drivers' summary judgment motion and grants FedEx's motion for summary judgment. Because the Tennessee claims stand or fall on the common question of whether FedEx Ground misclassified its drivers as independent contractors, judgment will be entered in FedEx's favor on all claims in the Smith case.

The Tennessee drivers rely heavily on worker's compensation cases, which this court reviews with a wary eye because a statutory employee under the Tennessee Workers' Compensation Act is a broader concept than a common law employee. Tennessee courts give the Worker's Compensation Act a liberal construction in favor of employee status, and this construction might have colored a particular court's view of the facts before it in ways not applicable to today's case. *See* Galloway v. Memphis Drum Serv., 822 S.W.2d 584, 586 (Tenn. 1991); Stratton v. United Inter-Mountain Tel. Co., 695 S.W.2d 947, 951-952 (Tenn. 1985); Wooten Transps., Inc. v. Hunter, 535 S.W.2d 858, 860 (Tenn. 1976).

Tennessee courts look to seven factors to resolve employment status: (1) the right to control the conduct of the work; (2) the right of termination; (3) the method of payment; (4) the freedom to select and hire helpers; (5) the furnishing

148

of tools and equipment; (6) self-scheduling of work hours; and (7) freedom to render services to other entities. *E.g.*, Bargery v. Obion Gran Co., 785 S.W.2d 118, 119-120 (Tenn. 1990). The right to control is the most significant factor, with the relevant inquiry being whether the right exists, not whether it is exercised. Id. at 120; Galloway v. Memphis Drum Serv., 822 S.W.2d at 586; Boruff v. CNA Ins. Co., 795 S.W.2d 125, 127 (Tenn. 1990); Stratton v. United Inter-Mountain Tel. Co., 695 S.W.2d at 950; Wooten Transps. v. Hunter, 535 S.W.2d at 860. The second most significant factor is the right to terminate. Galloway v. Memphis Drum Serv., 822 S.W.2d at 587; Boruff v. CNA Ins., 795 S.W.2d at 127; Wooten Transps. v. Hunter, 535 S.W.2d at 860.

The seven factors aren't absolutes and don't "preclude examination of each work relationship as a whole." Jackson Sawmill, Inc. v. West, 619 S.W.2d 105, 107-108 (Tenn. 1981).

> Utilization of these tests depends upon the salient facts of a particular relationship. No one test is infallible or entirely indicative of the legal characterization to be given to a particular relationship. The decisional value of any single test is commensurate with the degree of its applicability to the particular case.

Id. at 107-108; *see also* Boruff v. CNA Ins. Co., 795 S.W.2d at 127.

The drivers' chief argument is that "Tennessee courts find any retained oversight and supervision incompatible with an independent contractor status." The drivers essentially say any supervision is control indicating employee status,

but that isn't the law in Tennessee.[23] The Tennessee Supreme Court has repeated the common refrain that "a party to a contract can exercise direction and control over the results of the work without destroying the independence of the contract or creating an employer-employee relationship." Wright v. Knox Vinyl & Aluminum Co., Inc., 779 S.W.2d 371, 373 (Tenn. 1989) (*quoting* Masiers v. Arrow Transfer & Storage Co., 639 S.W.2d 654, 656 (Tenn. 1982)).

> The mere fact that the principal contractor reserves a right to supervise or inspect the work during its performance[] does not make the subcontractor an employee or mere servant, where there is no right of control of the method of performance, except to see that the end result conforms to the plans and specifications.

Jackson Sawmill, Inc. v. West, 619 S.W.2d at 108 (internal quotations and citations omitted). The Jackson Sawmill court held that instructions about which trees to cut and how long to cut each log were allowable supervision of contracted-for results and not control of loggers' means and methods of obtaining those results. *See* id. at 109. In Knox Vinyl, the hiring party frequently checked on a vinyl installer's progress and suggested changes to conform with house plans, and that court viewed such supervision as necessary to ensure the contracted-for end result. Wright v. Knox Vinyl & Aluminum Co., Inc., 779 S.W.2d at 373-374.[24] The

---

[23] The plaintiffs rely, in part, on Blake v. Auto-Owners Ins. Co., No. W2005-01545-WC-R3-CV, 2007 WL258314 (Tenn. Jan. 30, 2007). The Tennessee Supreme Court Rules indicate that unpublished cases carry no precedential value, except for certain circumstances not before this court. *See* Tenn. Supreme Court Rule 4. Even were the court to consider the case, it doesn't support the plaintiffs' argument and contains facts dissimilar from the plaintiffs' case.

[24] In cases where Tennessee courts viewed supervisory controls as constituting the right to control, a second key element— the right to terminate at will, which Tennessee courts view as strong evidence of a right to control—was also present. For example, in Stratton v. United Inter-Mountain Telephone Co., 695 S.W.2d 947 (Tenn. 1985), the Telephone Company could request its

right to supervise contracted-for results is treated no differently in Tennessee than in Kansas and so doesn't indicate employee status.

The drivers' second chief argument is that the right to terminate in Tennessee is viewed differently than in Kansas insofar as Tennessee courts may inspect whether termination-limiting contract provisions are a mere smokescreen for termination at will. They analogize Boruff v. CNA Ins. Co., 795 S.W.2d 125 (Tenn. 1990), with their own case because in Boruff an injured truck driver signed a written contract that, on its face, stated he could only be terminated for cause. See id. at 126. The analogy quickly breaks down because the driver in Boruff didn't own the truck he drove and the trucking company could take its truck from him without giving him another truck to drive. Effectively, the company could terminate the driver at will without any liability "merely by demanding the return of its tractor." Id. Even though the FedEx Operating Agreement contains no similar method of termination, the drivers argue that a jury should evaluate the "practical effects" of the provisions in the Agreement placing limitations on contract terminations. The drivers essentially ask the court to consider extrinsic

---

contractor to fire anyone who, "*in the sole opinion of the Telephone Company,*" wasn't doing a good enough job. Id. at 949 (emphasis added). No right to terminate at will existed in Jackson Sawmill. A right to terminate at will existed in other cases relied on by the plaintiffs. See, e.g., Galloway v. Memphis Drum Serv., 822 S.W.2d at 587 ("Second, nothing in the record suggests Memphis Drum's right to terminate Plaintiff at will was in any way restricted."); Hartford Underwriters Ins. Co. v. Penney, No. E2009-01330-COA-R3-CV, 2010 WL 2432058, at *5 n.6 (Tenn. Ct. App. June 17, 2010) (slip copy); Blake v. Auto-Owners Ins. Co., No. W2005-01545-WC-R3-CV, 2007 WL 258314, at *2-3 (Tenn. Jan. 30, 2007) (unpublished opinion); CNA v. King, No. M2004-02911-COA-R3-CV, 2006 WL 2792159, at *3 (Tenn. Ct. App., Sept. 28, 2006) (unpublished opinion). Also, these same cases involved worker's compensation claims, and the court can't be certain the cases would have come out similarly if the same working relationship was examined within a different context.

151

evidence of actual dealings between individual drivers and FedEx, particularly regarding the termination of drivers. But, as explained in today's general introduction, the procedural posture of these MDL cases doesn't allow for examination of extrinsic evidence. As explained in the Kansas Decision, FedEx has no right to terminate the plaintiff drivers at will without incurring liability. Kansas Decision, at 95-97. A right to terminate for breach of contract, such as unsatisfactory performance, isn't a right to terminate at will, nor does it, by itself, indicate employee status. *See* Wright v. Knox Vinyl & Aluminum Co., 779 S.W.2d at 374 (finding that Knox Vinyl's power to terminate Wright at any stage of his work because of unsatisfactory performance didn't establish employer-employee relationship).

For purposes of the employment status question here at issue, Tennessee law isn't materially different from Kansas law. The court addressed all the Tennessee factors in the Kansas Decision and incorporates that decision here. The Smith drivers are independent contractors under Tennessee law.

### W. Texas

#### (1) 3:05-cv-540, Humphreys

The Humphreys drivers allege violations of the Federal Motor Carrier Act and fraud; they seek rescission and declaratory relief. Only the rescission and declaratory relief claims were class certified. The named Texas plaintiffs, not as a class but as individuals, also allege violations of the Texas Deceptive Trade

Practices Act and promissory estoppel; they seek damages and punitive damages. The parties filed cross-motions for summary judgment on the question of the class' employment status under Texas law. For the reasons stated below, the court grants FedEx's summary judgment motion and denies the plaintiffs' motion. The court's finding that the <u>Humphreys</u> drivers are independent contractors disposes of their state law claims. The court will suggest remand of this case to the transferor court for disposition of the Federal Motor Carrier Act claims.

   To decide whether a worker is an employee or an independent contractor, Texas courts ask "whether the employer has the right to control the progress, details, and methods of operations of the work. [An] employer controls not merely the end sought to be accomplished, but also the means and details of its accomplishment." <u>Limestone Prods. Distribution, Inc. v. McNamara</u>, 71 S.W.3d 308, 312 (Tex. 2002) (citations omitted). Texas courts "measure" the right to control by considering (1) the independent nature of the worker's business; (2) the worker's obligation to furnish necessary tools, supplies, and materials to perform the job; (3) the worker's right to control the progress of the work, other than the final result; (4) the time for which the worker is employed; and (5) the method of payment, whether by unit of time or by the job. <u>Id.</u>; <u>Durbin v. Culberson Cnty.</u>, 132 S.W.3d 650, 658-659 (Tex. App. 2004). The most important factor is the right of control. <u>Durbin v. Culberson Cnty.</u>, 132 S.W.3d at 659; *see also* <u>Weidner v. Sanchez</u>, 14 S.W.3d 353, 373 (Tex. App. 2000) ("The right to control the details of

a person's work determines whether an employment or independent contractor relationship exists.").

A written contract "providing that a person shall be an independent contractor and providing for no right of control is controlling in determining the relationship between the parties." Durbin v. Culberson Cnty., 132 S.W.3d at 659; Weidner v. Sanchez, 14 S.W.3d at 373. A key exception to the rule is "if the evidence shows that the contract is a mere sham, subterfuge, or cloak designed to conceal the parties' true relationship." Durbin v. Culberson Cnty., 132 S.W.3d at 659. Texas courts take the written contract rule seriously, holding such contracts dispositive in the absence of extrinsic evidence undermining the contract's stated terms. See Durbin v. Culberson Cnty., 132 S.W.3d at 659 (finding decedent was independent contractor based on his written contract and the absence of extrinsic evidence showing the contract was a sham). "Otherwise, contract rights and relationships based thereon would be destroyed." Weidner v. Sanchez, 14 S.W.3d at 374. Occasional assertions of control and sporadic action directing the details of work don't destroy an independent contractor relationship upon which the parties agreed. Id. The assumption of the exercise of control must be persistent and the acquiescence pronounced to raise an inference that the parties impliedly agreed that the principal might have the right to control the details of the work. Id.

These Humphreys drivers freely signed onto a contractual relationship with FedEx; they agreed to be independent contractors and their contracts disclaim any

154

right to control by FedEx. *See* Kansas Decision, at 4-6. Due to the procedural posture of these MDL cases, the only evidence available to the court beyond the Operating Agreement is FedEx's generally applicable Policies and Procedures . As the court discussed in the Kansas Decision, nothing in the Operating Agreement or Policies and Procedures evidences that the intent to create an independent contractor relationship here is a mere subterfuge.

The result wouldn't change if the court were to look beyond the contract to the factors set forth under Texas law. The drivers rely on two cases to argue that Texas law would deem them employees. In Texas Emp'rs' Ins. Ass'n v. Brown, 309 S.W.2d 295 (Tex. App. 1958), a milk truck driver slipped and fell on his truck, injuring himself. The appellate court held that sufficient evidence supported the jury's finding of employee status where the driver received training and literature from the company, the truck he drove bore the company's name, the company supplied forms for the driver's use, the driver was paid every two weeks, and the driver wore a company uniform.  The Brown court didn't indicate what facts it thought most compelling, but instead summarily affirmed the jury decision. *See* id. at 301-302. The Texas drivers, though, don't discuss key facts in Brown that are dissimilar from the facts in their own case: the employer provided all trucks and supplies, the employer paid the driver's Social Security and withholding taxes, and the driver had to follow the exact route dictated by the employer. *See* Texas Emp'rs' Ins. Ass'n v. Brown, 309 S.W.2d at 298-300.

In <u>Weidner v. Sanchez</u>, 14 S.W.3d 353 (Tex. App. 2000), a cab driver was involved in an accident while driving a route for a county transportation authority. The court held that sufficient evidence supported the jury's finding of employee status when the authority told the driver who to pick up, where and when to pick up and drop off passengers, dictated the sequence of pickups, required the driver to complete routes within a certain time, required him to dress a certain way, and prohibited him from picking up any other fares while on his route. <u>Id.</u> at 374-375. The <u>Weidner</u> court's analysis is more detailed than that in <u>Brown</u> but, again, additional key facts distinguish the <u>Weidner</u> case from this one: the cab in question and its radio were owned by Liberty Cab, not the driver, and the driver "was restricted from conducting any of his own business because his time was totally and completely monopolized and controlled by Liberty's assigned tasks." <u>Weidner v. Sanchez</u>, 14 S.W.3d at 375.

As the court has stated elsewhere in today's decisions, forced case analogies are of limited assistance when the employment vs. independent contractor question is highly fact specific. Unlike the plaintiffs in <u>Brown</u> and <u>Weidner</u>, the FedEx drivers are responsible for obtaining their own equipment, are free to choose the specific route they take, can have complete freedom over their time to the extent they take advantage of entrepreneurial opportunities, and are responsible for paying their own Social Security and other taxes.

Applying the Texas factors shows that: (1) to the extent FedEx drivers take advantage of entrepreneurial opportunities, their businesses are distinct and

independent of FedEx, though this doesn't hold for single work area drivers; (2) FedEx drivers ultimately are responsible for obtaining their own equipment, notwithstanding FedEx's efforts to help drivers meet their obligation to do this; (3) FedEx's controls are results-oriented and FedEx doesn't have the right to control the methods and means or "progress" of the drivers' work; (4) drivers are employed for limited periods of time, though their contracts can be renewed an unlimited number of times; (5) drivers aren't paid by the hour or by the job, but rather by a complex formula taking into account the amount of work they perform, and drivers are issued 1099s and are responsible for paying their own taxes. These factors, with right to control being most important, weigh decisively in favor of a holding that the drivers are independent contractors. The court incorporates here the Kansas Decision and concludes that the <u>Humphreys</u> drivers are independent contractors under Texas law.

The court instructs the parties to file a joint proposed pretrial order with this court within thirty-five days of entry of this order. In addition to summarizing the history of this case, including significant orders and their docket numbers (including, but not limited to, evidentiary, class certification, and dispositive orders), the parties should provide a detailed description of the Federal Motor Carrier Act-related claims that remain outstanding, without arguing the merits of those claims, and should outline for the court and the transferor court how they anticipate resolving those claims.

*(2) 3:06-cv-802, <u>Price</u>*

James Larry Price is a member of the <u>Humphreys</u> class who separately claims breach of contract and violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* Neither party has moved for summary judgment. Today's <u>Humphreys</u> decision holds that Mr. Price, as a member of the Texas class, is an independent contractor under Texas law. That decision doesn't dispose of Mr. Price's breach of contract claim or his FLSA claim. The court will suggest remand of Mr. Price's case to the transferor court.

The court instructs the parties to file a joint proposed pretrial order with this court within thirty-five days of entry of this order. In addition to summarizing the history of this case, including significant orders and their docket numbers (including, but not limited to, evidentiary, class certification, and dispositive orders), the parties should provide a detailed description of the claims that remain outstanding, without arguing the merits of those claims, and should outline for the court and the transferor court how they anticipate resolving those claims.

*X. Utah (3:08-cv-53, <u>Fishler</u>)*

The <u>Fishler</u> drivers allege illegal deductions under Utah's wage payment statute and related regulations, UTAH CODE ANN. § 34-28-3; UTAH ADMIN. CODE r. 601-3-18(D), 3-18(G), and 3-21. They seek rescission and declaratory and injunctive relief. All claims are class certified, and the parties filed cross-motions for summary judgment. For the reasons stated below, the court grants FedEx's

158

summary judgment motion and denies the drivers' motion. Because the Utah claims stand or fall on the common question of whether FedEx misclassified its drivers as independent contractors, judgment will be entered for FedEx on all claims in Fishler.

Summary judgment on the issue of employment status is appropriate in Utah when there aren't any disputed material facts. *See e.g.*, Glover v. Boy Scouts of Am., 923 P.2d 1383 (Utah 1996) (affirming grant of summary judgment finding no employer-employee relationship); Foster v. Steed, 432 P.2d 60 (Utah 1967) (reversing denial of summary judgment and finding no employer-employee relationship).

The parties agree that Utah's common law test for employment status defines who is an "employee" for purposes of Utah's wage payment statute. Utah courts examine whether the alleged employer had the right to control the methods and means of the alleged employee's work. Utah Home Fire Ins. Co. v. Manning, 985 P.2d 243, 246 (Utah 1999); Glover v. Boy Scouts of Am., 923 P.2d at 1385; Foster v. Steed, 432 P.2d at 62. Four factors help determine whether a right to control exists: (1) whatever covenants or agreements exist concerning the right of direction and control over the employee, whether express or implied; (2) the right to hire and fire; (3) the method of payment; and (4) the furnishing of equipment. Utah Home Fire Ins. Co. v. Manning, 985 P.2d at 247; Glover v. Boy Scouts of Am., 923 P.2d at 1385-1386. The parties' intent and the employer's business sometimes are considered as well. Glover v. Boy Scouts of Am., 923 P.2d at 1386.

No single factor is dispositive. The right to control, not actual control, is determinative. Utah Home Fire Ins. Co. v. Manning, 985 P.2d at 246; Glover v. Boy Scouts of Am., 923 P.2d at 1386, 1388.

Utah applies the same four factor test to *respondeat superior* and worker's compensation cases, but has a "long-standing policy that the Workers' Compensation Act should be liberally construed to effectuate its purposes." Utah Home Fire Ins. Co. v. Manning, 985 P.2d at 249; *see also* Smith v. Alfred Brown Co., 493 P.2d 994, 995 (Utah 1972) ("The general rule, which has been approved by this court a number of times is that the [Workers' Compensation Act] should be liberally construed to effectuate its purpose of providing protection to employees."). The court has considered the worker's compensation cases cited by the drivers with the caution that those cases' liberal construction might have resulted in finding employee status when the common law otherwise would find independent contractor status, even though the same four factor test is used. *See* Pinter Constr. Co. v. Frisby, 678 P.2d 305, 308 (Utah 1984) (discussing with approval the law in various jurisdictions allowing for the same person to be a "statutory" employee for worker's compensation purposes but an independent contractor under the common law).

The drivers argue that FedEx's "every package, every day" rule is treated as control of means and methods under Utah law, even though this "control" is a contracted-for result under Kansas law. The drivers cite Harry L. Young & Sons, Inc. v. Ashton, 538 P.2d 316 (Utah 1975), for the proposition that because the

160

right to control can be express or implied, the use of disciplinary-like procedures to correct and censure the plaintiff drivers implies a right to control and indicates employee status. In <u>Harry L. Young & Sons v. Ashton</u>, a truck driver was subject to penalties for violating his company's requirement that drivers drive five miles per hour below the lawful posted speed limit. *See* <u>id.</u> at 318-319. The drivers leap from this specific and detailed control of a driver's manner of driving to argue that FedEx's "every package, every day" rule implies a right to control because the drivers can be terminated if they miss three pickups in a year.

Utah, like many other jurisdictions, maintains the distinction between means and results. For example, the <u>Harry L. Young & Sons</u> court quoted Utah's Workers' Compensation Act, which defines the distinction as controlling means and results versus controlling only results. *See* <u>Harry L. Young & Sons v. Ashton</u>, 538 P.2d at 318; *see also* <u>Foster v. Steed</u>, 432 P.2d 60, 62 (Utah 1976) ("[I]f the control extends only to the result to be achieved, the actor is regarded as an independent contractor, and the defendant is liable under neither *respondeat superior* nor the workmen's compensation statutes."). The "every package every day" rule is a contracted-for result, not control of means and methods.

Similarly, the drivers argue that dictating "when, where, and how" the drivers do their work suggests that determination of the "when"—i.e., the timeframe in which packages must be delivered—should indicate employee status. *See* <u>Averett v. Grange</u>, 909 P.2d 246, 250 (Utah 1995) ("[B]oth Grange and his truck were subject to the direction of Geneva Rock as to what, when, how, and

161

where the work was to be performed."). The court doesn't read the <u>Averett</u> court's use of the word "when" to mean that any direction at all as to when results are to be achieved turns a contracted-for result into control of the means and methods of a contractor's work. The <u>Averett</u> court didn't rely on the use of the word "when," but rather applied Utah's four factor test to find that Geneva Rock had, by express contractual provision, the "sole exclusive right to supervise and direct the drivers or operators" of equipment. <u>Id.</u> at 250 (quoting the Grange truck lease). Further, the drivers in <u>Averett</u> were controlled in exactly the same way as similarly situated employee drivers, including being paid every two weeks by the hour and not by the job. *See* <u>id.</u> Finally, the <u>Averett</u> court gave liberal construction to the facts because it was a worker's compensation case. *See* <u>id.</u> at 250-251. The use of "when" in <u>Averett</u> was factually illustrative, not a rule of law, and didn't eliminate the distinction between results and means.

Finally, the drivers argue that their right to hire assistants doesn't matter because, they say, Utah law holds that employee status is indicated unless the right to hire assistants is completely unfettered. The drivers rely on <u>Rustler Lodge v. Industrial Commission</u>, 562 P.2d 227 (Utah 1977), which states that "[a]n independent contractor can employ others to do the work and accomplish the contemplated result without the consent of the contractee, while an employee cannot substitute another in his place without the consent of the employer." <u>Id.</u> at 228 (*quoting* <u>Ludlow v. Industrial Comm'n</u>, 235 P. 884, 888 (Utah 1925)). In affirming a finding of employment status, the <u>Rustler Lodge</u> court pointed out that

162

no facts supported the idea that the injured claimant had any right to hire assistants. Id. at 229.The Rustler Lodge court didn't examine what "consent" meant because the right to hire assistants wasn't a key issue there. In affirming a finding of independent contractor status, the Ludlow court examined the right to hire assistants because that right went to the very "crux" of the case. Ludlow v. Indus. Comm'n, 235 P. at 888. The key fact before the Ludlow court was that if drivers hired by the contractor were incompetent or didn't do their work satisfactorily, the school board or superintendent could only complain to the contractor, but the contractor alone had the right to terminate drivers he hired. See id. at 886. Finally, the Manning court, in affirming a finding of employee status for a subcontractor, addressed the "consent" language in a situation where a general contractor controlled which workmen its subcontractor employed by retaining the right to fire any of its subcontractor's employees for any reason. See Utah Home Fire Ins. Co. v. Manning, 985 P.2d at 247.

The court can't agree that the word "consent" is synonymous with "minimum requirements" such that FedEx's minimum requirements for drivers' hired assistants and employees are equivalent to the drivers having to get FedEx's "consent" to hire assistants. There is a distinction between the type of "consent" exercised in Manning (contractee could fire contractor's employees) and the type exercised in Ludlow (contractee could complain to contractor). The evidence before the court doesn't indicate that FedEx takes away the drivers' ability to choose and hire qualified assistants or that FedEx can fire these assistants.

163

Applying the four Utah factors, as in the Kansas Decision, the agreement between FedEx and the drivers is full of express understandings that FedEx can't control the drivers' means and methods of achieving their contracted-for results, the drivers aren't terminable at will, the drivers are paid according to a complex formula that involves the number of packages they deliver, and the drivers ultimately are responsible for obtaining their own equipment. Most importantly, no reasonable inference is available that FedEx has retained the right to control the plaintiff drivers' means and methods of work on a class-wide basis. *See* Kansas Decision, at 73. The court incorporates here the Kansas Decision and concludes that the Fishler drivers are independent contractors under Utah law.

### Y. *Vargas* (3:07-cv-325)

Genaro Vargas and his co-plaintiffs allege violations of the federal Motor Carrier Act Exemption for failure to pay overtime, and violations of states' overtime laws for drivers of trucks weighing less than 10,001 pounds. Mr. Vargas's complaint was a class action complaint, but the court denied his motion for class certification because his proposed class included people from many different states (including states for which this court denied class certification in related MDL cases), whose laws on employment status were sufficiently different to make class certification inappropriate. FedEx moved for summary judgment against Mr. Vargas's Wisconsin co-plaintiff, Tim Ketterhagen. The parties recently stipulated to Mr. Ketterhagen's dismissal from the Vargas case, *see* Ord., Nov. 2, 2010 [Doc.

No. 2227], so FedEx's summary judgment motion is denied as moot. Because Mr. Vargas now presents an individual claim unlike any others in this docket, no reason of efficiency or economy warrants its retention in a centralized docket, and the court will suggest remand of Mr. Vargas's case to the transferor court.

The court instructs the parties to file a joint proposed pretrial order with this court within thirty-five days of entry of this order. In addition to summarizing the history of this case, including significant orders and their docket numbers (including, but not limited to, evidentiary, class certification, and dispositive orders), the parties should provide a detailed description of the claims that remain outstanding, without arguing the merits of those claims, and should outline for the court and the transferor court how they anticipate resolving those claims.

## Z. West Virginia (3:06-cv-337, Ashbury)

The Ashbury drivers allege violations of West Virginia's Consumer Credit and Protection Act, W. VA. CODE § 46A-6-101 *et seq.*, illegal deductions from wages in violation of West Virginia Code § 21-5-1 *et seq.*, fraud, and unjust enrichment. They seek an accounting, rescission, and declaratory and injunctive relief. Though the West Virginia drivers didn't move to certify the fraud claim, they don't indicate that their claims turn on anything other than a determination of their employment status under West Virginia common law. *See* Memo. in Support of Mot. to Certify Class (West Virginia), Apr. 23, 2007, at 1 [Doc. No. 595]. Only the drivers filed a summary judgment motion. For the reasons stated below, the court denies the

165

plaintiffs' motion and grants judgment independent of the motion to FedEx. Because the West Virginia claims stand or fall on the common question of whether FedEx Ground misclassified its drivers as independent contractors, the court will enter judgment for FedEx on all claims in the West Virginia case.

As noted, FedEx didn't file a motion for summary judgment against the West Virginia class. In its supplemental brief, FedEx asks the court to enter judgment *sua sponte* (now called judgment independent of the motion) in its favor. As set forth in the general introduction to today's decisions, the court takes this request seriously because summary judgment is appropriate under West Virginia law, the drivers' employment status can be examined today without prejudice to the plaintiffs, and answering now the question of the plaintiff drivers' employment status under West Virginia law will conserve judicial resources.

FedEx originally argued that summary judgment on the issue of employment status is inappropriate in West Virginia, even when the facts are undisputed, unless the facts justify only one reasonable inference. Although this standard is no different from other states, FedEx argued that West Virginia absolutely would require a jury trial on the employment status question. The drivers countered that West Virginia law is not "somehow uniquely hostile to summary adjudication of employment status." Unsurprisingly, after the Kansas Decision the parties' tunes have changed in their supplemental briefs. Summary judgment is appropriate in West Virginia (as in other states) when the undisputed facts lend themselves to one reasonable inference. *See, e.g.*, <u>Burless v. West</u>

166

Virginia Univ. Hosps., 601 S.E.2d 85 (W. Va. 2004) (affirming finding of no actual agency relationship); Robertson v. Morris, 546 S.E.2d 770 (W. Va. 2001) (affirming finding of independent contractor status); Shaffer v. Acme Limestone Co., 524 S.E.2d 688 (W. Va. 1999) (affirming finding of independent contractor status).

The parties agree that employment status in West Virginia is decided by the right to control, which is evaluated using four factors: (1) selection and engagement of the servant; (2) payment of compensation; (3) power of dismissal; and (4) power of control. The first three factors aren't essential; the fourth, power of control, is determinative. Each case must be resolved on its own facts, and ordinarily no one feature of the relationship is controlling. To say that the power of control is determinative is to say that it is the "major" factor. The determining factor is the right to control, not the actual exercise of control. Burless v. West Virginia Univ. Hosps., 601 S.E.2d at 91; Mountain Lodge Ass'n v. Crum & Forster Indem. Co., 558 S.E.2d 336, 342 (W. Va. 2001); Robertson v. Morris, 546 S.E.2d at 773; Shaffer v. Acme Limestone Co., 524 S.E.2d at 695; Sipple v. Starr, 520 S.E.2d 884, 888, 890 (W. Va. 1999) (finding issue of material fact because contractee retained significant control beyond express terms of agreement, as shown by ordering store employee fired because she had bad teeth).

FedEx relied on worker's compensation cases in its opposition to class certification. Now, at the summary judgment stage, the drivers rely on these same cases. West Virginia courts construe the law liberally in worker's compensation cases, favoring the finding of employee status. C&H Taxi Co. v. Richardson, 461

S.E.2d 442, 448 (W. Va. 1995); <u>Myers v. Workmen's Comp. Comm'n</u>, 148 S.E.2d 664, 668 (W. Va. 1966). "It is ordinarily considered when one person is retained to render a service for another that the relationship of employer and employee exists. To overcome this presumption it is incumbent upon the one who hired the workman to show that the latter is an independent contractor." <u>Myers v. Workmen's Comp. Comm'n</u>, 148 S.E.2d at 666. The right to supervise indicates employee status in the worker's compensation context. <u>Id.</u> at 667.

The liberal construction of worker's compensation cases doesn't apply to the case to be decided today. West Virginia courts often cite the <u>Myers</u> case for the four factor right to control test already discussed, but West Virginia courts don't apply the worker's compensation interpretive gloss when using that test in the *respondeat superior* context. This court has reviewed the worker's compensation cases cited by the drivers with the caution that the cases might have been decided differently in a different context. A general right to supervise the results of contracted-for work doesn't indicate employee status in the *respondeat superior* context or in the situation of this case, where the drivers generally seek to be reclassified as employees.

West Virginia courts have, in the past, used the following formulation: "If the right to control or supervise the work in question is retained by the person for whom the work is being done, the person doing the work is an employee and not an independent contractor." <u>Spencer v. Travelers Ins. Co.</u>, 133 S.E.2d 735, 739 (W. Va. 1963). The drivers rely on this formulation to argue that the use of the

disjunctive "or" means that supervision indicates employee status in West Virginia. The court can't agree.

West Virginia courts have used their four factor test for decades. *See, e.g.*, Myers v. Workmen's Comp. Comm'n, 148 S.E.2d 664 (W. Va. 1966). But West Virginia courts don't use or rely on the disjunctive "or" language today. For example, the contemporary West Virginia Supreme Court has referred to the case of Paxton v. Crabtree, 400 S.E.2d 245 (W. Va. 1990), as the "seminal" case on the issue of employment status. Shaffer v. Acme Limestone Co., Inc., 524 S.E.2d at 695. Paxton didn't use the disjunctive "or," and Shaffer found Paxton "seminal" even though the independent contractor issue was hardly central to the Paxton case.

The Shaffer court put the nail in the coffin of any argument that Spencer's use of "or" broadened the scope of who is an employee under West Virginia's common law test. The Shaffer court held that Spade Trucking was an independent contractor of Acme Limestone even though, according to the plaintiff:

> (1) Spade Trucking employees arrived routinely at 7:00 in the morning at Acme's facility; (2) Acme directed Spade Trucking employees as to which products to pick-up and deliver; (3) Acme advised Spade Trucking employees when they should load their trucks at the legal weight limit; (4) Acme provided Spade Trucking employees with safety information; (5) Acme required spade Trucking drivers, when first hired, to undergo safety hazard training; (6) trucks owned by Spade Trucking were loaded by Acme employees; (7) compensation levels for work by Spade Trucking [were] established by Acme; (8) Spade Trucking employees were required to provide Acme customers with a copy of invoices and to return invoice copies to Acme; (9) Acme suggested the routes Spade Trucking employees

should take; and (10) when Acme closed its facility each day, the
Spade Trucking employees went home.

Shaffer v. Acme Limestone Co., Inc., 524 S.E.2d at 696. Addressing the plaintiffs'

arguments concerning supervision, the Shaffer court clarified, "The power of

control factor refers to control over the means and method of performing the

work." Id. (citation omitted). As the Shaffer court stated, while citing cases from

numerous jurisdictions far and wide:

> [W]e follow the lead of numerous other courts in holding that an
> owner who engages an independent contractor to perform a job for
> him or her may retain broad general power of supervision and control
> as to the results of the work so as to insure satisfactory performance
> of the contract—including the right to inspect, to stop the work, to
> make suggestions or recommendations as to the details of the work,
> or to prescribe alterations or deviations in the work—without
> changing the relationship from that of owner and independent
> contractor or changing the duties arising from that relationship.

Shaffer v. Acme Limestone Co., Inc., 524 S.E.2d at 696-697 (quotations and

citations omitted); *see also* Mountain Lodge Ass'n v. Crum & Forster Indem. Co.,

558 S.E.2d at 342 (same); Robertson v. Morris, 546 S.E.2d at 773 (W. Va. 1999)

(same). The drivers' argument on the use of the disjunctive "or" has no merit.

The West Virginia drivers argue that FedEx can fire them by not renewing

their contracts or by terminating their contracts for cause, which, they say, is

enough under West Virginia law to constitute a power to fire. The court doesn't

read the cases the same way. Further, the drivers' reliance on Huntington Publ'g

Co. v. Caryl, 377 S.E.2d 479 (W. Va. 1988), is misplaced because that case

involved a tax question and that court expressly stated that whether the carriers

in that case were independent contractors was beside the point. *See* id. at 490 ("The real issue in this case . . . is whether the appellee is making a retail sale to home delivery subscribers."). In a more applicable *respondeat superior* context, the West Virginia Supreme Court qualified Huntington Publishing's language to say that the "ability to release a carrier [without a stated reason] effectively controls the carrier's method of operation." Zirkle v. Winkler, 585 S.E.2d 19, 25 (W. Va. 2003) (alteration in the original). FedEx doesn't retain the power to fire the drivers at will: FedEx can't release drivers without notice nor can they release drivers without cause.

Finally, and most importantly, "the only reasonable inference that can be drawn is that FedEx hasn't retained the right to control the details of the contractors' work methods on a class-wide basis." Kansas Decision, at 73. The court incorporates here the Kansas Decision and concludes that the Ashbury drivers are independent contractors under West Virginia law.

### AA. Wisconsin (3:05-cv-601, Larson)

The Larson drivers allege illegal wage deductions, WIS. STAT. § 103.455, and fraud; they seek rescission and declaratory relief. Though they didn't move to certify the fraud claim, the Wisconsin drivers don't indicate that their claims turn on anything other than a determination of their employment status under Wisconsin law. *See* Memo. in Support of Mot. to Certify (Wisconsin), Apr. 2, 2007, at 1 [Doc. No. 582]. The parties filed cross motions for summary judgment. For the

reasons stated below, the court grants summary judgment to FedEx and denies the drivers' motion for summary judgment. Because the Wisconsin claims stand or fall on the common question of whether FedEx Ground misclassified its drivers as independent contractors, judgment will be entered for FedEx on all claims in the Wisconsin case.

Though Wisconsin courts haven't specifically addressed how to resolve employee status for purposes of Wisconsin Statutes § 103.455, Wisconsin has long used the common law right to control test in all other relevant contexts. The parties agree the right to control test applies in this case, and nothing before the court indicates that Wisconsin courts would use any other test under this statute. *See* Pamperin v. Trinity Mem'l Hosp., 423 N.W.2d 848, 852 (Wis. 1988) (*respondeat superior*: "The right to control is the dominant test in determining whether an individual is a servant."); Snider v. Northern States Power Co., 260 N.W.2d 260, 263 (Wis. 1977) (*respondeat superior*: "The most important single criterion in determining whether a person is an independent contractor is the degree to which the owner, rather than the independent contractor, retains the right to control the details of the work."); Scholz v. Industrial Comm'n, 64 N.W.2d 204, 207 (Wis. 1954) (worker's compensation: "[T]he principal test for determining if a relationship of employer-employee exists is whether the alleged employer has the right to control the details of the work."); Reuter v. Murphy, 622 N.W.2d 464, 469 (Wis. Ct. App. 2000) (*respondeat superior*: "The dominant factor in determining whether an individual is a servant or an independent contractor is

whether the alleged master has the 'right to control the details of the servant's work."); Madison Newspapers, Inc. v. Wisconsin Dep't of Revenue, 599 N.W.2d 51, 60 (Wis. Ct. App. 1999) (tax exemption statute: "The dominant test in determining whether a person is an independent contractor or an employee is who has the right to control the details of the work."); Goldberg v. Department of Indus., Labor and Human Relations, 484 N.W.2d 568, 570 (Wis. Ct. App.1992) (unemployment compensation). Wisconsin courts also cite other factors, such as the right to terminate without liability and the method of payment, and at least one case has referenced the ten factors listed in Restatement (Second) of Agency § 220. *See* Pamperin v. Trinity Mem'l Hosp., 423 N.W.2d at 852 & n.4.

The drivers' chief argument is that the distinction between control of means and control of results—recognized by other states—doesn't exist in Wisconsin. *See* Pltfs' Supp., Sept. 24, 2010, at 4 [Doc. No. 2199] ("Unlike Kansas, there is no distinction drawn under Wisconsin law whether the right to control details of the work is part of the manner, method and means of the work or the result of the work."). The drivers rely heavily on an unpublished case, Hernandez v. Romero, No. 2006AP2783, 2007 WL 2593558 (Wis. Ct. App. Sept. 11, 2007), in which the appellate court reversed a grant of summary judgment because it found that a material issue of fact existed as to whether the alleged employer had the right to control a worker's means and methods of work. Certain facts in Hernandez, such as the alleged employer's control of Satellite TV workers' work orders and time windows, overlap with this MDL case, but Hernandez is an unpublished opinion

173

without precedential value for purposes of today's decision. *See* Wisconsin Rules of Appellate Procedure, Rule 809.23(3). Even if Hernandez were a citable case, it carries little persuasive value for two reasons. First, employment status most often is determined under the common law on the facts and circumstances of individual cases, not on bright-line rules by which a given fact will be dispositive in every circumstance. Second, the Hernandez court offered no explanation as to why it found a disputed issue of material fact, *see* id. at *4, which might be why the appellate court declined to publish the opinion.

FedEx relies on Carothers v. Bauer, 126 N.W.2d 758 (Wis. 1964), to argue that summary judgment is required in its favor. Carothers cuts against Hernandez because it comes from a higher court, some facts are similar, Carothers explains its reasoning, and Hernandez carries no precedential value. In Carothers, a contracting milk hauler owned a tractor trailer. The defendant dairy company provided the driver with a milk tank, kept all records, required the tank and truck to be used exclusively to haul for the dairy, required pickup and delivery to places listed by the dairy, and required satisfactory and prompt delivery at all times to prevent spoliation of the milk. The dairy's tank carried the dairy's trade name and legend, and the dairy had an employee ride with the trucker at least once a month to inspect the equipment and generally observe how the driver discharged his responsibilities. Farmers relied on the dairy—not the trucker—to be responsible for the safe hauling of their milk and the control of the drivers. *See* Carothers v.

174

Bauer, 126 N.W.2d 760-762. The Carothers court held the trucker to be an independent contractor as a matter of law.

As with the drivers' case citations in these MDL cases, the court doesn't point to the facts in Carothers and simply call it a day in favor of FedEx. Rather, Carothers is important for the key principle that in Wisconsin—and contrary to the drivers' argument—there exists the traditional common law distinction between control of results and control of means. The dairy in Carothers controlled contracted-for results by requiring prompt and satisfactory delivery of milk, by having the right to terminate the trucker on thirty days' notice, and by inspecting his work. But as the Carothers court explained, none of those things controlled how the trucker actually operated the truck on his route: he could hire help as he saw fit, could follow his own route of travel, and was responsible for the maintenance and expenses of his truck. The dairy controlled contracted-for results, and the trucker controlled the means and methods by which he obtained those results. See also Kerl v. Dennis Rasmussen, Inc., 682 N.W.2d 328, 338 (Wis. 2004) (distinguishing numerous controls exercised by franchisors as going to quality and operational requirements necessary for the benefit of both franchisee and franchisor, from routine, daily supervision, management, and control of a franchisee's business); Employers Mut. Liab. Ins. Co. v. Brower, 272 N.W. 359, 361 (Wis. 1937) ("[T]he mere procuring or controlling of the end result of work, by one for whom it is performed, without directing the means or details in which it is performed, does not necessarily constitute the person who performs the work

175

an employee. As we [have] said, 'Any employer of an independent contractor has that right.'" (*quoting* York v. Industrial Comm'n, 269 N.W. 726, 732 (Wis. 1936))).

This court has held that "the only reasonable inference that can be drawn is that FedEx hasn't retained the right to control the details of the contractors' work methods on a class-wide basis." Kansas Decision, at 73. The court also addressed all factors relevant in Wisconsin in the Kansas Decision, which the court incorporates here. The Larson drivers are independent contractors under Wisconsin law.

## Conclusion

The only remaining outstanding matter appears to be FedEx's motion for trial by jury, which the court DENIES as moot [Doc. Nos. 1962, 1987]. Final Suggestions of Remand will be issued after the court reviews the parties' joint proposed pretrial orders requested in today's decisions.

The court INSTRUCTS the parties to file a joint status report with the court within fourteen days of entry of this order if they are aware of any further matters the court may have overlooked today and that require disposition. The court has staggered the due dates of the joint pretrial orders for the convenience of counsel and so as to stagger the remand orders by the Judicial Panel on Multidistrict Litigation. For ease of reference, the court summarizes today's rulings in the attached appendix.

SO ORDERED.

176

ENTERED: December 13, 2010

/s/ Robert L. Miller, Jr.
Judge
United States District Court

cc:   Magistrate Judge Nuechterlein
      JPMDL

# APPENDIX
## Summary of Dispositions

| MDL Member Cause No. | State | Summary |
|---|---|---|
| 3:06-cv-428 | Alabama (Floyd) | Drivers' motion for summary judgment DENIED [Doc. No. 1155]; judgment independent of the motion GRANTED to FedEx. Judgment to be entered in favor of FedEx on all claims. |
| 3:07-cv-191 | Alabama (Gentle) | Remand of case to be suggested for resolution of all claims. Joint proposed pretrial order due in 21 days. |
| 3:07-cv-272 | Arizona (Gibson) | Drivers' motion for summary judgment DENIED [Doc. No. 1792]; judgment independent of the motion GRANTED to FedEx. Judgment to be entered in favor of FedEx on all claims. |
| 3:06-cv-209 | Arkansas (Harris) | Drivers' motion for summary judgment DENIED [Doc. No. 1157]; judgment independent of the motion granted to FedEx on state law claims only. Remand of case to be suggested for resolution of FLSA-related claims. Joint proposed pretrial order due in 21 days. |
| 3:05-cv-528 | California (Alexander) | Drivers' motion for summary judgment DENIED [Doc. No. 1153]; FedEx's motion for summary judgment GRANTED [Doc. No. 1225]. Remand of case to be suggested for resolution of FMLA-related claims. Joint proposed pretrial order due in 21 days. |
| 3:06-cv-429 | California (Pedrazzi) | FedEx's motion for summary judgment GRANTED [Doc. No. 1356]. Remand of case to be suggested for resolution of Mr. Pedrazzi's state law discrimination-related claims. Joint proposed pretrial order due in 21 days. |
| 3:08-cv-52 | California (Huerta) | FedEx's motion for summary judgment GRANTED [Doc. No. 1658]. Remand of case to be suggested for resolution of claims premised on Mr. Huerta's status as independent contractor. Joint proposed pretrial order due in 21 days. |

| 3:05-cv-664 | Florida (Carlson) | Drivers' motion for summary judgment DENIED [Doc. No. 1159]; FedEx's motion for summary judgment GRANTED [Doc. No. 1235]. Judgment to be entered in favor of FedEx on all claims. |
|---|---|---|
| 3:09-cv-356 | Florida (Ward) | Remand of case to be suggested for resolution of all claims. Joint proposed pretrial order due in 21 days. |
| 3:05-cv-411 | Georgia (White) | Drivers' motion for summary judgment DENIED [Doc. No. 1794]; FedEx's motion for summary judgment GRANTED [Doc. No. 1818]. Judgment to be entered in favor of FedEx on all claims. |
| 3:05-cv-390 | Indiana (Riewe) | Drivers' motion for summary judgment DENIED [Doc. No. 1161]; FedEx's motion for summary judgment GRANTED [Doc. No. 1229]. Judgment to be entered in favor of FedEx on all claims. |
| 3:05-cv-599 | Kentucky (Coleman) | Drivers' motion for summary judgment GRANTED IN PART [Doc. No. 1165]; FedEx's motion for summary judgment GRANTED IN PART [Doc. No. 1231]. Remand of case to be suggested for resolution of claims related to Kentucky's Wage Payment statute. Joint proposed pretrial order due in 21 days. |
| 3:08-cv-193 | Louisiana (Boudreaux) | Drivers' motion for summary judgment DENIED [Doc. No. 1796]; FedEx's motion for summary judgment GRANTED [Doc. No. 1820]. Judgment to be entered in favor of FedEx on all claims. |
| 3:06-cv-485 | Maryland (Westcott) | Drivers' motion for summary judgment DENIED [Doc. No. 1167]; FedEx's motion for summary judgment GRANTED [Doc. No. 1213]. Judgment to be entered in favor of FedEx on all claims. |
| 3:07-cv-189 | Maryland (Jones) | FedEx's motion for summary judgment GRANTED [Doc. No. 1354]. Judgment to be entered in favor of FedEx on all claims. |
| 3:05-cv-533 | Minnesota (Lee) | Drivers' motion for summary judgment DENIED [Doc. No. 1169]; FedEx's motion for summary judgment GRANTED [Doc. No. 1211]. Judgment to be entered in favor of FedEx on all claims. |

| 3:07-cv-120 | Nevada (DeCesare) | Drivers' motion for summary judgment GRANTED IN PART [Doc. No. 1800]. Remand to be suggested for further disposition and resolution of all claims. Joint proposed pretrial order due in 21 days. |
|---|---|---|
| 3:08-cv-234 | Nevada (Campbell) | Remand to be suggested for resolution of all claims. Joint proposed pretrial order due in 21 days. |
| 3:05-cv-601 | New Hampshire (Gennell) | Drivers' motion for summary judgment GRANTED IN PART [Doc. No. 1171]; judgment independent of the motion GRANTED IN PART, to FedEx. Remand to be suggested for resolution of claims tied to New Hampshire statutes. Joint proposed pretrial order due in 21 days. |
| 3:05-cv-595 | New Jersey (Tofaute – Class) | Drivers' motion for summary judgment DENIED [Doc. No. 1173]; FedEx's motion for summary judgment GRANTED [Doc. No. 1227]. Judgment to be entered in favor of FedEx on all claims. |
| 3:05-cv-535 | New Jersey (Capers) | FedEx's motion for summary judgment GRANTED IN PART [Doc. No. 1352]. Remand to be suggested for resolution of claims not resolved by Tofaute finding of independent contractor status. Joint proposed pretrial order due in 28 days. |
| 3:07-cv-327 | New Jersey (Farrell) | Remand to be suggested for resolution of federal law and contractual claims. Joint proposed pretrial order due in 28 days. |
| 3:09-cv-2 | New Jersey (Tofaute - Individual) | Remand to be suggested for resolution of claims. Joint proposed pretrial order due in 28 days. |
| 3:05-cv-538 | New York (Louzau) | Drivers' motion for summary judgment DENIED [Doc. No. 1175]; FedEx's motion for summary judgment GRANTED [Doc. No. 1219]. Judgment to be entered in favor of FedEx on all claims. |
| 3:05-cv-537 | New York (Johnson) | FedEx's motion for partial summary judgment DENIED as premature [Doc. No. 1347]. Remand to be suggested for resolution of all claims. Joint proposed pretrial order due in 28 days. |

| 3:07-cv-326 | North Carolina (<u>Whiteside</u>) | Drivers' motion for summary judgment DENIED [Doc. No. 1798] (ERISA claim is DENIED without prejudice); judgment independent of the motion GRANTED to FedEx. Judgment to be entered in favor of FedEx on all claims. |
|---|---|---|
| 3:08-cv-336 | Ohio (<u>Kelly</u>) | Drivers' motion for summary judgment DENIED [Doc. No. 1802]; judgment independent of the motion GRANTED to FedEx on all state law claims. Remand to be suggested for resolution of FMLA-related claims. Joint proposed pretrial order due in 28 days. |
| 3:06-cv-801 | Ohio (<u>Wallace</u>) | Remand to be suggested for resolution of claims. Joint proposed pretrial order due in 28 days. |
| 3:05-cv-596 | Oregon (<u>Slayman</u>) | Drivers' motion for summary judgment DENIED [Doc. No. 1177]; judgment independent of the motion GRANTED to FedEx. Remand to be suggested for resolution of outstanding rescission claim. Joint proposed pretrial order due in 28 days. |
| 3:07-cv-328 | Oregon (<u>Leighter</u>) | Drivers' motion for summary judgment DENIED [Doc. No. 1804]; judgment independent of the motion GRANTED to FedEx. Remand to be suggested for resolution of outstanding rescission claim. Joint proposed pretrial order due in 28 days. |
| 3:05-cv-597 | Pennsylvania (<u>Willis</u>) | Drivers' motion for summary judgment DENIED [Doc. No. 1179]; judgment independent of the motion GRANTED to FedEx. Judgment to be entered in favor of FedEx on all claims. |
| 3:05-cv-598 | Pennsylvania (<u>Hart</u>) | Judgment independent of the motion GRANTED to FedEx. Judgment to be entered in favor of FedEx on all claims. |
| 3:09-cv-3 | Pennsylvania (<u>Mitchell</u>) | Remand to be suggested for resolution of claims. Joint proposed pretrial order due in 28 days. |
| 3:05-cv-599 | Rhode Island (<u>Tierney</u>) | Drivers' motion for summary judgment DENIED [Doc. No. 1181]; FedEx's motion for summary judgment GRANTED [Doc. No. 1233]. Judgment to be entered in favor of FedEx on all claims. |

| | | |
|---|---|---|
| 3:05-cv-668 | South Carolina (<u>Cooke</u>) | Drivers' motion for summary judgment DENIED [Doc. No. 1183]; judgment independent of the motion GRANTED to FedEx. Judgment to be entered in favor of FedEx on all claims. |
| 3:05-cv-600 | Tennessee (<u>Smith</u>) | Drivers' motion for summary judgment DENIED [Doc. No. 1185]; FedEx's motion for summary judgment GRANTED [Doc. No. 1217]. Judgment to be entered in favor of FedEx on all claims. |
| 3:05-cv-540 | Texas (<u>Humphreys</u>) | Drivers' motion for summary judgment DENIED [Doc. No. 1187]; FedEx's motion for summary judgment GRANTED [Doc. No. 1223]. Remand to be suggested for federal claims. Joint proposed pretrial order due in 35 days. |
| 3:06-cv-802 | Texas (<u>Price</u>) | Remand to be suggested for resolution of claims. Joint proposed pretrial order due in 35 days. |
| 3:08-cv-53 | Utah (<u>Fishler</u>) | Drivers' motion for summary judgment DENIED [Doc. No. 1806]; FedEx's motion for summary judgment GRANTED [Doc. No. 1822]. Judgment to be entered in favor of FedEx on all claims. |
| 3:07-cv-325 | <u>Vargas</u> (MA) | FedEx's motion for summary judgment DENIED as moot [Doc. No. 1870]. Remand to be suggested for resolution of all claims. Joint proposed pretrial order due in 35 days. |
| 3:06-cv-337 | West Virginia (<u>Ashbury</u>) | Drivers' motion for summary judgment DENIED [Doc. No. 1189]; judgment independent of the motion GRANTED to FedEx. Judgment to be entered in favor of FedEx on all claims. |
| 3:05-cv-601 | Wisconsin (<u>Larson</u>) | Drivers' motion for summary judgment DENIED [Doc. No. 1191]; FedEx's motion for summary judgment GRANTED [Doc. No. 1221]. Judgment to be entered in favor of FedEx on all claims. |
| FedEx's motions for trial by jury DENIED as moot [Doc. Nos. 1962, 1987]. | | |