UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| In re FEDEX GROUND PACKAGE SYSTEM, INC., EMPLOYMENT PRACTICES LITIGATION | CAUSE NO. 3:05-MD-527 RM (MDL-1700) |
| THIS DOCUMENT RELATES TO: | |
| ALL CASES | |

OPINION and ORDER

Plaintiffs' Co-Lead Counsel and Plaintiffs' Steering Committee ("co-lead counsel") have filed a motion for entry of a common benefit set-aside order. Co-lead counsel seek creation of a fund to be used to compensate themselves and all counsel who have worked in this MDL litigation for the benefit of all plaintiffs ("MDL counsel"). FedEx objects to aspects of co-lead counsel's proposed order, and the *Bunger* (South Dakota) plaintiffs' counsel objects to the proposed order in its entirety. No other local plaintiffs' counsel has objected to the proposed order and the motion is now fully briefed.[1] For the reasons stated below, the court denies the motion without prejudice in the event of reversal of this court's summary judgment opinions currently on appeal.

---

[1] Both of co-lead counsel's reply briefs exceed the fifteen pages allowed by the local rules. *See* Local Rule 7.1(d). Nothing was gained by exceeding, without the court's leave, the page limits indicated in the local rules.

I. BACKGROUND

This court's involvement in this multi-district litigation has nearly drawn to a close. On December 13, 2010, the court issued an opinion and order finding in most instances that the plaintiff drivers are independent contractors and not employees of FedEx. This litigation grew out of an effort by the plaintiffs to receive the benefits of being classified as employees, and the plaintiffs believed various states' laws supported a conclusion that, given their relationship with FedEx, they were employees.

The plaintiffs' effort spawned cases that co-lead counsel acknowledge are each somewhat unique, given the differing nuances in how the various states' laws distinguish between employees and independent contractors. At this stage of the litigation, there are four rough categories of cases: (1) those in which the court granted class certification but held the plaintiffs to be independent contractors, which are now on appeal or soon will be on appeal; (2) a few in which the court granted class certification and found the plaintiffs to be employees as a matter of a state's statutory laws; (3) those in which the court denied class certification, which have been remanded or for which this court will soon suggest remand; and (4) fee shifting cases involving Title VII discrimination claims or violations of federal labor laws, which have been remanded or for which this court will soon suggest remand. Category (1) cases greatly outnumber and outweigh category (2) cases. Category (1) and (2) cases go to the heart of this court's decisionmaking in this litigation, as embodied in the Opinions and Orders of May 28, 2010 [Doc. No.

2068], August 11, 2010 [Doc. No. 2097], and December 13, 2010 [Doc. No. 2239]. Cases orbiting this central core of decisionmaking overlap the core to widely varying degrees.

The plaintiffs have largely not succeeded on the central core of this court's decisionmaking (though that may change on appeal). Yet co-lead and MDL counsel have spent tens of thousands of hours and incurred millions of dollars in costs and fees to coordinate and litigate these cases in this court. Their efforts have provided what likely seem to be widely varying levels of assistance to the member MDL cases, and therefore widely varying levels of benefit to cases obtaining recovery.

Co-lead counsel ask the court to enter an order that would create a common benefit fund for the compensation of co-lead and MDL counsel through the following two mechanisms:

> 1) For fee shifting claims: permit co-lead counsel to submit to a special master petitions for reasonable attorneys' fees and costs to be paid by FedEx, including where claims are settled but co-lead counsel believe the total negotiated attorneys' fees and costs substantially undervalue the time, effort or investment incurred by MDL counsel.
>
> 2) For other claims: encourage co-lead counsel to settle with local counsel, encourage arbitration, and require submission of

3

disputes to a special master to decide the proper allocation of fees and costs.

Neither mechanism would necessarily result in the disbursement of money from the common benefit fund, but rather would result in the infusion of money into the fund. Only an order of this court would result in the disbursement of money to co-lead and MDL counsel. Co-lead counsel also ask the court to require local counsel to "consult" co-lead counsel before settling cases, and they ask that FedEx be required to ensure that the appropriate set-aside is diverted into the common benefit fund from any recoveries paid out.

FedEx doesn't object to the idea of a common benefit fund, but makes a serious objection to co-lead counsel's request that they be permitted to have a second bite at the apple in settled fee shifting cases. FedEx says that this would seriously hinder settlement negotiations because FedEx would never really know what its liability would be in a settlement. FedEx also objects to administering the common benefit fund. FedEx objects to any language in an order that would apply not only to these MDL member cases but also to cases "derivative" of the MDL or that simply "rely on the work performed in the MDL." FedEx also wonders what the "consultation" requirement would mean and objects to any regime that would require the various plaintiffs' attorneys to have their fee disputes settled before a transferor court could dismiss a case.

The *Bunger* plaintiffs object to the motion in whole, arguing that this court doesn't have jurisdiction anymore over cases that have been remanded before

4

entry of a set-aside order. The *Bunger* plaintiffs also say that co-lead counsel didn't confer a substantial benefit to them.

II. ANALYSIS

Though the motion will be denied, the court addresses two of the objections raised here for the benefit of transferor courts and the parties, hoping to help other judges that might be asked to revisit these issues. The court doesn't address the *Bunger* counsel's "substantial benefit" objection because it goes to the merits of how fees should be allocated between him and co-lead and MDL counsel, and those merits aren't to be decided now. The transferor court will determine whether co-lead and MDL counsel conferred a substantial benefit in the *Bunger* case. Other minor objections appear to be moot in light of the court's decision today.

*a. Jurisdictional issues: cases never before this court and cases remanded from this court to their transferor courts.*

This court has jurisdiction to ensure the fair and equitable distribution of attorneys' fees among the various plaintiffs' attorneys in this MDL litigation, including any MDL member case filed in, removed to, or transferred to this court under the auspices of this litigation. This court doesn't have jurisdiction over cases never actually before this court, whether state or federal, even though it's possible that attorneys in state or federal cases might use the work done by co-lead and MDL counsel before this court.

5

> While [28 U.S.C.] § 1407 provides a procedure for transferring cases filed in different districts to a single district court for pretrial proceedings, nowhere does it expand the jurisdiction of either the transferor or the transferee court. As in any other case, a transferee court's jurisdiction in multi-district litigation is limited to cases and controversies between persons who are properly parties to the cases transferred, and any attempt without service of process to reach others who are unrelated is beyond the court's power.

In re Showa Denko K.K. L-Typtophan Prods. Liab. Litig.-II, 953 F.2d 162, 165-166 (4th Cir. 1992); *see also* In re Genetically Modified Rice Litig., No. 4:06 MD 1811 CDP, 2010 WL 716190, at * 4-5 (E.D. Mo. Feb. 24, 2010) (recognizing a situation of possible unjust enrichment but also court's lack of power to prophylactically prevent unjust enrichment and urging state court judges to order local state plaintiffs' attorneys to contribute to common benefit fund). Thus, co-lead counsel's proposed language applying their proposed order to cases "derivative" of the MDL or that "rely on the work performed in the MDL" is outside the scope of this court's power to order. Co-lead counsel can seek to avoid unjust enrichment by local plaintiffs' attorneys in cases not before this court, but they can't do so in the way they proposed.

This court expressly retained jurisdiction over cases it suggested be remanded so as to decide the collateral matter of equitable apportionment of attorneys' fees. As the court has previously stated:

> The award of attorney's fees, however, is a "collateral matter over which a court normally retains jurisdiction even after being divested of jurisdiction on the merits." In re Zyprexa Prods. Liab. Litig., 467 F. Supp. 2d 256, 274 (E.D. N.Y. 2006) (citations omitted); *see also* In re Zyprexa Prods. Liab. Litig.,--- F.3d ---, 2010 WL 367556, *10 (2d Cir. 2010) (stating that order imposing an assessment to create a fund

6

that could be used to compensate attorneys who demonstrate that their efforts conferred a benefit on the plaintiffs generally is "even less related to the ultimate merits than orders awarding attorney's fees, which are collateral matters over which a court retains jurisdiction even if it ultimately is determined to lack subject matter jurisdiction.") (*citing* Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 395 (1990)("It is well established that a federal court may consider collateral issues after an action is no longer pending. For example, district courts may award costs after an action is dismissed for want of jurisdiction."); Moore v. Permanente Med. Group, Inc., 981 F.2d 443, 445 (9th Cir. 2003) ("It is clear that an award of attorney's fees is a collateral matter over which a court normally retains jurisdiction even after being divested of jurisdiction on the merits."); Overseas Dev. Disc Corp. v. Sangamo Constr. Co., 840 F.2d 1319, 1324 (7th Cir.1988) (declaring it to be "settled that a decision awarding or denying attorney's fees and expenses from a common fund ... is severable from the decision on the merits").

Opinion and Order, March 2, 2010, at 11-12 [Doc. No. 2011]; *see also* Opinion and Order, August 12, 2010, at 10 (retaining jurisdiction over collateral matter of attorney fee apportionment). Today's holding concerning double-dipping, *infra*, applies to all FedEx MDL member cases, but after today's decision the court divests itself of its expressly retained jurisdiction over collateral matters in remanded cases (and will divest itself of jurisdiction over collateral matters in cases yet to be remanded at the time of their remand) so that the transferor courts can issue final binding decisions on those collateral matters. If a reversal on this court's summary judgment opinions comes, it will likely be a good while from now, and there's no need to delay final resolution of collateral matters in remanded cases.

> *b. The law doesn't allow the plaintiffs' request to be permitted to double dip attorneys' fees from FedEx in settled fee shifting claims.*

7

Much of co-lead counsel's proposed order concerned their request for this court to allow them to petition for attorneys' fees above and beyond any settlement in fee-shifting cases if they believe the fees they obtain through the settlement substantially undervalue their work. The plaintiffs say they're only seeking permission to make such claims and that the merits of such claims would be later determined. The law doesn't permit such double-dipping, so there's no reason to grant permission to petition for such fees.

Co-lead counsel relies heavily on Walitalo v. Iacocca, 968 F.2d 741, 747 (8th Cir. 1992). But co-lead counsel forgets that, since 2001, the law has been that only prevailing parties may petition for attorneys' fees to be paid by a defendant. To be deemed a prevailing party there must be a material alteration in the legal relationship of the parties, which is shown in the form of an enforceable judgment or court-ordered consent-decree. "It could not be clearer that a voluntary settlement by the defendant . . . does not entitle a plaintiff to attorneys' fees." Bingham v. New Berlin Sch. Dist., 550 F.3d 601, 603 (7th Cir. 2008) (discussing Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res., 532 U.S. 598, 606 (2001)). By way of exception, defendants might agree in a settlement to allow an additional award of attorneys' fees. *See* Walitalo v. Iacocca, 968 F.2d at 747 ("Nothing prevents defendants from assuming liability for these fees in a settlement agreement.").

The common benefit fund doctrine is an exception to the American rule, as is statutorily created fee-shifting. These two exceptions to the American rule don't

combine to allow co-lead counsel to request attorneys' fees from FedEx in settled fee shifting claims because voluntary settlement doesn't entitle a plaintiff to attorneys' fees to be paid by defendants. This comports with the roots of the common fund doctrine, which provides that plaintiffs and their counsel contribute to lead counsel's compensation in exchange for the benefit of lead counsel's work, not that a defendant make such contribution. *See generally* Boeing Co. v. Van Gemert, 444 U.S. 472 (1980); Sprague v. Ticonic Nat'l Bank, 307 U.S. 161 (1939); Cent. R.R. & Banking Co. of Ga. v. Pettus, 113 U.S. 116 (1885); Trustees v. Greenough, 105 U.S. 527 (1881).

Co-lead counsel should not be allowed to make any double-dipping fee requests except for the narrow set of circumstances allowed by law: (1) enforceable judgment; (2) court-ordered consent decree; and (3) express consent by FedEx in a settlement agreement.

*c. Denial of entry of a set-aside order creating a common benefit fund.*

The court denies the motion for entry of a set-aside order creating a common benefit fund for two reasons: (1) the merits of the core of this litigation have been decided against the plaintiffs in all but a few cases; and (2) the plaintiffs acknowledge what this court suspected, which is that the natures of the cases remanded or yet to be remanded are such that any allocation of attorneys' fees must be determined on a case by case basis.

9

The court's power to issue a set-aside order creating a common benefit fund in a multi-district litigation is unquestioned. "The 'common fund' doctrine allows a court to distribute attorneys' fees from a common fund created by settlement or judgment in a class action" or similar complex litigation. In re Linerboard Antitrust Litig., 292 F. Supp. 2d 644, 654 (E.D. Pa. 2003)) (*citing* Sprague v. Ticonic Nat'l Bank, 307 U.S. 161 (1939); Cent. R.R. & Banking Co. of Ga. v. Pettus, 113 U.S. 116 (1885); Trustees v. Greenough, 105 U.S. 527 (1881)); *see also* Walitalo v. Iacocca, 968 F.2d 741, 747 (8th Cir. 1992) ("It is well-established that courts can impose liability for court-appointed counsel's fees on all plaintiffs benefitting from their services."); In re Air Crash Disaster at Florida Everglades, 549 F.2d 1006, 1016 (5th Cir. 1977) ("[I]f lead counsel are to be an effective tool the court must have means at its disposal to order appropriate compensation for them. The court's power is illusory if it is dependent upon lead counsel's performing the duties desired of them for no additional compensation."); In re Linerboard Antitrust Litig., 292 F. Supp. 2d at 653 ("A necessary corollary to court appointment of lead and liaison counsel and appropriate management committees is the power to assure that these attorneys receive reasonable compensation for their work.").

But this power needn't necessarily be exercised. Co-lead counsel's motion raises serious concerns about how the court should manage its own docket and prevent unjust enrichment by attorneys free-riding off of the hard work of co-lead and MDL counsel in this litigation. *See, e.g.*, In re Nineteen Appeals, 982 F.2d

603, 606 (1st Cir. 1992) ("A court supervising mass disaster litigation may intervene to prevent or minimize an incipient free-rider problem and, to that end, may employ measures reasonably calculated to avoid unjust enrichment of persons who benefit from a lawsuit without shouldering its costs." (quotation omitted)); In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig., 953 F.2d 162, 165 (4th Cir. 1992) ("[A] district court needs to have broad discretion in coordinating and administering multi-district litigation.").

Set-aside orders creating common benefit funds usually are created early in a litigation in anticipation of the plaintiffs' success. No authority suggests a practice of creating common benefit funds when the plaintiffs haven't succeeded on the core of their litigation. *Cf.* In re Air Crash Disaster, 549 F.2d at 1017 ("The power of the court to order compensation, and payment of it … is reinforced by the body of law concerning the inherent equitable power of a trial court to allow counsel fees and litigation expenses out of the proceeds of a fund that has been created, increased or protected by *successful* litigation." (emphasis added)).

Co-lead and MDL counsel aren't guaranteed compensation irrespective of what happens in these cases—a substantial benefit conferred assumes a recovery. Still, MDL member cases continue to pend before this court and before transferor courts. Co-lead and MDL counsel did a great deal of work, and should be compensated if that work leads to success. To the extent their work contributes to recoveries in the remanded cases (whether by settlement or judgment) then they have a right to seek compensation. Further, that there doesn't appear to be a

11

practice of creating a common benefit fund when the core of the litigation has been unsuccessful doesn't mean this court can't create such a fund. Rather, that plaintiffs weren't successful on the core of the litigation suggests this court may better manage this MDL docket by turning attorney-fee apportionment disputes over to the transferor courts.

Given the current circumstances of this litigation, more equitable decisionmaking is likely if this court turns over to the transferor courts final resolution of attorney fee apportionment disputes. By multi-district litigation standards, there are relatively few cases remanded or left to be remanded. Though co-lead and MDL counsel might need to appear before a transferor court to obtain an order for compensation (absent an agreement with local counsel), the burden on them of seeking such compensation before those relatively few courts is outweighed by the increased likelihood of a fair determination by the transferor court.

The transferor courts will be in the best position to understand how much of co-lead and MDL counsel's work contributed to the specific recoveries obtained in their courts. Ordinarily, courts order the set-aside of percentages of recoveries or provide for an eventual lodestar calculation to be made. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.12. But co-lead counsel state what this court suspected: appropriate attorney fee apportionment will need to be determined on a case by case basis, given the substantially differing natures of the various cases that will be pending on remand. Because each case involves differing claims,

differing law, and differing circumstances, it wouldn't be equitable to simply "set[] a percentage that might or might not be appropriate in every case depending on the circumstances." Memo. in Support of Motion, Dec. 28, 2010, at 9 [Doc. No. 2281]. This court is in no position to predict how much co-lead counsel's work will turn out to have benefitted local plaintiffs, nor is this court in as advantageous a position as the transferor court to make that determination.

Co-lead and MDL counsel may seek compensation out of recoveries obtained in transferor courts. As a result, this court won't require local counsel to "consult" with co-lead and MDL counsel before settling because it's unclear what counsel meant by that request and because the prospects of being ordered to contribute portions of a recovery to co-lead and MDL counsel (absent an agreement by counsel) seem likely to cause local counsel to be cautious in their decisionmaking. *See* Walitalo v. Iacocca, 968 F.2d 741, 747 n.11 (8th Cir. 1992) ("Appellants' argument that the parties to a case can avoid liability for their share of court-appointed counsels' fees by filing a stipulation of dismissal ... is completely without merit. If such a rule existed, a district court's power to appoint attorneys to act on behalf of other attorneys and parties in complex litigation would be meaningless. Attorneys would be unwilling to assume this position if the parties to the litigation could avoid compensating them simply by settling and filing a stipulation of dismissal.").

III. CONCLUSION

For the reasons stated, the court DENIES the motion for entry of a common benefit set-aside order [Doc. No. 2281]. Because the arguments and allegations contained in the motions to file sur-replies didn't factor into this decision,[2] the court DENIES those motions as unnecessary [Doc. Nos. 2478 & 2479]. Pursuant to this court's previously retained jurisdiction over collateral matters in these MDL cases, the holdings in this opinion and order will apply in transferor courts, specifically:

    1) Subsequent to entry of this order, the court divests itself of jurisdiction over collateral matters in cases already remanded and the court will fully divest itself of jurisdiction over cases yet to be remanded once they are remanded;

    2) Co-lead and MDL counsel should not be permitted to seek double-dipped attorneys' fees by making a request for attorneys' fees for voluntarily settled fee-shifting claims;

    3) Co-lead and MDL counsel may seek court-ordered compensation from any recoveries obtained in remanded cases to the

---

[2] Today's decision is made for the reasons stated in the body of this Opinion and Order, but the motions for leave to file sur-replies provided evidence that questionable representations of fact were presented to the court during the briefing of the common benefit set-aside motion. The court's December 13, 2010 Opinion and Order hinted to plaintiffs and FedEx the court's diminished patience for name calling, specious case citations, and dubious representations of fact made to the court. The court today issues a clear warning to the parties: enough. Future misrepresentations of law or fact by any party will be rewarded with summary denials of motions and might result in sanctions. Spirited argument is to be expected, but the parties must make a more sincere effort to make true statements of law and fact to the court.

14

extent their work substantially benefitted local plaintiffs' efforts to obtain a recovery (whether by settlement or judgment).

This denial is without prejudice in the event of a reversal of this court's summary judgment opinions on appeal, and in that circumstance this court will not re-visit attorney fee issues related to remanded cases.

SO ORDERED.

ENTERED: <u>February 11, 2011</u>

<u>      /s/ Robert L. Miller, Jr.         </u>
Judge
United States District Court